# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

ANTHROPIC, PBC,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF WAR, PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents*.

———————————

On Petition For Judicial Review Of Department Of War 41 U.S.C. § 4713 Notice

———————————

**BRIEF OF AMICI CURIAE FOUNDATION FOR AMERICAN INNOVATION, FIFTY YEARS, FATHOM, CHINATALK, MARTIN CHORZEMPA, ALEX IMAS, PANGRAM, INSTITUTE FOR PROGRESS, DEAN BALL, DWARKESH PATEL, ROOTS OF PROGRESS, AND SAIF KHAN IN SUPPORT OF PETITIONER'S EMERGENCY MOTION FOR A STAY**

———————————

Tim Hwang
Foundation for American Innovation
2443 Fillmore St #380-3386
San Francisco, CA, 94115
(973)-960-4955
tim.hwang@thefai.org
*Counsel for Amici Curiae*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

### A. Parties and Amici

Except for the following amici curiae appearing in this Court, all parties, intervenors, and amici appearing in this Court are listed in the Brief for Petitioner. The *amici curiae* are the Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Martin Chorzempa, Alex Imas, Pangram, Institute for Progress, Dean Ball, Dwarkesh Patel, Roots of Progress, and Saif Khan.

### B. Rulings Under Review

Except for the following, references to the rulings at issue appear in the Brief for Petitioner. The ruling under review is the Department of War's March 3, 2026, determination under 41 U.S.C. § 4713 that Anthropic PBC presents a supply chain risk to national security. No Federal Register or other official citation is known to counsel.

### C. Related Cases

Counsel is aware of a related case pending in the United States District Court for the Northern District of California: *Anthropic PBC v. U.S. Department of War*, No. 3:26-cv-01996-RFL (N.D. Cal. filed Mar. 9, 2026). That action challenges separate but related government actions. Counsel is unaware of any other related cases currently pending in this Court or any other court.

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, proposed amici curiae state as follows:

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, the entity amici are The Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Pangram, Institute for Progress, and Roots of Progress. To the best of amici's knowledge, no entity amicus has a parent company, and no publicly held company owns 10% or more of any organizational amicus. The remaining proposed amici—Martin Chorzempa, Alex Imas, Dean Ball, Dwarkesh Patel, and Saif Khan—appear solely in their individual capacities.

These entity amici include policy and research organizations focused on innovation, industrial capacity, and technology law; analytical and media organizations focused on artificial intelligence, and strategic competition; and industry- and infrastructure-oriented organizations focused on the financing, power, and deployment conditions for advanced computing and other frontier technologies. Collectively, their work bears directly on the rules governing when and how the government may exclude technology suppliers from federal procurement and national-security-related markets.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

DISCLOSURE STATEMENT ................................................................. ii

RULE 29 STATEMENT......................................................................... vii

INTEREST OF AMICI CURIAE ..............................................................1

SUMMARY OF ARGUMENT ..................................................................2

ARGUMENT ...........................................................................................4

    I. THE STATUTE'S DEFINITIONS, INDIVIDUALIZED-TREATMENT RULES, AND REVIEW PROVISIONS SHOW THAT CONGRESS MEANT TO DISCIPLINE THIS DEPARTMENT'S POWER TO EXCLUDE SOURCES FROM THE GOVERNMENT SUPPLY CHAIN. .................................................4

    II. SECTION 4713 REQUIRES A CONCRETE, REVIEWABLE SEQUENCE OF PROCEDURES BEFORE A SOURCE MAY BE EXCLUDED ...................7

        A. Section 4713 imposes a structured recommendation and consultation process. ...............................................................................................8

        B. Section 4713 imposes a requirement for notice and an opportunity to respond, unless the Department properly invoked the urgent branch. ...............9

        C. Section 4713 requires a written determination identifying necessity, less intrusive measures, and scope. .......................................................11

        D. Section 4713 requires congressional notification, including discussion of alternatives.......................................................................................12

        E. Agency-created reconsideration cannot substitute for compliance with the statutory predicate. ...........................................................................12

