No. 26-1049

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHROPIC PBC,
*Petitioner,*

*v.*

U.S. DEPARTMENT OF WAR, *et al.,*

*Respondents.*

ON PETITION FOR REVIEW
OF A NOTICE OF THE DEPARTMENT OF WAR UNDER 41 U.S.C. § 4713

## AMENDED BRIEF OF FREEDOM ECONOMY BUSINESS ASSOCIATION AND VALUES-LED INVESTORS AS *AMICI CURIAE* IN SUPPORT OF PETITIONER AND A STAY PENDING REVIEW

The Norton Law Firm PC
George C. Harris
gharris@nortonlaw.com
    *Counsel of Record*
Fred Norton
Jo Levy
Josephine K. Petrick
Celine G. Purcell
Heather Bates
Hayley Landman
Saja Spearman–Weaver
300 Frank H. Ogawa Plaza, Ste. 450
Oakland, CA 94612
510-906-4900

ATTORNEYS FOR *AMICI CURIAE* FREEDOM ECONOMY
BUSINESS ASSOCIATION AND VALUES-LED INVESTORS

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure and Circuit Rules 26.1 and 28(a)(1)(A), *Amici* provide the following disclosures.

The full list of *Amici* appears in the accompanying Appendix of *Amici*.

*Amici* Howard Fischer, Thomas Haslett, and John O'Farrell are individuals and have nothing to disclose.

Seven of the *Amici* listed in the Appendix are companies, associations, nonprofit organizations, or other similar entities that have no parent company and in which no publicly held company has a 10% or greater ownership interest. Those *Amici* are:

- Freedom Economy Business Association

- Candide Group

- Investor Advocates for Social Justice

- The Nathan Cummings Foundation, Inc.

- Pluralize Capital

- The Interfaith Center on Corporate Responsibility, and

- Humanize Wealth

Two of the *Amici* listed in the Appendix are companies, associations, nonprofit organizations, or similar organizations that have a parent company and/or in which a publicly held company has a 10% or greater ownership interest. Those *Amici* are:

- Mission Driven Finance (MDF) – its Parent corporation, MDF AP Holdings, LLC owns more than 10% of MDF's shares.

- Omidyar Network LLC – its Parent corporation, ON Affiliates LLC, owns more than 10% of Omidyar Network LLC's shares.

*See* Cir. R. 26.1(a).

With respect to the *Amicis* that are entities, as detailed in the enclosed Interest of *Amici*, their general nature and purpose is to serve as trade organizations of institutional investors, asset managers, asset owners, allocators, and service providers committed to advancing sustainable investment practices. *See id.* R. 26.1(b).

Dated: March 16, 2026

/s/ George Harris
George Harris
Attorneys for *Amici Curiae*

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT.................................................2

TABLE OF CONTENTS .........................................................4

TABLE OF AUTHORITIES.....................................................6

BRIEF OF *AMICI CURIAE* IN SUPPORT OF PETITIONER
    AND A STAY PENDING REVIEW................................8

INTEREST OF *AMICI* ...........................................................8

INTRODUCTION....................................................................9

ARGUMENT.........................................................................11

I.    Anthropic Is Likely to Succeed on the Merits..............11

    A.    The Challenged Actions Exceed Executive
        Authority and Violate Federal Law. ....................11

    B.    The Challenged Actions Constitute Viewpoint-
        Based Retaliation in Violation of the First
        Amendment. .........................................................15

II.    The Administration's Unlawful Actions Will Cause
    Irreparable Harm Extending Well Beyond Anthropic.
    .......................................................................................17

    A.    The Challenged Actions Undermine the Stability,
        Predictability, and Rule of Law on Which the
        Market Relies. .......................................................17

    B.    The Challenged Actions Chill Protected Speech
        and Values-Led Investment. ................................19

CONCLUSION .....................................................................24

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
    LIMITS .......................................................................25

4

CIRCUIT RULE 29(D) CERTIFICATION ...........................26

APPENDIX OF *AMICI*...........................................................27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asia Pac. Airlines v. United States,*
68 Fed. Cl. 8 (2005) .............................................................18

*Bantam Books, Inc. v. Sullivan,*
372 U.S. 58 (1963) ...............................................................15

