NOT YET SCHEDULED FOR ORAL ARGUMENT

**No. 26-1049**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

ANTHROPIC PBC,

*Petitioner,*

v.

UNITED STATES DEPARTMENT OF WAR; PETER B. HEGSETH, in his official capacity as secretary of war,

*Respondents.*

_____

On Petition for Judicial Review of Department of War 41 U.S.C. § 4713 Notice

_____

**BRIEF OF 149 FORMER JUDGES AND DEMOCRACY DEFENDERS FUND AS *AMICI CURIAE* IN SUPPORT OF PETITIONER**

_____

**DEMOCRACY DEFENDERS FUND**
Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 514-9948
*Counsel for Former Judges*

**GIBSON, DUNN & CRUTCHER LLP**
Lauren Goldman
200 Park Ave.
New York, NY 10166-0193
(212) 351-4000
*Counsel for Democracy Defenders Fund*

**GIBSON, DUNN & CRUTCHER LLP**
Gregg J. Costa
811 Main Street, Suite 3000
Houston, TX 77002-6117
(346) 718-6600

Sophia Brill
   *Counsel of Record*
Connor P. Mui
1700 M St. NW
Washington, DC 20036-4504
(202) 955-8500

Martie Kutscher
310 University Ave.
Palo Alto, CA 94301-1744
(650) 849-5300
*Counsel for Democracy Defenders Fund*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amici curiae* submit this certificate as to parties, rulings, and related cases.

### A.    PARTIES AND AMICI

As of March 17, 2026, the date on which this brief was filed, *amici* are not aware of any other parties, intervenors, or *amici* who have entered an appearance in this Court, other than those listed in the briefs of Petitioner and Respondents or disclosed by other *amici* to date.

### B.    RULINGS UNDER REVIEW

References to the rulings at issue appear in Addendum A to Petitioner's Emergency Motion for Stay Pending Review

### C.    RELATED CASES

*Anthropic PBC v. U.S. Department of War, et al.*, No. 26-cv-1996 (N.D. Cal.).  Counsel is unaware of any other related cases currently pending before this Court or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

**CERTIFICATE OF SEPARATE BRIEF**

Pursuant to D.C. Circuit Rule 29(d), counsel submits that a separate brief from former federal and state judges as *amici* is necessary. Counsel is not aware of any other amicus brief addressing the subject of this brief, *i.e.*, the role of the judiciary in adjudicating statutory claims related to national security interests. As former judges with centuries of collective experience on the bench, *amici* are uniquely well suited to offer their perspective about the ability of the judiciary to apply standard tools of statutory interpretation in such contexts while affording appropriate deference to the policy and national security judgments of other branches of government.

## TABLE OF CONTENTS

Page

IDENTITY AND INTEREST OF *AMICI CURIAE* ................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 3

ARGUMENT ............................................................................................. 6

    I.    THE EXECUTIVE BRANCH'S INVOCATION OF NATIONAL SECURITY AUTHORITIES DOES NOT DISPLACE THE JUDICIARY'S INDISPENSABLE ROLE. ...................................................................................... 6

        A.    The Court Must Perform its Ordinary Functions of Judicial Review. .................................................................. 6

        B.    When the Executive Branch Acts Pursuant to Statute, the Judiciary Must Apply Ordinary Tools of Interpretation to Ensure Those Actions Fall Within Boundaries Prescribed by Congress. ............................... 11

        C.    The Judiciary Must Further Ensure the Executive Branch Adheres to Core Procedural Requirements ......... 17

    II.    THE REMEDY SOUGHT BY PETITIONER WOULD NOT REQUIRE JUDICIAL ENCROACHMENT ON THE EXECUTIVE BRANCH'S NATIONAL SECURITY PREROGATIVES ................................................................... 21

CERTIFICATE OF COMPLIANCE AND SERVICE ............................ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Al-Aulaqi v. Obama,*
  727 F. Supp. 2d 1 (D.D.C. 2010) ............................................................ 9

*Associated Press v. Budowich,*
  No. 25-5109 Dkt. 1 (D.C. Cir. Apr. 10, 2025) .................................... 23

*Biden v. Nebraska,*
  600 U.S. 477 (2023) .............................................................................. 12

*Cohens v. Virginia,*
  19 U.S. (6 Wheat.) 264 (1821) ............................................................... 9

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976) ................................................................................ 6

*Davis v. Bandemer,*
  478 U.S. 109 (1986) ................................................................................ 9

*El-Shifa Pharmaceutical Industries Co. v. United States,*
  607 F.3d 836 (D.C. Cir. 2010) ............................................................... 9

*Epic Sys. Corp. v. Lewis,*
  584 U.S. 497 (2018) .............................................................................. 16

*FBI v. Fikre,*
  601 U.S. 234 (2024) ................................................................................ 6

*Hamdan v. Rumsfeld,*
  548 U.S. 557 (2006) .............................................................................. 12

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) .................................................................................. 10

*Immigration & Naturalization Servs. v. Chadha,*
  462 U.S. 919 (1983) .............................................................................. 11

vi

# TABLE OF AUTHORITIES
*(continued)*

*Korematsu v. United States,*
323 U.S. 214 (1944), *overruled by Trump v. Hawaii,* 585
U.S. 667 (2018) ...................................................................... 7