    III. THE "LESS INTRUSIVE MEASURES" FINDING IS A CENTRAL SAFEGUARD, NOT A PLEA FOR LENIENCY ...............................................13

        A. The statute requires a contemporaneous alternatives analysis. ...................14

        B. This safeguard has immediate Section 3252 carryover value because Congress reused it there.....................................................................15

    IV. THE COURT CAN ENFORCE CONGRESS'S DESIGN WITHOUT WEAKENING LAWFUL PENTAGON ACTION............................................16

CONCLUSION ......................................................................................18

CERTIFICATE OF COMPLIANCE .......................................................19

CERTIFICATE OF SERVICE................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpharma, Inc. v. Leavitt,*
    460 F.3d 1 (D.C. Cir. 2006)....................................................................13

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988) .............................................................................14

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) .............................................................................11

*City of Arlington v. FCC,*
    569 U.S. 290 (2013) ...............................................................................5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020). .........................................................................13, 14

*Dep't of Navy v. Egan,*
    484 U.S. 518 (1988) ...............................................................................5

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) .............................................................................13

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) .............................................................................16

*Foote v. Moniz,*
    751 F.3d 656 (D.C. Cir. 2014)................................................................5

*Learning Resources v. Trump,*
    No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) ..........................5

*Michigan v. EPA,*
    576 U.S. 743 (2015) .............................................................................14

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ...............................................................................15

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001)...........................................................7, 9

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................2

*Northcross v. Memphis Bd. of Educ.*,
    412 U.S. 427 (1973) .................................................................15

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ....................................................................8

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*,
    758 F.3d 296 (D.C. Cir. 2014)..............................................7, 9, 16

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ...................................................................13

*Service v. Dulles*,
    354 U.S. 363 (1957) ...................................................................8

*Sterling v. Constantin*,
    287 U.S. 378 (1932) .................................................................17

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ...................................................................8

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ...................................................................5

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ...................................................................8

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) ...................................................................8

**Statutes**

10 U.S.C. § 2304(a)(1)(A) ...........................................................4

10 U.S.C. § 3252(b)(2)(B) ....................................................................3, 15

41 U.S.C. § 1324(a)(3), (5), (7) ..................................................................6

41 U.S.C. § 1327 ........................................................................................4

41 U.S.C. § 1327(b)(4) ............................................................................7, 9

41 U.S.C. § 4713(a), (b), (k)(3)–(4) ...........................................................4

41 U.S.C. § 4713(b)(1) ...............................................................................8

41 U.S.C. § 4713(b)(2), (c) .........................................................................9

41 U.S.C. § 4713(b)(3) .............................................................................11

41 U.S.C. § 4713(b)(3)(B) ........................................................................13

41 U.S.C. § 4713(b)(4) .............................................................................12

41 U.S.C. § 4713(c) ..................................................................................10

41 U.S.C. § 4713(d) ..............................................................................9, 16

41 U.S.C. §  4713(f) ...................................................................................6

41 U.S.C. § 4713(i) ....................................................................................6

41 U.S.C. § 4713(k)(6) ...............................................................................6

# RULE 29 STATEMENT

1. Petitioner consents to the filing of this brief. Respondents do not oppose the filing of a timely amicus brief.

2. Amici move for leave to file this brief.

3. No party's counsel authored this brief in whole or in part.

4. No party or party's counsel contributed money intended to fund this brief.

5. No person other than amici or their counsel contributed money intended to fund this brief.

## CERTIFICATE OF COUNSEL
## UNDER D.C. CIRCUIT RULE 29(d)

Pursuant to D.C. Circuit Rule 29(d), counsel certifies that this separate *amicus* brief is necessary. No other submission before the Court addresses the perspective of technology firms, funders, and policy organizations that work on the conditions under which innovative companies develop and supply advanced technology systems to the federal government.

To counsel's knowledge, other anticipated amici supporting Petitioner are expected to focus on individual, civil-liberties, and national-security interests. None speaks to the institutional concerns of the broader technology sector. Specifically, the chilling effect that the agency action under review may have on frontier firms' willingness to participate in federal procurement, a critical long-term national security concern. Amici are uniquely situated to present that perspective, and a separate brief is the only means of placing it before the Court.