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) .......................................................18, 20

*Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,*
682 F.3d 1293 (11th Cir. 2012) .........................................17

*Frederick Douglass Found., Inc. v. D.C.,*
82 F.4th 1122 (D.C. Cir. 2023) ....................................16, 17

*Friedler v. Gen. Servs. Admin.,*
271 F. Supp. 3d 40 (D.D.C. 2017) .....................................13

*Gonzalez v. Freeman,*
334 F.2d 570 (D.C. Cir. 1964) ...........................................12

*Learning Res., Inc. v. Trump,*
No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) .........12

*Nat'l Rifle Ass'n of Am. v. City of L.A.,*
441 F. Supp. 3d 915 (C.D. Cal. 2019) ...............................15

*Nat'l Rifle Ass'n of Am. v. Vullo,*
602 U.S. 175 (2024) ............................................................15

*Old Dominion Dairy Prods., Inc. v. Sec'y of Def.,*
631 F.2d 953 (D.C. Cir. 1980) ...........................................12

*Perkins Coie LLP v. U.S. Dep't of Just.,*
783 F. Supp. 3d 105 (D.D.C. 2025) ....................................16

*Turner Broad. Sys., Inc. v. FCC,*
  512 U.S. 622 (1994) ...........................................................20

*United States v. Borjesson,*
  92 F.3d 954 (9th Cir. 1996) ................................................17

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ...........................................................12

### Statutes

41 U.S.C. § 3301 ...................................................................18

41 U.S.C. § 4713 .................................................1, 11, 13, 14

### Rules

D.C. Cir. R. 29....................................................................26

Fed. R. App. P. 26.1 ...........................................................2

Fed. R. App. P. 28 ...........................................................2, 3

Fed. R. App. P. 29 ............................................................25

### Regulations

48 C.F.R. § 9.402(b) ...........................................................17

DFARS § 239.7301(1)(v) ...................................................14

## BRIEF OF *AMICI CURIAE* IN SUPPORT OF PETITIONER AND A STAY PENDING REVIEW

## INTEREST OF *AMICI*[1]

*Amicus Curiae* the Freedom Economy Business Association is a national membership community of more than 150 institutional investors, asset managers, asset owners, allocators, and service providers committed to advancing sustainable investment practices. Freedom Economy members collectively represent more than $25 billion in assets under management and influence. *Amici* also include eight other entities and three individuals who are values-led investors that rely on rules-based market conditions and a stable legal environment to make their investment decisions. The full list of *Amici* appears in the Appendix of *Amici*.

---

[1] No party's counsel authored this brief in whole or in part, and other than *Amici* and their counsel, no person, party, or party's counsel contributed money to fund the preparation or submission of the brief. All parties consent to *Amici* filing this brief.

*Amici* have a direct and substantial interest in the outcome of this litigation.  Responsible AI development is one of the most consequential areas of investment activity today, and *Amici* have invested significantly in companies across the AI ecosystem whose valuations and long-term viability depend on a predictable regulatory environment and protection from arbitrary government action.  The Administration's retaliatory actions against Anthropic pose a profound threat not only to Anthropic but to the broader investment ecosystem that supports innovation in this sector.

*Amici* thus have a strong interest in the subject-matter of this litigation and submit this *Amicus* brief in the hope of being of assistance to the Court in its deliberation.

## INTRODUCTION

The February 2026 Department of War pronouncement and letter (the "Challenged Actions") targeting Anthropic disrupt not just one company's business but the investment markets that sustain American innovation.  Although the

government must be free to choose who it does business with, and on what lawful terms, it cannot do what the Administration has done here: summarily blacklist a company for expressing a competing policy view about how its products should be used.  The Challenged Actions are ultra vires, arbitrary and capricious, undertaken without due process, and violate Anthropic's First Amendment right to free expression.  But the harm extends beyond Anthropic to any market participant that relies on process, transparency, and the rule of law to make informed investment decisions, and particularly to values-led investors who align their capital with companies' core values.