*Learning Resources, Inc. v. Trump,*
146 S. Ct. 628 (2026) .............................. 4, 8, 11, 12, 13, 14, 15, 16, 21

*Lee v. Garland,*
120 F.4th 880 (D.C. Cir. 2024) ........................................... 23

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024) .............................................................. 6

*Maracich v. Spears,*
570 U.S. 48 (2013) ............................................................... 14

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137 (1803) ............................................... 6

*Ex parte Milligan,*
71 U.S. (4 Wall.) 2 (1866) ..................................................... 7

*Mistretta v. United States,*
488 U.S. 361 (1989) ............................................................. 11

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State,*
251 F.3d 192 (D.C. Cir. 2001) ......................................... 19, 21

*New York Times Co. v. United States,*
403 U.S. 713 (1971) .............................................................. 8

*Noem v. Abrego Garcia,*
145 S. Ct. 1017 (2025) ......................................................... 10

*People's Mojahedin Org. of Iran v. U.S. Dep't of State,*
613 F.3d 220 (D.C. Cir. 2010) ...................................... 4, 19, 20

*Ralls Corp. v. Committee on Foreign Investment in the
United States,*
758 F.3d 296 (D.C. 2014) ........................... 4, 7, 19, 20, 22

*Rotkiske v. Klemm,*
589 U.S. 8 (2019) ................................................................ 16

# TABLE OF AUTHORITIES
*(continued)*

*United States v. Fischer*,
  64 F.4th 329 (D.C. Cir. 2023) ...............................................................15

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..............................................................................8

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
  566 U.S. 189 (2012)............................................................... 4, 9, 10, 22

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015)..................................................................................11

## Statutes

8 U.S.C. § 1189............................................................................................18

41 U.S.C. § 1327(b)(2)...................................................................... 3, 10, 20

41 U.S.C. § 1327(b)(2)(A)–(E)......................................................................22

41 U.S.C. § 1327(b)(2)(E).............................................................................20

41 U.S.C. § 4713............................................................................................3

41 U.S.C. § 4713(b) ......................................................................................19

41 U.S.C. § 4713(c).......................................................................................19

41 U.S.C. § 4713(k)(6)............................................................................ 4, 15

50 U.S.C. § 1701(a) ......................................................................................12

50 U.S.C. § 1702............................................................................................18

50 U.S.C. § 4511............................................................................................18

50 U.S.C. § 4565............................................................................................18

National Defense Authorization Act for Fiscal Year 2019 §
  889, Pub. L. No. 115-232, 132 Stat. 1917 (Aug. 13, 2018)..................17

# TABLE OF AUTHORITIES
*(continued)*

## Other Authorities

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Text* 195 (2012)..........................................................................14

## Regulations

Exec. Order No. 14193, 90 Fed. Reg. 9113 (2025)..................................12

Exec. Order No. 14257, 90 Fed. Reg. 15041 (2025)...............................12

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici* are 149 former federal and state judges, including judges appointed by presidents and governors of both major political parties.[2] Collectively, *amici* served for centuries in state and federal courts. *See* Exhibit A. *Amici* have a deep and abiding interest in preserving the independent role of the federal judiciary and ensuring that its functions are not displaced by either political branch, including in cases involving matters related to national defense and foreign policy. They have a firsthand understanding of the ability of judges to apply standard tools of statutory interpretation in such contexts while affording appropriate deference to the policy and national security judgments of other branches of government.

*Amici* believe that ordinary tools of statutory interpretation readily resolve this case. That conclusion flows from the plain text of the statute

---

[1] No counsel for a party authored this brief in whole or in part. No person other than *amici curiae* or their counsel contributed money that was intended to fund preparing or submitting the brief.

[2] *Amicus* Democracy Defenders Fund is a non-profit organization whose mission is to confront anti-democratic actions and defend American civic institutions. *Amici* also include one judge who served on an international tribunal. *See* Exhibit A.

relied on by Respondents and does not require judicial second-guessing of the Executive Branch's judgments as to national defense or foreign policy. *Amici* further believe that the remedy Petitioner seeks would not require judicial entanglement in the national security functions of the Executive Branch.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Constitution vests the federal judiciary with the duty of ensuring that the Executive Branch does not exceed the powers delegated to it by Congress. That duty does not go away when the Executive purports to act under statutes that protect our nation's security.

This case is a straightforward challenge to unlawful agency action. Purporting to apply 41 U.S.C. § 4713, the Department of War designated Anthropic a "supply chain risk." In doing so, the Department misinterpreted the statute and ignored the necessary procedures. This Court therefore has a duty to "hold unlawful" the designation. 41 U.S.C. § 1327(b)(2).

The Executive Branch's invocation of national security concerns does not displace the ordinary rules of statutory construction and judicial review of agency action. When a party challenges government action under a statute that protects national security interests and carries specific procedural requirements, courts must perform the "familiar judicial exercise" of determining whether the government's interpretation of the statute is lawful and whether it has followed the processes required by law. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566

3

U.S. 189, 196 (2012) ("*Zivotofsky I*").  As the Supreme Court recently reiterated, even executive actions designed to address national emergencies are subject to standard rules of statutory interpretation. *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026).  Binding Circuit precedent further teaches that private parties are entitled to meaningful procedural protections even when the Executive Branch acts to protect against counterintelligence threats or foreign terrorist organizations. *See Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296 (D.C. Cir. 2014); *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220 (D.C. Cir. 2010).