/s/ Tim Hwang

Tim Hwang
Counsel for *Amici Curiae*

# INTEREST OF AMICI CURIAE[1]

Amici are technology-policy organizations, companies, investors, and individual scholars and analysts whose work concerns artificial intelligence, advanced computing, and the legal framework governing participation in federal procurement for advanced technology.

The organizational amici are the Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Pangram, Institute for Progress, and Roots of Progress. The individual amici are Martin Chorzempa, Alex Imas, Dean Ball, Dwarkesh Patel, and Saif Khan. Affiliations are provided for identification only.

This case concerns whether the Department may invoke Section 4713 without complying with the procedures Congress prescribed. Amici have a substantial interest in that question because it affects whether advanced-technology firms can rely on stable legal rules in deciding whether to work with the federal government. Their perspective is useful because their work centers on the firms, investors, analysts, and policy institutions that operate under those rules.

---

[1] No party's counsel authored any part of this brief or contributed money intended to fund this brief's preparation or submission.

## SUMMARY OF ARGUMENT

Petitioner is entitled to a stay because, on the current record, it has a substantial likelihood of success on the merits. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Congress vested the Department of War with substantial power to mitigate supply-chain risks. That power deserves serious respect. However, Congress also prescribed procedures and predicates for how that power is to be exercised.

Section 4713 defines supply-chain risk in technical, operational terms. The broader Federal Acquisition Supply Chain Security Act prioritizes mitigation, private-sector best practices, and engagement with nongovernmental stakeholders over outright bans. Section 4713(i) rejects proxy reasoning based solely on foreign ownership. And Section 1327 sends review to this Court. Together, these features show that Congress intended exclusion authority to be disciplined by concrete standards, subject to judicial review, and did not intend to provide agencies with a free-floating power to disable otherwise qualified sources.

There are also judicially reviewable procedural requirements before a vendor (termed a "source" in the statute) may be excluded. Section 4713 requires: institutional recommendation and consultation, notice and an opportunity to respond, a written determination containing specified findings, and congressional notification. Those requirements give this Court a practical, reviewable framework

for evaluating the order before it. If they have not been followed, then the order is unlawful and Petitioner is not just likely, but certain to succeed on the merits.

Among the mandatory findings that the Secretary must make to sustain a supply chain risk designation, Amici wish to put special emphasis on the importance of the less-intrusive-measures finding. Congress wanted the Department to engage in disciplined risk management, not exclusion by implication or inertia. The same safeguard appears in 10 U.S.C. § 3252(b)(2)(B) and reflects a Congressional judgment that supply chain risk designations should not be a first resort.

The only question this Court needs to decide to rule for Petitioner is whether the order rests on the predicates and procedures Congress required before or at the time of exclusion according to the above framework. Petitioner has shown a strong likelihood of success because the record does not show compliance with the procedures and predicates Section 4713 makes mandatory.

Though Amici support Petitioner on the record before this Court, they urge the Court to rule in a way that preserves lawful Pentagon power. A careful ruling in Petitioner's favor would reinforce a broader and important principle: powerful supply-chain authorities remain lawful and lasting only when the decisionmaker makes the findings Congress required. A stay pending review would preserve

lawful Pentagon authority while ensuring that exclusion orders rest on the findings and procedures Congress required. If the Court concludes that further development is needed before final disposition, it should at minimum require the Department to lodge the contemporaneous materials needed to defend the order, including under seal or in camera if necessary.

## ARGUMENT

### I. THE STATUTE'S DEFINITIONS, INDIVIDUALIZED-TREATMENT RULES, AND REVIEW PROVISIONS SHOW THAT CONGRESS MEANT TO DISCIPLINE THIS DEPARTMENT'S POWER TO EXCLUDE SOURCES FROM THE GOVERNMENT SUPPLY CHAIN.