Reasonable investors cannot operate in this environment.  All investments, especially with government contractors, are now clouded by the threat that the Administration can, at any time and for any reason, designate an American company as an adversary and seek to destroy it.  Dean Ball, President Trump's former Senior

Policy Advisor for AI and Emerging Tech, reacted to the Challenged Actions bluntly and aptly: "Nvidia, Amazon, Google will have to divest from Anthropic if Hegseth gets his way.  This is simply attempted corporate murder.  I could not possibly recommend investing in American AI to any investor; I could not possibly recommend starting an AI company in the United States."[2]

## ARGUMENT

### I.    Anthropic Is Likely to Succeed on the Merits.

#### A.    The Challenged Actions Exceed Executive Authority and Violate Federal Law.

President Trump directed all federal agencies to stop working with Anthropic (the "Presidential Directive"). Secretary Hegseth then directed all federal military contractors to cease "any commercial activity" with Anthropic (the "Secretarial Order") and labeled Anthropic a "supply chain risk" under 41 U.S.C. § 4713 (the "Secretarial Letter").  Pet. for Rev. Add. 1b.  The Secretarial Letter seeks

---

[2] Dean Ball (@deanwball), X (Feb. 27, 2026, at 2:46 PM), https://x.com/deanwball/status/2027515599358730315.

11

to provide a post-hoc justification for the Secretarial Order, which in turn purports to work "in conjunction with" the Presidential Directive. *See id.*, Add. 1a-1b. All three actions violate the law.

Executive power must arise from Congress or the Constitution itself. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 586–87 (1952); *Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534, at *8 (U.S. Feb. 20, 2026). Yet Congress has conferred no general authority on the President to debar a company from the entire federal government, much less without notice or process.

In *Gonzalez v. Freeman*, 334 F.2d 570 (D.C. Cir. 1964) (Burger, J.), this Court held that even a single-agency debarment was invalid absent regulations establishing standards and procedures, notice, hearings, and findings— "to reach any other conclusion would give rise to serious constitutional issues." *Id.* at 579; *see also Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 955–56 (D.C. Cir. 1980) (holding "that when the Government effectively

bars a contractor from virtually all Government work due to charges that the contractor lacks honesty or integrity," due process requires notice and opportunity to be heard before adverse action); *Friedler v. Gen. Servs. Admin.*, 271 F. Supp. 3d 40, 61 (D.D.C. 2017) (debarment ignoring procedural mandates is arbitrary and capricious).

The Secretarial Order prohibiting all other military contractors from conducting "any commercial activity" with Anthropic likewise has no authority in any statute or regulation. Congress gave the Secretary circumscribed authority in 41 U.S.C. § 4713 to designate a "supply chain risk" only after satisfying specific procedural prerequisites and making required findings, including a determination that less intrusive measures are not reasonably available. Id. § 4713(b)(3)(B). Reasonable market participants expect and rely on clear limits and detailed procedural safeguards that limit the power to take that drastic action. Even then, the statute authorizes limiting a company's participation only in a specific "covered procurement" or "class of covered

procurements." *Id.* § 4713(b)(3)(C); *see also* DFARS
§ 239.7301(1)(v).  It nowhere permits the Secretary to direct
all military contractors to treat Anthropic as a pariah in all
business dealings.  Yet that is what the Secretary purports
to do.

The Secretarial Letter nominally invokes Section 4713
but substantively violates it.  Section 4713(k)(6) defines a
"supply chain risk" as the risk that a person may sabotage,
maliciously introduce unwanted function, extract data, or
otherwise subvert covered articles.  But nothing in the
Presidential Directive, the Secretarial Order, or the
Secretarial Letter supports a conclusion that Anthropic, an
American company whose services the Administration
intends to keep using for at least the next six months, poses
any such risk.  Anthropic and the Administration simply
reached an impasse in contract negotiations.

Anthropic's petition is likely to succeed on the merits.

**B.    The Challenged Actions Constitute Viewpoint-Based Retaliation in Violation of the First Amendment.**

Even if the Administration had authority to undertake the Challenged Actions (it did not), those actions would still be unlawful because the Administration expressly took them to punish Anthropic for expressing disfavored views.

The First Amendment bars the government from "us[ing] the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024) (*Vullo*).  And "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech, directly or (as alleged here) through private intermediaries." *Id.* at 197; *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (informal censorship and coercion—even absent a formal ban—can constitute a First Amendment violation); *Nat'l Rifle Ass'n of Am. v. City of L.A.*, 441 F. Supp. 3d 915, 942 (C.D. Cal. 2019) (granting plaintiff injunction against an ordinance adopted "in direct response" to the plaintiff's

political speech and expression); *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 170 (D.D.C. 2025) (holding Administration could not "indirectly" interfere with attorney-client relationships by pressuring clients).