Those principles resolve this case.  Standard tools of interpretation demonstrate that a private company's contractual dispute with a government agency cannot render that company a "supply chain risk" within the meaning of 41 U.S.C. § 4713(k)(6).  That conclusion, based on the statute's plain text, does not require judicial second-guessing of the Executive Branch's national security judgments.  The Court need determine only whether the contractual dispute between Petitioner and the Department is the *type* of problem that Section 4713 was enacted to solve.  Additionally, the law's plain text requires the Court to set aside

4

the Department's actions if the Department failed to follow required procedures—and this case can be resolved on that basis alone.

To be sure, courts must sometimes conduct themselves differently due to national security concerns. Some claims are not justiciable because resolving them would require the court to make the types of substantive national security judgments that judges are ill-equipped to render. In other cases, courts must consider the impact on national security when crafting an injunctive remedy in order to avoid judicial entanglement in the conduct of foreign affairs or national defense. But this is not such a case. Petitioner's claims are justiciable and can be resolved based on the plain text of the law. Further, with respect to a remedy, Petitioner is not asking the court to order the Department of War—or any other agency—to work with it. Petitioner instead seeks protection from a retaliatory domestic sanction for opting *not* to provide certain services to the Department. Petitioner thus asks this Court to enter the familiar remedy of holding an agency action unlawful—or at this stage, merely staying it.

## ARGUMENT

### I. THE EXECUTIVE BRANCH'S INVOCATION OF NATIONAL SECURITY AUTHORITIES DOES NOT DISPLACE THE JUDICIARY'S INDISPENSABLE ROLE.

#### A. The Court Must Perform its Ordinary Functions of Judicial Review.

There is no "national security exception" to ordinary principles of judicial review. Rather, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). That is why "[a] court with jurisdiction has a 'virtually unflagging obligation' to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Of course, while "exercising independent judgment," courts may also pay "due respect" to the views of the Executive Branch. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024). "'Respect,' though, [is] just that." *Id.* at 386. "The views of the Executive Branch [can] inform the judgment of the Judiciary, but . . . not supersede it." *Id.* Ultimately, it remains the Judiciary's task to form an independent view of the law in every justiciable case.

The same rules apply when a justiciable case could implicate national security. "[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Ralls Corp.*, 758 F.3d at 313 (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)). And the judiciary cannot "distort the Constitution" or other applicable law to accommodate the Executive's claims of necessity or expediency. *Korematsu v. United States*, 323 U.S. 214, 244 (Jackson, J., dissenting) (1944), *overruled by Trump v. Hawaii*, 585 U.S. 667, 710 (2018).

That is why—again and again—courts have been willing to decide cases properly before them even when they implicate questions that affect the nation's security. Consider *Ex parte Milligan*, 71 U.S. (4 Wall.) 2 (1866), in which the Supreme Court held that a United States citizen could not be tried by a military tribunal while ordinary Article III courts were available. *Id.* at 127. Notwithstanding the government's invocation of military necessity, the Court held firm to its duty to apply the law. "The Constitution of the United States," the Court held, "is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances." *Id.* at 120–21. "No doctrine, involving more pernicious

consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government." *Id.* at 121.

That tradition of judicial independence has continued through the 20th century and up through the present day. Perhaps most famously, the Supreme Court prevented President Truman from nationalizing the steel industry in the midst of the Korean War—notwithstanding the President's finding that the government's actions were "necessary to avert a national catastrophe." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952). So too in the Pentagon Papers case, in which the Court held that the government's concerns about disclosure of classified information did not overcome the First Amendment right against prior restraints. *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). And just last month, the Supreme Court held that the President lacked authority to impose tariffs pursuant to a statute that provides broad emergency powers, notwithstanding the President's findings that the tariffs were necessary to address public health and economic emergencies. *Learning Resources*, 146 S. Ct. at 636, 646.

Of course, in some narrow circumstances, national security matters can render a case non-justiciable. In *El-Shifa Pharmaceutical Industries Co. v. United States*, 607 F.3d 836 (D.C. Cir. 2010) (en banc), for example, this Court held that the plaintiffs' damages claims against the United States stemming from an overseas military operation were not justiciable under the political question doctrine because the case would require the court to "assess the merits of the President's decision to launch an attack on a foreign target." *Id.* at 844; *see also, e.g.*, *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 44–52 (D.D.C. 2010) (political question doctrine barred adjudication of claims seeking to enjoin military targeting of an individual overseas). However, the Supreme Court has also warned against turning the political question doctrine into an "ad hoc litmus test of" a court's "reactions to the desirability of" adjudicating a case. *Davis v. Bandemer*, 478 U.S. 109, 126 (1986); *see also Zivotofsky I*, 566 U.S. at 194 ("In general, the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821))).

In other cases, the Executive Branch's "evaluation of the *facts*" concerning national security matters may be "entitled to deference."