The lodestar of federal procurement law, including for the Department of War, is the Congressional mandate that federal programs be serviced through "full and open competition through the use of competitive procedures." 10 U.S.C. § 2304(a)(1)(A). Against this, Congress has provided certain, well-defined exceptions, which include the authority to exclude certain vendors (or "sources") from the procurement process. Section 4713 gives the Department substantial authority to designate source exclusions, but that authority is not open-ended. It authorizes covered procurement actions through concrete predicates and specified procedures. *See* 41 U.S.C. § 4713(a), (b), (k)(3)–(4). Congress provided direct review of those processes in this Court. See 41 U.S.C. § 1327.

Deference to national-security judgments does not enlarge delegated authority beyond the statutory terms Congress enacted. *See Learning Resources v. Trump*, No. 24–1287, 2026 WL 477534, at *10 (U.S. Feb. 20, 2026); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013); *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 326 (2014). The Department's discretion to protect national security and manage supply-chain risk is substantial. Courts owe respect to military and national-security judgments of the Executive "unless Congress specifically has provided otherwise". *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988). But deference does not displace the definitions, individualized-treatment rules, and review mechanisms Congress specifically prescribed for this regime. *See Foote v. Moniz*, 751 F.3d 656, 657-8 (D.C. Cir. 2014) (applying *Egan* only after confirming that the challenged action was made by personnel specifically trained and authorized under the governing regulatory scheme to render that predictive national-security judgment). Taken individually and as a whole, the predicates and procedures that Section 4713 prescribes show that Congress did not give the Secretary a free-floating power to disable otherwise qualified sources for reasons untethered to the statutory criteria.

An order designating a corporation as a supply chain risk is a significant government intervention in the market. Congress therefore intended to limit supply chain risk designations to circumstances where the Secretary had identified

concrete present dangers with particularity. This is most evident from the fact that Section 4713 defines "supply chain risk" in technical, operational terms. *See* 41 U.S.C. § 4713(k)(6). The definition covers sabotage, malicious function, extraction of data, and manipulation of covered articles. The broader statutory structure points the same way. It directs strategic planning around mitigation, best practices, incentives for private-sector risk management, and dealings with nongovernmental stakeholders. *See* 41 U.S.C. § 1324(a)(3), (5), (7).

Congress also forbade designations "solely" based on the foreign ownership of an otherwise qualified source. 41 U.S.C. § 4713(i). In other words, even where a source presents the inherent risks that can be assumed from its presumptive loyalties to a foreign government, the Department must still make a specific finding that a source poses the kinds of concrete present dangers described in 41 U.S.C. § 4713(k)(6).

Section 4713(f) additionally requires the Department to engage in an annual review of its determinations and promptly amend covered procurement actions as appropriate. That requirement confirms that Congress treated exclusion as a current, reviewable national-security judgment tied to an administrative record identifying a concrete present danger, not as a punitive imposition of disability.

And crucially for this Court's purposes, Congress mandated that designations rest on a record that is subject to judicial review to ensure the predicates and procedures it has mandated have been satisfied. It gave this Court jurisdiction and provided explicit authority to review classified and other national security information under seal or in camera where necessary. *See* 41 U.S.C. § 1327(b)(4); *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 317–19 (D.C. Cir. 2014). In doing so, it relied upon this Court's history of demonstrating that meaningful review and protected handling of sensitive materials can coexist. *See Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208–09 (D.C. Cir. 2001).

## II. SECTION 4713 REQUIRES A CONCRETE, REVIEWABLE SEQUENCE OF PROCEDURES BEFORE A SOURCE MAY BE EXCLUDED

Section 4713's substantive designation is cabined by disciplined procedural requirements that must be met before the Secretary may declare a source a "supply chain risk." Each of these procedures reflects important policy choices rooted in Congress's direction that a balance be struck between the potential benefits of excluding a risky source from the government supply chain and the costs to federal programs that are subject to Congressional oversight and appropriations. To achieve this balancing, Congress built in procedural safeguards to ensure that the Executive accounted for both sides of the ledger. In sum, the Court is not being

asked to impose procedures of its own; it is only being asked to enforce the ones Congress imposed. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,* 435 U.S. 519, 524, 543-44 (1978); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101-03 (2015).