The First Amendment's protection reaches the selective use of neutral legal authority: "The government may not enforce the laws in a manner that picks winners and losers in public debates." *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1142 (D.C. Cir. 2023).

The Challenged Actions violate these principles. The Administration is not simply choosing a different vendor. It is punishing Anthropic—designating it a "supply chain risk" and directing a boycott of it by federal agencies and contractors—because Anthropic expressed a contrary view on a matter of profound public importance: the extent to which novel and largely untested generative AI technology may be used for mass surveillance of U.S. citizens and lethal autonomous warfare. Federal debarment authority protects the government; it must not be employed as a punitive

measure.  *See United States v. Borjesson*, 92 F.3d 954, 955 (9th Cir. 1996) (citing cases); *see also* 48 C.F.R. § 9.402(b).

The Administration can choose which private companies win a government contract.  *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293 (11th Cir. 2012).  But it cannot pick winners and losers based on viewpoint.  *See Frederick Douglass Found.*, 82 F.4th at 1142.  That is exactly what the Administration seeks to do here.  The First Amendment forbids it.

For this reason, too, Anthropic is likely to succeed on the merits.

## II.    The Administration's Unlawful Actions Will Cause Irreparable Harm Extending Well Beyond Anthropic.

### A.    The Challenged Actions Undermine the Stability, Predictability, and Rule of Law on Which the Market Relies.

Lawless and arbitrary government action is anathema to investment and free enterprise.  The comprehensive statutory and regulatory framework for federal procurement exists for a reason:  it provides clear standards, fairness, and

stability through a policy of "full and open competition." 41 U.S.C. § 3301(a)(1). When the Administration bypasses that framework, directing every agency and all military contractors to blacklist a company via social media fiat, it harms investors and markets. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (2014) ("Protecting corporations from government seizure of their property without just compensation protects all those who have a stake in the corporations' financial well-being."); *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 27 (2005) ("[I]t is well-established that the public interest is well-served by ensuring that the government procurement process is fair."). Investors like *Amici* invest billions of dollars in reliance on the expectation that government will follow the law, respect property rights, and provide meaningful process before taking adverse action.

The risk that an industry-leading American company can be summarily excluded from all business with the U.S. government and its contractors, overnight, is intolerable to

investment and free enterprise. Given the scale of federal government contracting (over $755 billion in fiscal year 2024 alone[3]), the chilling effect on investment is all the greater.

The damage extends well beyond Anthropic to its investors and to investment markets broadly. Stable markets depend on the rule of law, and the public interest in preserving them weighs heavily in favor of granting Anthropic's petition and stay request.

### B. The Challenged Actions Chill Protected Speech and Values-Led Investment.

The Challenged Actions are all the more harmful because they target Anthropic for exercising its right to express a view on a matter of profound public importance: the responsible use of generative AI technology.

"At the heart of the First Amendment lies the principle that each person should decide for himself or herself the

_____

[3] *See* U.S. Government Accountability Office, *A Snapshot: Government-Wide Contracting—A 2024 Update*, https://files.gao.gov/multimedia/Federal_Government_Contracting-FY2024/index.html.

ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). The Supreme Court has recognized that both individuals and companies have protected beliefs and guiding principles that are insulated from the preferences of a given Administration. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690 (2014). Those rights extend to those "associated with a corporation in one way or another," including investors. *Id.* at 706–07. Values-led investors choose where to place their capital as a form of expression, showing solidarity with the principles of the companies in which they invest. The Challenged Actions target and punish that expression.

The Administration's attack on Anthropic stems from Anthropic's refusal to offer its generative AI technology for (1) mass surveillance of U.S. citizens or (2) lethal autonomous warfare—each of which would violate Anthropic's stated principles as a public benefit corporation. The Administration's demands are incompatible with

Anthropic's mission statement; if Anthropic were to comply, that compliance would weaken its role as a responsible and deliberate leader in the emerging field of AI.