9

*Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010) (emphasis added). But "concerns of national security and foreign relations do not warrant abdication of the judicial role," and courts must not "defer to the Government's reading" of the law itself. *Id.* at 34. Lastly, courts must in some instances exercise caution in crafting remedies even where a plaintiff has established a right to relief, in order to pay "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

These doctrines relating to justiciability, deference for factual judgments, and caution in crafting remedies are important—but none of them is relevant here. This case is doubtless justiciable: Congress has crafted a specific mechanism for review in this Court, *see* 41 U.S.C. § 1327(b)(2), and the Court need only perform the "familiar judicial exercise" of determining whether the Executive Branch's actions are consistent with the operative statute and requisite procedures, *Zivotofsky I*, 566 U.S. at 196. Further, the remedy sought by Petitioner is straightforward and requires no judicial entanglement in the Executive Branch's national security affairs. *See infra* at 21–23.

**B.    When the Executive Branch Acts Pursuant to Statute, the Judiciary Must Apply Ordinary Tools of Interpretation to Ensure Those Actions Fall Within Boundaries Prescribed by Congress.**

When the Executive Branch acts pursuant to statute, it is "not free from the ordinary controls and checks of Congress merely because foreign affairs" or national security concerns are invoked. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) ("*Zivotofsky II*"). Instead, courts must ensure that the Executive does not seek to "aggrandize [its] power based on loose or uncertain authority." *Learning Resources*, 146 S. Ct. at 655 (2026) (Gorsuch, J., concurring). "It is this concern of encroachment and aggrandizement that has animated [the Supreme Court's] separation-of-powers jurisprudence and aroused [its] vigilance against" attempts by "'each of the separate Branches to exceed the outer limits of its power.'" *Mistretta v. United States*, 488 U.S. 361, 382 (1989) (quoting *Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983)). Accordingly, when the Executive acts pursuant to a law whose function is to protect the Nation's security interests, the Supreme Court has repeatedly applied ordinary tools of statutory interpretation to determine whether those acts fit within the bounds of the law. *See, e.g., Learning*

11

*Resources*, 146 S. Ct. at 642; *Biden v. Nebraska*, 600 U.S. 477, 494–95 (2023); *Hamdan v. Rumsfeld*, 548 U.S. 557, 577–78 (2006).

*Learning Resources* reaffirms that there is no national-security carveout from the Judiciary's obligation to discern statutory meaning based on the ordinary tools of interpretation. In that case, the President attempted to justify the tariffs he imposed under the International Emergency Economic Powers Act (IEEPA) as necessary to deal with an "'unusual and extraordinary threat' to American national security, foreign policy, or the economy, originating primarily 'outside the United States.'" *Learning Resources*, 146 S. Ct. at 636 (quoting 50 U.S.C. § 1701(a)). The President had declared national emergencies and determined that there were "unusual and extraordinary" threats to the United States, concluding that the flow of illegal drugs "'created a public health crisis'" and that trade deficits "had 'led to the hollowing out' of the American manufacturing base and 'undermined critical supply chains.'" *Id.* (quoting Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 7, 2025)). Notwithstanding the President's invocation of these emergency authorities, the Court performed its duty to interpret the statute relied

12

upon and held that "the terms of IEEPA do not authorize tariffs." *Learning Resources*, 146 S. Ct. at 646.

All six Justices in the majority reached that conclusion without applying any special rules or exceptions for interpreting IEEPA. Three concluded that "ordinary principles of statutory interpretation" were sufficient to resolve the case. *Learning Resources*, 146 S. Ct. at 675 (Kagan, J., concurring in part and concurring in the judgment). The other three deemed it appropriate to apply the Court's major questions doctrine—under which courts will not construe statutes to permit "highly consequential" delegations of power to the Executive based on "ambiguous language"—and rejected the government's argument that the doctrine "should not apply to emergency statutes." *Id.* at 639, 641 (plurality opinion) (quoting *West Virginia v. EPA*, 597 U.S. 697, 723–24 (2022)). Indeed, as the Court explained, it had already rejected a similar argument in a recent case. *Id.* at 641; *see Nebraska*, 600 U.S. 477 (majority opinion applying the major questions doctrine when construing a grant of Executive authority in connection with wars or national emergencies). *Learning Resources* and *Nebraska* thus require courts to apply ordinary tools of statutory interpretation—which include the major

13

questions doctrine when applicable—even in the context of national security and emergencies.

Several additional tools of interpretation are highly instructive in this case. *First*, words and phrases that are capable of multiple meanings should be "construed in light of their accompanying words in order to avoid giving" the statutory term "unintended breadth." *Maracich v. Spears*, 570 U.S. 48, 62–63 (2013) (quotation marks omitted); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Text* 195 (2012) (when several words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible reading that makes them similar"). The *Learning Resources* Court applied this "*noscitur a sociis*" canon to IEEPA's word "regulate," explaining that each surrounding word "authorizes a distinct action a President might take in sanctioning foreign actors or controlling domestic actors engaged in foreign commerce." 146 S. Ct. at 643. So it was telling that "[n]one of IEEPA's authorities includes the distinct and extraordinary power to raise revenue." *Id*.

So too here, when construing the meaning of the term "supply chain risk," the Court must examine the various risks that the statute

contemplates and construe them together. *See* 41 U.S.C. § 4713(k)(6) (defining "supply chain risk" as the "risk that any person may *sabotage*, *maliciously introduce unwanted function*, *extract data*, or *otherwise manipulate*" covered technologies or services in a way that results in certain deleterious effects) (emphases added). And the Court must construe the term "otherwise manipulate" in a way that shares commonalities with risks such as "sabotage" or "malicious[] introduc[tion of] unwanted function"—*i.e.*, the types of actions that a hostile, clandestine adversary might take to damage or obtain information from a government system. *Cf. United States v. Fischer*, 64 F.4th 329, 375 (D.C. Cir. 2023) (Katsas, J., dissenting) ("the word *otherwise* directly signals that the subsections are associated") (emphasis in original), *rev'd by* 603 U.S. 480 (2024).