### A. Section 4713 imposes a structured recommendation and consultation process.

Before designating an entity a "supply chain risk," Congress mandated that the Secretary obtain "a joint recommendation, in unclassified or classified form, from the chief acquisition officer and the chief information officer … which includes a review of any risk assessment … that there is a significant supply chain risk in a covered procurement." 41 U.S.C. § 4713(b)(1). Congress thus chose institutional vetting before exclusion, not *ad hoc* action. While not every imperfection in the agency process defeats agency action, procedural predicates to the exercise of a delegated power are requirements, and agencies are obliged to follow their own rules. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Service v. Dulles*, 354 U.S. 363, 372–73, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 546–47 (1959).

The current record does not show that the recommendation materials were produced. If they exist, they can be lodged under seal. If they do not, the order designating Petitioner lacks a predicate Congress required. Without such a record,

Petitioner is likely to succeed on the merits of its claim that its designation as a supply chain risk was unlawful.

### B. Section 4713 imposes a requirement for notice and an opportunity to respond, unless the Department properly invoked the urgent branch.

In the absence of exceptional circumstances requiring urgency, Section 4713 requires notice to the source and an opportunity to submit information and argument in opposition before the designation is made. 41 U.S.C. § 4713(b)(2), (c). Congress imposed this requirement because doing so gives the government the benefits of due process. By allowing vendor input into high-consequence procurement judgments that affect the capabilities and budgetary demands of government departments subject to ongoing Congressional oversight and appropriations, Congress ensured that such judgments reliably benefit from otherwise inaccessible information.

This Court has recognized that, even in national-security matters, official notice, disclosure of unclassified bases relied on, and a meaningful opportunity to respond can coexist with in camera treatment of classified evidence. *See Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 318–19 (D.C. Cir. 2014); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208–09 (D.C. Cir. 2001). Section 4713 itself makes vendor participation secrecy-compatible. Section 4713(d) requires that the source notice remain confidential

until a determination is made. And Section 1327(b)(4)(B) further provides this Court a mechanism to review sensitive support under seal or in camera where necessary. The Department therefore need not choose between confidentiality and the process Congress required.

Even where the Department may invoke special procedures to address urgent national security interests, those special procedures alter the sequencing, but not the substance of the process Congress directed. Under Section 4713(c), the Department may *delay* providing notice to a source "to the extent necessary to address such national security interest." 41 U.S.C. § 4713(c)(1). But it must also then provide the required notice "as soon as practicable after addressing the urgent national security interest." *Id*. § 4713(c)(2). The statute, in other words, allows a different sequence where the agency head determines that urgent national-security interests require immediate action. But urgency does not alter the substance.

The current record does not show whether the Department complied with the notice and response requirements, whether it invoked the urgency exception, or whether it satisfied the urgency exception's particular follow-on requirements. In the absence of such a record, Petitioner is likely to succeed on the merits of its claim that its designation as a supply chain risk was unlawful.

***C. Section 4713 requires a written determination identifying necessity, less intrusive measures, and scope.***

Section 4713 requires the Department to make a written determination that (A) designating a source a "supply chain risk" is "necessary to protect national security," (B) "less intrusive measures are not reasonably available to reduce such supply chain risk," and (C) that "the use of such authorities will apply to a single covered procurement or a class of covered procurements, and otherwise specifies the scope of the determination." 41 U.S.C. § 4713(b)(3).

These written findings are not incidental or pro forma. Like other mandatory findings required in federal law, an agency must explain the choice made on the facts found before the Court in a manner that is sufficiently precise and logical to survive judicial review. In other words, they must "articulate [a] rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

The scope requirement, in particular, serves important legislative goals. Congress authorized defined covered procurement actions. It did not authorize an exclusion power divorced from covered-procurement standards.

The Court need not resolve every edge case now to insist that the Department identify the scope on which it relies. But in the absence of such a

record, Petitioner is likely to succeed on the merits of its claim that its designation as a supply chain risk was unlawful.