*Amici* are values-led investors. They deploy their capital to companies that not only provide valuable goods and services for a profit, but do so in accordance with other principles that those companies and their investors believe benefit society as a whole. Values-led investing does not belong to a single party or political ideology—in 2024, investors across the political spectrum invested over $1.5 trillion in capital in companies and funds whose social missions they support.[4] If the ability to contract with the federal government is limited to companies that align with a given Administration's policy views, such investment becomes untenable. Worse, the shifts in policy from

_____

[4] Hand, D., Ulanow, M., Pan, H., Xiao, K. (2024), *Sizing the Impact Investing Market 2024, The Global Impact Investing Network (GIIN)*, New York, *available at* https://s3.amazonaws.com/giin-web-assets/giin/assets/publication/giin-sizingtheimpactinvestingmarket-2024.pdf.

administration to administration every four years threaten
to subject over three quarters of a trillion dollars in
government contracting, and still billions more in contracts
with government contractors, to a crude form of patronage,
where perceived allies participate and perceived adversaries
are shut out.  The United States has long attracted
investment capital from all over the globe because its
economy is based on merit and ingenuity—not currying favor
with the powers that be.[5]

The harm extends beyond values-led investors. Every
investor's ability to make informed decisions is impaired
when a company can be destroyed for expressing a policy
commitment an Administration dislikes.  The Challenged
Actions send a clear message to every company that does
business with the government: disagreement risks

_____

[5] *See* Jorge Farinha & Oscar López-de-Foronda, *The impact of corruption on investment and financing in the European Union: new insights*, 30 European J. of Finance 339 (2024), *available at* https://www.tandfonline.com/doi/full/10.1080/1351847X.2023.2240846#d1e167.

debarment.  The market amplifies that message, as risk-averse partners and investors flee companies they fear may be targeted (or, in Mr. Ball's trenchant phrasing, "murdered").

If allowed to stand, the Challenged Actions will chill speech on important issues by some of the largest and most influential actors in the American economy.  Government contractors will learn to say nothing, commit to nothing, and stand for nothing, because any stated principle becomes a liability the moment it conflicts with the political preferences of the party in power.  Values-led investors like *Amici* will be left to choose between companies that have no principles, those that are too fearful to announce their principles, and those whose stated principles conveniently align with the prevailing wind of the then-current Administration's views. This barren landscape of corporate speech and expression is the opposite of what a free-market economy or a free market of ideas should produce.

A stay pending review is appropriate to preserve the status quo as it existed before the Administration's unlawful actions disrupted it: one in which companies competed on the merits, investors allocated capital based on transparent legal rules, and companies could express their views without fear of government reprisal.

## CONCLUSION

*Amici Curiae* respectfully urge the Court to grant Anthropic's emergency motion for a stay pending review.

Dated: March 16, 2026      Respectfully submitted,

THE NORTON LAW FIRM PC

*/s/ George Harris*
George Harris
Attorneys for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS

The accompanying amicus brief is 2,449 words in length, fewer than half of the 5,200 words allowed for motions. *See* Fed. R. App. P. 29(a)(5); *id.* R. 27(d)(2); Cir. R. 27(a)(2).

Dated: March 16, 2026

*/s/ George Harris*

George Harris
Attorneys for *Amici Curiae*

## CIRCUIT RULE 29(D) CERTIFICATION

Pursuant to D.C. Circuit Rule 29(d), counsel for *Amici* certify that a separate brief is necessary. This brief is filed at the emergency motion stage on an expedited timeline that did not permit coordination with other *amici*. Moreover, *Amici*'s perspective as values-led investors is distinct from that of other *amici* supporting Anthropic's emergency motion, and a separate brief is necessary to present that perspective to the Court.

Dated: March 16, 2026

*/s/ George Harris*

George Harris
Attorneys for *Amici Curiae*

# APPENDIX OF *AMICI*

Freedom Economy Business Association

Candide Group

Howard Fischer (an individual)

Thomas Haslett (an individual)

Investor Advocates for Social Justice

Mission Driven Finance

The Nathan Cummings Foundation, Inc.

Omidyar Network LLC

Pluralize Capital

The Interfaith Center on Corporate Responsibility

Humanize Wealth

John O'Farrell (as individual)