*Second*, courts should consider whether and how Congress has granted similar powers in other statutes when assessing the plausibility of the Executive Branch's claimed authority. In *Learning Resources*, the six-Justice majority explained that "had Congress intended to convey the distinct and extraordinary power to impose tariffs, it would have done so expressly—as it consistently has in other tariff statutes." 146 S. Ct. at

15

642; *accord id.* at 675 (Kagan, J., concurring in part and concurring in the judgment) (noting that none of the many statutes granting agencies power to "regulate" has been construed to permit taxing power). And the *Learning Resources* Court relied on "[c]ongressional practice" as "strong evidence" that IEEPA did not authorize taxation, because "[w]hen Congress addresses both the power to regulate and the power to tax, it does so separately and expressly." *Id.* at 643 (majority opinion).

Thus, if Congress typically grants a power in a particular manner— using particular words or subject to particular conditions—that practice is relevant to interpreting the authority granted by the statute at issue. *See also, e.g.*, *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision. Congress has enacted statutes that expressly include [such] language."); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 514 (2018) (noting that "Congress has spoken often and clearly to" the relevant procedures, and it "has likewise shown that it knows how to override the Arbitration Act when it wishes"). And here, it is particularly notable that when Congress has provided authority for a government-wide ban on procurement from a

particular supplier and a ban against government contractors doing business with such a company, it has done so directly. *See* National Defense Authorization Act for Fiscal Year 2019 § 889, Pub. L. No. 115-232, 132 Stat. 1636, 1917 (2018) (expressly barring federal agencies from procuring telecommunications equipment or services from two Chinese entities and from contracting with other businesses that make significant use of equipment or services from those entities).

### C.  The Judiciary Must Further Ensure the Executive Branch Adheres to Core Procedural Requirements.

While the Executive Branch is afforded significant deference for national security judgments, Congress often prescribes the *process* by which those judgments must be reached.  And the Judiciary plays an essential role in ensuring the Executive follows those rules required by statute and by the Constitution's Due Process Clause.  Because the Department failed to follow those rules here, the court can set aside its actions on that basis alone.

The U.S. Code is replete with statutes authorizing the Executive to take certain actions to address national security threats—often with serious consequences affecting private parties' rights or property—but those statutes require the Executive to follow particular procedures.

17

They often build in mechanisms for congressional oversight and for affected parties to challenge the Executive's actions, subject to appropriate safeguards to protect sensitive information.[3]

When the Executive Branch fails to follow the procedures required by Congress—or when Congress has failed to afford any such procedures—courts have not hesitated to exercise their powers of review. This Court, in particular, has repeatedly emphasized the importance of procedural safeguards when the Executive takes actions pursuant to significant grants of national security authority. In *Ralls Corp.*, for example, the court held that a Presidential order requiring an American corporation to divest from a transaction on national security grounds violated due process because the corporation was not given notice of the action, access to the unclassified evidence supporting it, and an

---

[3] *See, e.g.*, 8 U.S.C. § 1189 (criteria and procedures for the Secretary of State to designate foreign terrorist organizations); 50 U.S.C. § 4565 (authorities and procedures governing the Committee on Foreign Investment in the United States and the President's authorities to suspend or prohibit transactions that threaten national security); *id.* § 1702 (President's authorities under IEEPA to block or regulate certain transactions to address threats to U.S. national security, foreign policy, or the economy); *id.* § 4511 (President's authority under the Defense Production Act to require performance of certain contracts where necessary for national defense purposes).

18

opportunity to rebut that evidence.  758 F.3d at 319.  Notwithstanding

an order from President Obama finding credible evidence that the

company—which was owned by Chinese nationals and had acquired

windfarms near a restricted Naval airspace—"might take action that

threatens to impair the national security of the United States," the court

concluded that it had authority to review the company's due process

challenge and that the lack of process afforded to it constituted "a clear

constitutional violation."  *Id.* at 306, 320.  In reaching that conclusion,

the court drew on a line of cases holding that designations of foreign

terrorist organizations were subject to similar procedural requirements.

*See id.* at 318 (citing, *inter alia*, *People's Mojahedin Org.*, 613 F.3d 220;

*Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C.

Cir. 2001)).

Section 4713 contains numerous procedural requirements.  *See* 41

U.S.C. § 4713(b).[4]  Where an agency fails to follow procedures required

---

[4] The statute allows an agency head to bypass these requirements temporarily if the agency head determines that an "urgent national security risk requires the *immediate* exercise" of the statute's authority, in which case the agency head must still take the above-described actions "as soon as practicable."  41 U.S.C. § 4713(c) (emphasis added).  However, given the Secretary's direction that Anthropic "will continue to provide the Department of War its services" for up to six months, Pet'r Add. 1a,

by statute, that alone may provide a basis to set aside agency action. Indeed, the governing statute here specifically directs that the court "shall hold unlawful a covered action taken under" Section 4713 if the court finds it to be "not in accord with procedures required by law." 41 U.S.C. § 1327(b)(2), (b)(2)(E). Such a determination by this Court would not, of course, require it to render judgment on any national security-related determinations by the Executive Branch.