### D. Section 4713 requires congressional notification, including discussion of alternatives.

Section 4713 requires notice to specified congressional committees, together with materials that include the recommendation and a discussion of the basis for the determination, including why less intrusive measures were not reasonably available. 41 U.S.C. § 4713(b)(4). Congressional notification allows Congress to ensure that the exclusion of particular sources for government programs that it authorizes and must fund is exercised through documented, reasoned decision-making. It further gives Congress the opportunity to consider legislative action on decisions with which it disagrees.

The current record does not show the required notification being made to Congress. If it exists, the Department can produce it under seal or in camera as appropriate. In the absence of such a record, Petitioner is likely to succeed on the merits of its claim that its designation as a supply chain risk was unlawful.

### E. Agency-created reconsideration cannot substitute for compliance with the statutory predicate.

While offering an internal reconsideration process may supplement the statutory scheme in valuable ways, it cannot cure fatal defects in the Department's

compliance with the predicates Congress required in Section 4713. A post-determination reconsideration process does not erase the need for the recommendation, notice sequence, written determination, scope identification, and alternatives finding Congress specified. Later review by the agency may clarify reasoning already adopted. Formal reopening may produce a new reviewable order. But optional reconsideration cannot retroactively create predicates Congress required at the time of action. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 37-8 (2020); *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). The action of the agency must be judged according to the justifications that the record discloses it was based on; the agency cannot simply rationalize the action later. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

## III. THE "LESS INTRUSIVE MEASURES" FINDING IS A CENTRAL SAFEGUARD, NOT A PLEA FOR LENIENCY

Among the predicates Congress has imposed, Amici believe that the less-intrusive-measures finding warrants special emphasis. Before invoking exclusion authority, Congress required the Department to determine that less intrusive measures than designation were not reasonably available. 41 U.S.C. § 4713(b)(3)(B). This is not a least-restrictive-means rule, and vendors are not entitled to a preferred mitigation package. Nor are policy changes forbidden. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But by requiring

federal agencies to consider "less intrusive measures" in good faith before effectively banning a vendor as a "supply chain risk," and by making such determinations judicially reviewable, Congress intended such designations to be necessary and appropriate to the risks presented.

### A. The statute requires a contemporaneous alternatives analysis.

The less-intrusive-measures requirement is meaningful only if it rests on a contemporaneous analysis of concrete, mission-compatible alternatives. Mission-compatible alternatives may include such measures as tailored contract restrictions, phased mitigation measures, technical controls, or other procurement-specific steps to mitigate risk.

The Court need not substitute its choices for the Department's nor require a thousand-page documented review. The Department's analysis can be classified. It can be terse. But whatever its format, it must exist at the time the decision is made. The Department must have made the findings Congress required before or contemporaneously with issuing the order, and not only after litigation has commenced. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). When Congress makes a consideration relevant to an agency's threshold decision, the agency must address it at that decision point, and it may not ordinarily cure the omission through post hoc reasoning once challenged. *See Michigan v. EPA*, 576 U.S. 743, 752–53, 758 (2015); *Regents* at 31–33.

Congress' requirement that such alternatives must be considered at the time the decision is made echoes principles of administrative law that apply broadly, even outside the acquisition context. An agency acts arbitrarily when it "entirely fail[s] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Where Congress specifically required consideration of reasonably available alternatives, the absence of a contemporaneous alternatives analysis is a fundamental defect.

The less-intrusive-measure requirement matters most when the source is otherwise qualified and subject to ordinary forms of oversight, audit, monitoring, and technical mitigation. In that setting, the range of mission-compatible alternatives may be broader. The statute requires the Department to confront those governability tools before resorting to exclusion.

### B. This safeguard has immediate Section 3252 carryover value because Congress reused it there.

Section 3252 uses materially similar less-intrusive-measures language to that in 41 U.S.C. § 4713. *See* 10 U.S.C. § 3252(b)(2)(B). Reaffirming the need for a disciplined administrative process here therefore has broader institutional value. It would reinforce the principle that powerful supply-chain authorities remain lawful and credible only when the decisionmaker has determined, on a contemporaneous record, that less intrusive measures were not reasonably available. *See Northcross*

*v. Memphis Bd. of Educ.*, 412 U.S. 427, 428 (1973) (per curiam) (treating materially similar language in related statutes as a strong indication that the provisions should be construed alike). The parallel-text point is modest. It does not erase the differences between the statutes, but it does support giving a shared safeguard a disciplined meaning across related supply-chain authorities.