Further, *Ralls Corp.* and other Circuit precedent make clear that adherence to procedural protections in national security matters cannot be excused based on assertions that more process would not have changed the outcome. To the contrary, *Ralls Corp.* concluded that the company had been deprived of due process even "despite [the Court's] uncertainty that more process would have led to a different . . . decision." 758 F.3d at 320; *see also People's Mojahedin*, 613 F.3d at 229 (rejecting the State Department's "no harm, no foul" argument that no information offered by the designated organization could have changed the outcome, especially where the court was "unsure what material the Secretary in

---

it appears unlikely that the Secretary could have relied on this narrow exception.

fact relied on"); *Nat'l Council of Resistance of Iran*, 251 F.3d at 209 ("We have no reason to presume that the petitioners . . . could have offered evidence which might have either changed the Secretary's mind or affected the adequacy of the record.  However, without the due process protections which we have outlined, we cannot presume the contrary either.").

Ensuring that private parties have been afforded the procedural protections required by statute and by the Due Process Clause is—like interpreting a statute—a quintessential judicial exercise.  Even when the Executive Branch invokes weighty interests like neutralizing terrorist organizations or keeping foreign adversaries away from military airspace, it cannot act rashly, and it cannot disregard the fundamental requirements of adequate notice and an opportunity to respond.

## II. THE REMEDY SOUGHT BY PETITIONER WOULD NOT REQUIRE JUDICIAL ENCROACHMENT ON THE EXECUTIVE BRANCH'S NATIONAL SECURITY PREROGATIVES.

As *Learning Resources* shows, assessing whether the Executive Branch's actions fit within a statute's definitions does not require judicial second-guessing of the Executive's substantive national security

judgments.  Instead, the Court need only assess whether the *type* of concern animating the Department's actions fits within Congress's specific definition of a "supply chain risk" under Section 4713—a "familiar judicial exercise," *Zivotofsky I*, 566 U.S. at 196.  And as this Court has consistently held, judges can and must uphold private parties' rights to notice, access to information, and an opportunity to respond when the Executive takes actions that affect substantial liberty and property rights.  Doing so does not require courts to "exercise judgment in the realm of foreign policy and national security" and "does not encroach on the prerogative of the political branches." *Ralls Corp.*, 758 F.3d at 314.

Anthropic asks this Court to apply familiar standards and grant a familiar remedy.  The Court has a duty to "hold unlawful" any Section 4713 determination that is arbitrary and capricious, contrary to constitutional right, in excess of statutory jurisdiction, lacking substantial support in the record, or not in accord with legally required procedures.  41 U.S.C. § 1327(b)(2)(A)–(E).  Those are standards that this Circuit applies in dozens if not hundreds of cases a year.  And entering this kind of discrete, congressionally commanded remedy raises none of

the concerns that could arise were a court seeking to superintend the Executive's foreign policy or national defense functions. Indeed, given that the political question doctrine and other justiciability constraints would plainly be inapplicable here, the Court should be skeptical of any rhetoric from the government about judicial intrusion into sensitive questions of national security.

More fundamentally, as a practical matter, no one is trying to force the Department to contract with Anthropic. To the contrary, Anthropic and the Department have already agreed that the Department is *not* interested in Anthropic's services in the form that Anthropic is willing to provide them. Instead, Anthropic is asking only that it not be punished on its way out the door.[5] The Department is welcome to continue to decide who it does and does not want to contract with. But it cannot use Section 4713 to punish Anthropic in its dealings with the rest of the

---

[5] In that sense, this case presents roughly the opposite question from cases like *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024) or *Associated Press v. Budowich*, No. 25-5109 Dkt. 1 (D.C. Cir. Apr. 10, 2025) (noticing appeal). In those cases, the Executive Branch was interested in keeping someone away from potentially sensitive information, and the excluded party sued to challenge that exclusion. Whatever the right answer in those cases, the appropriate scope of a judicial remedy on those fact patterns poses far more difficult questions than this case does.

23

world—including other government agencies whose functions are unrelated to national defense and private businesses.

Respectfully submitted,

Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE
#15180
Washington, DC 20003
(202) 514-9948

*Counsel for Amici Curiae Former Judges*

Gregg J. Costa
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
(346) 718-6600

/s/ Sophia Brill
Sophia Brill
   *Counsel of Record*
Connor P. Mui
GIBSON, DUNN & CRUTCHER LLP
1700 M St. NW
Washington, DC 20036-4504
(202) 955-8500
SBrill@gibsondunn.com

Martie Kutscher
GIBSON, DUNN & CRUTCHER LLP
310 University Ave.
Palo Alto, CA 94301-1744
(650) 849-5300

Lauren Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166-0193
(212) 351-4000

*Counsel for Democracy Defenders
  Fund*

24

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that this brief complies with the length limits, type-face, and type-style requirements of Federal Rules of Appellate Procedure 29(a) and 32(a), as it contains 4,224 words and was prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

I hereby certify that on March 17, 2026, I caused a true and correct copy of this brief to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

March 17, 2026

/s/ Sophia Brill
Sophia Brill
   *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1700 M St. NW
Washington, DC 20036-4504
(202) 955-8500
SBrill@gibsondunn.com

# EXHIBIT A

**Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)**

**Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)**

**Federal**
- Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)
- Judge Robert J. Cindrich, U.S. District Judge, Western District of Pennsylvania (Ret.)
- Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)
- Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge Andre M. Davis, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)
- Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)
- Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)
- Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)
- Judge Royal Furgeson Jr., U.S. District Judge, Western District of Texas (Ret.)
- Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)

- Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)
- Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth Circuit (Ret.)
- Judge Faith Hochberg, U.S. District Judge, District of New Jersey (Ret.)
- Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)
- Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)
- Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)
- Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)
- Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)
- Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)
- Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)
- Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)
- Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)
- Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)
- Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)
- Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)
- Judge Thomas I. Vanaskie, U.S. Circuit Judge, U.S. Court of Appeals for the Third Circuit (Ret.)