## IV. THE COURT CAN ENFORCE CONGRESS'S DESIGN WITHOUT WEAKENING LAWFUL PENTAGON ACTION

The Court can enforce the predicates and procedures Congress has required without limiting the Pentagon's lawful authority. Section 4713 protects the confidentiality of source notice until determination, and Section 1327 permits the Department to defend classified deliberations through sealed or in camera submissions. *See* 41 U.S.C. §§ 4713(d), 1327(b)(4); *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 317–19 (D.C. Cir. 2014). The Court can require the record Congress demanded without compelling public disclosure of sensitive information.

If the materials now before the Court do not establish compliance with Section 4713's mandatory predicates, the Court should stay the order pending review. *See Nken* at 426, 434–35 (2009). It could also issue a limited remand requiring the Department to lodge the contemporaneous materials on which the order depends. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Any such relief should make clear that the Department remains free to issue a new or revised order promptly if it satisfies the statutory requirements.

A disciplined approach, supported by meaningful judicial review, serves the public interest in a regime of this consequence. *See Sterling v. Constantin*, 287 U.S. 378, 401 (1932) ("What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions"). A ruling that enforces Section 4713 as written would do more than resolve this application; it would clarify the legal conditions under which advanced-technology firms, capital providers, and supporting institutions engage with the federal government. That clarity has sector-wide significance. It affects whether firms developing strategically important technologies view federal procurement as a market governed by knowable statutory constraints, disciplined decision-making, and judicial review, or instead as a domain of unpredictable exclusion. Enforcing Congress's predicates here would strengthen, not weaken, the long-run credibility of lawful government action in these markets.

**CONCLUSION**

Because petitioner has shown a strong likelihood of success on its claim that

Section 4713's mandatory predicates and procedures were not satisfied on the

present record, the Court should stay the order pending review.

Respectfully submitted,

/s/ Tim Hwang
Tim Hwang
Foundation for American Innovation
2443 Fillmore St #380-3386
San Francisco, California, 94115
Telephone: (973)-960-4955
tim.hwang@thefai.org
*Counsel for Amici Curiae*
Dated: March 12, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with Fed. R. App. P. 29(a)(5) and 32(f) because it

contains 3541 words, excluding the parts of the brief exempted by Fed. R. App. P.

32(f).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Word in 14-point Times

New Roman.

/s/ Tim Hwang
Tim Hwang
*Counsel for Amici*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2026, I caused the foregoing brief to be served on all parties through the Court's electronic filing system.

/s/ Tim Hwang
Tim Hwang
*Counsel for Amici*

# APPENDIX

# APPENDIX — LIST OF AMICI CURIAE

SETH BANNON
Founding Partner
FIFTY YEARS

ANDREW FREEDMAN
Co-Founder and Chief Strategic Officer
FATHOM

JORDAN SCHNEIDER
Founder
CHINATALK

MARTIN CHORZEMPA
Dennis Weatherstone Senior Fellow
PETERSON INSTITUTE FOR INTERNATIONAL ECONOMICS

ALEX IMAS
Professor of Economics and Applied AI
UNIVERSITY OF CHICAGO BOOTH SCHOOL OF BUSINESS

MAX SPERO
Co-Founder and CEO
PANGRAM

ALEC STAPP
Co-Founder and Co-CEO
INSTITUTE FOR PROGRESS

DEAN BALL
Senior Fellow
FOUNDATION FOR AMERICAN INNOVATION

DWARKESH PATEL
Host
DWARKESH PODCAST

JASON CRAWFORD
Founder and President
ROOTS OF PROGRESS

SAIF KHAN
Former Director for Technology and National Security
WHITE HOUSE NATIONAL SECURITY COUNCIL