2

- Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)
- Judge Alexander Williams Jr., U.S. District Judge, District of Maryland (Ret.)

**State**
- Judge Verna A. Adams, Marin County Superior Court, California (Ret.)
- Judge Stephanie A. Arend, Pierce County Superior Court, Washington (Ret.)
- Judge Sharon S. Armstrong, King County Superior Court, Washington (Ret.)
- Judge Elaine Andrews, Anchorage Superior Court, Alaska (Ret.)
- Judge Beth M. Andrus, Washington State Court of Appeals (Ret.)
- Chief Justice Thomas A. Balmer, Oregon Supreme Court (Ret.)
- Judge Paul A. Bastine, Spokane County Superior Court, Washington (Ret.)
- Judge Martha Beckwith, Anchorage District Court, Alaska (Ret.)
- Associate Justice William W. Bedsworth, California Court of Appeal (Ret.)
- Chief Justice Michael L. Bender, Colorado Supreme Court (Ret.)
- Judge Linda L. Bergman, Multnomah Circuit Court, Oregon (Ret.)
- Justice Margot Botsford, Massachusetts Supreme Judicial Court (Ret.)
- Associate Justice Bobbe J. Bridge, Washington Supreme Court (Ret.)
- Justice G. Arthur Brennan, York County Superior Court, Maine (Ret.)
- Chief Justice Eric Brown, Supreme Court of Ohio (Ret.)
- Judge Regina S. Cahan, King County Superior Court, Washington (Ret.)

- Judge Wynne Carvill, Alameda County Superior Court, California (Ret.)
- Chief Justice Walter L. Carpeneti, Alaska Supreme Court (Ret.)
- Judge Patrick A. Cathcart, Los Angeles Superior Court, California (Ret.)
- Judge Harriett M. Cody, King County Superior Court, Washington (Ret.)
- Justice Carol Ann Conboy, New Hampshire Supreme Court (Ret.)
- Chief Justice Dori Contreras, 13th Court of Appeals, Texas (Ret.)
- Judge Ronald E. Culpepper, Pierce County Superior Court, Washington (Ret.)
- Judge Beverly W. Cutler, Alaska Superior Court (Ret.)
- Judge James Dannenberg, Hawaii District Court, First Circuit (Ret.)
- Justice Mary McGowan Davis, New York State Supreme Court (Ret.)
- Justice Michael P. Donnelly, Supreme Court of Ohio (Ret.)
- Judge Kitty-Ann van Doornick, Pierce County Superior Court, Washington (Ret.)
- Justice Fernande R.V. Duffly, Massachusetts Supreme Judicial Court (Ret.)
- Justice Robert D. Durham, Oregon Supreme Court (Ret.)
- Judge Lynn Duryee, Marin County Superior Court, California (Ret.)
- Judge Sally Duncan, Maricopa County Superior Court, Arizona (Ret.)
- Acting Justice Mark Dwyer, New York State Supreme Court (Ret.)
- Judge Anita H. Dymant, Los Angeles Superior Court, California (Ret.)
- Judge George Eskin, Santa Barbara County Superior Court, California (Ret.)
- Judge Noel Fidel, Arizona Court of Appeals (Ret.)

4

- Judge Francisco Firmat, Orange County Superior Court, California (Ret.)
- Judge Helen E. Freedman, New York Appellate Division of the Supreme Court (Ret.)
- Judge Raymond Funk, Fairbanks District Court, Alaska (Ret.)
- Judge Deborra Garrett, Whatcom County Superior Court, Washington (Ret.)
- Justice Janine P. Geske, Wisconsin Supreme Court (Ret.)
- Judge David George, First Judicial District of Alaska (Ret.)
- Justice Emily Jane Goodman, New York State Supreme Court (Ret.)
- Judge Dianna Gould-Saltman, Los Angeles Superior Court, California (Ret.)
- Justice Karen F. Green, Massachusetts Superior Court (Ret.)
- Chief Justice Mark V. Green, Massachusetts Appeals Court (Ret.)
- Judge Helen Halpert, King County Superior Court, Washington (Ret.)
- Judge Brook Hedge, Superior Court of the District of Columbia (Ret.)
- Judge James Hely, New Jersey Superior Court (Ret.)
- Judge Bethany G. Hicks, Maricopa County Superior Court, Arizona (Ret.)
- Justice Geraldine S. Hines, Massachusetts Supreme Judicial Court (Ret.)
- Judge Vicki L. Hogan, Pierce County Superior Court, Washington (Ret.)
- Justice Robin E. Hudson, North Carolina Supreme Court (Ret.)
- Judge J. Robin Hunt, Washington Court of Appeals (Ret.)
- Justice Barbara Jaffe, New York State Supreme Court (Ret.)
- Chief Justice Jim Jones, Idaho Supreme Court (Ret.)
- Judge Henry Kantor, Multnomah County Circuit Court, Oregon (Ret.)

- Judge Steven J. Kleifield, Los Angeles Superior Court, California (Ret.)
- Judge Michael S. Kupersmith, Chittenden County Superior Court, Vermont (Ret.)
- Judge David A. Kurtz, Snohomish County Superior Court, Washington (Ret.)
- Judge Linda Lau, Washington State Court of Appeals (Ret.)
- Chief Judge John P. Leopold, Colorado District Court (Ret.)
- Chief Justice R. Fred Lewis, Florida Supreme Court (Ret.)
- Judge Richard Lyman, Los Angeles Superior Court, California (Ret.)
- Judge Barbara Mack, King County Superior Court, Washington (Ret.)
- Judge Patrick J. Mahoney, San Francisco Superior Court, California (Ret.)
- Judge Victoria S. Marks, Hawaii First Circuit Court (Ret.)
- Judge Kevin McKenney, Santa Clara County Superior Court, California (Ret.)
- Justice James F. McHugh, Massachusetts Appeals Court (Ret.)
- Judge Christopher Melly, Clallam County Superior Court, Washington (Ret.)
- Judge Peter Michalski, Anchorage Superior Court, Alaska (Ret.)
- Judge Rita Miller, Los Angeles Superior Court, California (Ret.)
- Judge John Meyer, Skagit County Superior Court, Washington (Ret.)
- Judge Robert Mello, Addison County Superior Court, Vermont (Ret.)
- Judge Walter M. Morris Jr., Orleans County Superior Court, Vermont (Ret.)
- Justice James C. Nelson, Montana Supreme Court (Ret.)
- Judge Peggy J. Nelson, New Mexico District Court (Ret.)

- Judge Leslie C. Nichols, Santa Clara County Superior Court, California (Ret.)
- Judge Rita M. Novak, Cook County Circuit Court, Illinois (Ret.)
- Justice Michael J. Obus, New York County Supreme Court (Ret.)
- Chief Justice Maureen O'Connor, Supreme Court of Ohio (Ret.)
- Judge Ann O'Regan Keary, Superior Court of the District of Columbia (Ret.)
- Judge Gary Oxenhandler, Missouri Circuit Court (Ret.)
- Judge Philip M. Pallenberg, Juneau Superior Court, Alaska (Ret.)
- Chief Justice Barbara J. Pariente, Florida Supreme Court (Ret.)
- Judge Lynn Pickard, New Mexico Court of Appeals (Ret.)
- Judge Maurice Portley, Arizona Court of Appeals (Ret.)
- Judge Jeffrey M. Ramsdell, King County Superior Court, Washington (Ret.)
- Judge Judith H. Ramseyer, King County Superior Court, Washington (Ret.)
- Justice Rosalyn Richter, New York Appellate Division (Ret.)
- Judge Palmer Robinson, King County Superior Court, Washington (Ret.)
- Judge David A. Rosen, Los Angeles Superior Court, California (Ret.)
- Judge Richard L. Seabolt, Alameda County Superior Court, California (Ret.)
- Judge Carol Schapira, King County Superior Court, Washington (Ret.)
- Judge Ann Schindler, Washington State Court of Appeals (Ret.)
- Judge Barry C. Schneider, Maricopa County Superior Court, Arizona (Ret.)
- Judge Robert Schnider, Los Angeles Superior Court, California (Ret.)
- Judge Catherine Shaffer, King County Superior Court, Washington (Ret.)

7

- Associate Justice Sheila Sonenshine, California Court of Appeal (Ret.)
- Administrative Judge Jacqueline Silbermann, New York County Supreme Court (Ret.)
- Judge Michael Spearman, Washington Court of Appeals (Ret.)
- Judge Julie Spector, King County Superior Court, Washington (Ret.)
- Chief Justice Laura Denvir Stith, Supreme Court of Missouri (Ret.)
- Judge Jeffrey Swartz, Miami-Dade County Court, Florida (Ret.)
- Chief Justice Marsha Ternus, Iowa Supreme Court (Ret.)
- Judge Michael J. Trickey, Washington Court of Appeals (Ret.)
- Judge Emily E. Vasquez, Sacramento County Superior Court, California (Ret.)
- Judge Art Wang, Washington Court of Appeals (Ret.)
- Chief Justice Daniel E. Wathen, Maine Supreme Judicial Court (Ret.)
- Judge Larry Weeks, Juneau Superior Court, Alaska (Ret.)
- Judge John P. Wesley, Windham County Superior Court, Vermont (Ret.)
- Judge Ken Williams, Clallam County Superior Court, Washington (Ret.)
- Judge Jeffrey K. Winikow, Los Angeles Superior Court, California (Ret.)
- Chief Justice Michael A. Wolff, Supreme Court of Missouri (Ret.)
- Judge Margie G. Woods, San Diego County Superior Court, California (Ret.)
- Judge Merri Souther Wyatt, Oregon Circuit Court (Ret.)

**International**
- Judge Patricia Whalen, War Crimes Chamber, Court of Bosnia and Herzegovina (Ret.)