# EXHIBIT 3

**OFFICE OF THE SECRETARY OF WAR**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MAR 19 2026

Mr. Dario Amodei
Chief Executive Officer
Anthropic, PBC
548 Market Street
San Francisco, CA 94104

Dear Anthropic, PBC Executive Leadership:

This letter supplements the Secretary of War's letter of March 3, 2026, which provided notice to Anthropic, Public Benefit Corporation (PBC), and its subordinate, subsidiaries, or affiliated offices or entities, doing business under various names, and all subsidiaries, successors, or assigns thereof ("Covered Entity" or "Anthropic") that he had determined that the use of Anthropic's products and services in Department of War (DoW) covered procurements presents a significant supply chain risk. Pursuant to 41 U.S.C. § 4713(b)(2), please find a copy of the joint recommendation of the Under Secretary of War for Acquisition and Sustainment and the DoW Chief Information Officer that a significant supply chain risk exists in a covered procurement involving Anthropic. Along with the enclosed recommendation, please find a risk analysis by the Under Secretary of War for Research and Engineering, as well as a 41 U.S.C. § 4713 scoping analysis.

You may submit information or arguments in opposition to this notice within 30 days of receipt. The relevant DoW offices will review any such information and within 30 days of the submission issue a final decision regarding any appropriate modifications to the original determination.

Sincerely,

Anthony C. Fuscellaro
COL, USA
Executive Secretary

Enclosures:
As stated



**SECRETARY OF WAR**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

MAR - 3 2026

**DETERMINATION**

In accordance with Section 4713(c) of title 41, United States Code (U.S.C.), ("Section 4713"), and pursuant to the recommendation provided by the Under Secretary of War for Acquisition and Sustainment (USW(A&S)) and the Department of War Chief Information Officer (DoW CIO), I hereby determine that (i) the use of the authority set forth in Section 4713(a) with respect to a covered procurement involving Anthropic, PBC, and its subordinate, subsidiaries, or affiliated offices or entities, doing business under various names, and all subsidiaries, successors, or assigns thereof (the "Covered Entity"), is necessary to protect national security by reducing significant supply chain risk, (ii) less intrusive measures are not reasonably available to reduce such supply chain risk; and (iii) the use of such authorities will apply to a class of covered procurements.

**Determination.** In accordance with Section 4713(b)(3), based on the scoping analysis, mitigation considerations, and the joint recommendation of the DoW CIO and the USW(A&S) (Attached), I make the following determinations:

- **Covered Procurement Actions Are Necessary to Protect National Security:** The use of any of the Covered Entity's covered products or services in any DoW covered system presents a significant supply chain risk, and the use of the authority in Section 4713(a) is necessary to protect national security by reducing that supply chain risk.

- **No Less Intrusive Measures Are Reasonably Available:** There are no less intrusive measures that are reasonably available to reduce the supply chain risk associated with the use of the Covered Entity's products or services in any DoW covered system.

- **Class Determination:** The use of Section 4713 authorities will apply to all covered procurement actions involving the Covered Entity.

**Scope and Applicability.** This Determination is applicable to all of the Covered Entity's products or services that meet the definition of a "covered article" or that are part of a "covered procurement," as those terms are defined at 41 U.S.C. § 4713(k), whether acquired as a product or service. This includes all of the Covered Entity's products or services offered by the Covered Entity that become available for procurement.

**Urgent National Security Interest.** I have determined that an urgent national security interest requires the immediate exercise of the authority in Section 4713(a) pursuant to Section 4713(c). As such, DoW will take all action as required by Section 4713(b)-(c) following announcement of this determination.

Attachment:
As stated

Controlled By: OUSW(A&S) OASW(IBP)
CUI Category: OPSEC, PROPIN
LDC: D
POC: Vy Nguyen, Vy.K.Nguyen.civ@mail.mil





**OFFICE OF THE SECRETARY OF WAR**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

### Joint Recommendation, Concurrence, and Determination to Use Section 4713 of Title 41, United States Code, Authorities to Mitigate Supply Chain Risk Related to Anthropic, PBC

**Summary**

This document sets forth the joint recommendation of the Under Secretary of War for Acquisition and Sustainment (USW(A&S)) and the Department of War Chief Information Officer (DoW CIO) for action to be undertaken pursuant to Section 4713 of title 41, United States Code (U.S.C.) ("Section 4713").

In accordance with Section 4713(b)(1), the USW(A&S) and DoW CIO consulted with procurement and other relevant officials within DoW and jointly recommend that there is a significant supply chain risk in a covered procurement[1] involving Anthropic, PBC, and its subordinate, subsidiaries, or affiliated offices or entities, doing business under various names, and all subsidiaries, successors, or assigns thereof (the "Covered Entity").

The Covered Entity's restrictions on the use of its products and services introduces significant national security risks to the DoW's supply chain.

**Joint Recommendation by USW(A&S) and DoW CIO**

**Risk Analysis:** The DoW CIO and USW(A&S) have determined the Covered Entity's restrictions on the use of its products and services pose unacceptable risk to the DoW. Specifically, there is significant risk, based upon the statements and actions of the Covered Entity, that use of its products and services and, as a result, the products and services of other entities with which DoW contracts, will be subject to manipulation in such a manner as to inhibit the DoW's use thereof. This creates significant risk to DoW's supply chain as the relevant products and services are integral to DoW's operational capabilities, as well as the functioning of various activities across the DoW. The DoW CIO and USW(A&S) therefore believe there is an urgent national security interest in mitigating the significant supply chain risk created by the Covered Entity as soon as practicable.

**Joint USW(A&S)/DoW CIO Class Recommendation to Mitigate Supply Chain Risk:** On the basis of this risk analysis and consultation with relevant DoW officials, the USW(A&S) and the DoW CIO jointly recommend that there is a significant supply chain risk associated with the use of the Covered Entity's products and services in any DoW covered system. DoW CIO and USW(A&S) therefore recommend invocation of the authorities codified at Section 4713(c) to urgently mitigate this risk as soon as practicable while minimizing disruption to the DoW.

---

[1] "Covered procurement" is defined at Section 4713(k)(3).

**UNCLASSIFIED WHEN SEPARATED FROM ATTACHMENT 1**

~~CUI~~

SIGNED:

HON Michael P. Duffey
Under Secretary of War for
Acquisition and Sustainment

Date: 3/3/26

HON Kirsten Davies
Department of War Chief
Information Officer

Date: 3 MARCH 2026


Attachment:
ATTACHMENT 1a – Urgent Supply Chain Risk Analysis on Anthropic PBC ~~(CUI)~~
ATTACHMENT 1b – Due Diligence Preliminary Report on Anthropic (CUI//PROPIN)
ATTACHMENT 2 – Section 4713 Scoping Analysis for Anthropic, PBC

CUI



**RESEARCH
AND ENGINEERING**

**UNDER SECRETARY OF WAR**
**3030 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-3030**

MEMORANDUM FOR THE RECORD

SUBJECT:  Urgent Supply Chain Risk Analysis: Anthropic's Refusal to Permit Lawful AI Use

1. Summary

This analysis outlines the significant and unacceptable supply chain risk posed by Anthropic's unwillingness to agree to the U.S. government's use of its artificial intelligence (AI) models for lawful warfighting purposes. This unreasonableness endangers the strategic implementation and technical integrity of the Department of War's (DoW) information and related systems. Thus, this is not a mere contractual dispute. Anthropic's actions represent a direct challenge to the government's ability to control its own lawful operations and a threat to the security of the DoW's critical technology infrastructure. Anthropic's behavior therefore squarely meets the definition of "supply chain risk" as defined in both 10 U.S.C. § 3252 and 41 U.S.C. § 4713 and requires immediate mitigatory action.

2. The Operational and Strategic Threat

The government must ensure its technology assets are reliable, secure, and effective. Were DoW to accede to Anthropic's demands, the sought-after contract language would introduce a vendor-imposed point of failure. This is untenable. By embedding unreasonably restrictive terms that restrict DoW's warfighting operations beyond the limitations imposed by law, Anthropic seeks to grant itself an operational veto. This triggers the legal definition of supply chain risk at 10 U.S.C. § 3252(d)(4), which explicitly includes the risk that an entity may "deny, disrupt, or otherwise degrade the function, use, or operation" of a covered system. A contractual provision that unnecessarily restricts the use of a system to diminish functionality and limit DoW's warfighting capabilities introduces, by definition, an unreliable and compromised component into our warfighting mission.

This is compounded by demonstrated hostility in negotiations with DoW. Based on statements made during negotiations, Anthropic appears to be taking a negotiation posture meant principally to benefit its public perception that is not centered on truth or fact. In addition, during our negotiations, one of Anthropic's executives questioned the propriety of the potential use of their software for a sensitive military operation abroad despite that use being permitted under the existing Terms of Service. This led to alarm by the DoW and the prime contractor who provides Anthropic software, and raised material doubts as to whether they would cause their software to stop working or cause some other disastrous action that would put our warfighters lives in danger. The DoW recognizes that its suppliers are often for-profit corporations that intend both to help the warfighters and American public and turn a profit. However, a vendor that raises the prospect of disallowing its software to function in critical military operations, and treats its

CUI

CUI



**RESEARCH
AND ENGINEERING**

**UNDER SECRETARY OF WAR**
**3030 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-3030**

negotiations with the DoW primarily as tools for brand-building cannot be trusted, particularly when that marketing campaign is openly hostile to the DoW and duplicitous. By ceding to Anthropic's terms, the DoW would be allowing the very corporate decisionmakers who have opted to publicly spat with DoW into its technical and operational warfighting infrastructure, thereby introducing unnecessary risk into DoW supply chains. The American people have vested elected officials and military and civilian leadership with warfighting authorities; it is untenable and unlawful to insert unelected corporate bureaucrats into this process.

3. The Underlying Technical Vulnerability of AI

This strategic risk is magnified by the unique, opaque nature of the technology itself. Unlike traditional software, AI models are probabilistic systems which are understood to "drift" or degrade as new data is introduced and require constant tuning, the integrity of which, is fundamentally based on the trustworthiness of the vendor to ensure the model continues to perform accurately and fairly.

The DoW cannot trust Anthropic to ensure the integrity of its models. As research demonstrates,[1] AI systems are acutely vulnerable to manipulation. Privileged access with malintent can subtly poison the training data to maliciously introduce unwanted function, or otherwise subvert the design, integrity, and operation of the model. Research shows such attacks can degrade accuracy by over 27% and introduce targeted misclassifications at an alarming rate.[2] Anthropic's ability to unilaterally alter system guardrails and model weights without DoW consent could fundamentally change the system's function and creates a significant operational risk. This could create catastrophic downstream consequences, such as a critical defense system failing to engage due to an unapproved, vendor-side modification. In August 2025, Anthropic itself disclosed that hackers had used its chatbot, Claude, to write code capable of carrying out cyberattacks against at least 17 organizations, including government entities noting that Agentic AI has been weaponized.[3]

A vendor like Anthropic, which has already demonstrated a hostile and non-cooperative stance on the use of its product, has the motive, means, and opportunity to introduce such vulnerabilities. Its refusal to partner in good faith makes it impossible to establish the deep trust required for security collaboration. The DoW would be forced to operate a black box controlled by a hostile party, which could contain hidden biases or backdoors. A vendor that seeks to control the use of its product so as to restrict DoW's lawful use thereof cannot be trusted. Given the public statements of Anthropic's CEO and others associated with the company, the

---

[1] See e.g. 2025 Photonics & Electromagnetics Research Symposium, Abu Dhabi, UAE, 4-8 May PIERS Detecting and Preventing Data Poisoning Attacks on AI Models
[2] Id.
[3] anthropic.com/news/detecting-countering-misuse-aug-2025#:~:text=No-code%20malware:%20selling%20AI,with%20third-party%20safety%20teams.

CUI

CUI



**RESEARCH
AND ENGINEERING**

**UNDER SECRETARY OF WAR**
**3030 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-3030**

Department must assume that Anthropic can and would impose its moral and policy judgments on the warfighting capabilities of the DoW, and therefore there is a substantial risk that Anthropic could attempt to disable its technology or preemptively and surreptitiously alter the behavior of the model in advance or in the middle of ongoing warfighting operations, if it feels that its "redlines" are crossed. The threat of such an action is unacceptable.

4. Progression of Risk

The DoW institutes the U.S. Government standard Risk Management Framework (RMF) across all layers of technology, assets, data, processes, and supply chain. In accordance with the DoW RMF, assessments result in areas of risk across the DoW ecosystem (including vendors). Though an individual vendor may have only limited risk in individual categories, the aggregation of risk across categories can result in a vendor being deemed high risk. In other words, the culmination of unmitigable risks lead to a vendor having a material level of risk. The vendor can then be deemed a "supply chain risk," at which time they typically are removed from applicable systems to mitigate issues and threats.

In the instant case, Anthropic's risk level escalated from a potentially manageable technical and business negotiation to an unacceptable national security threat over the course of the DoW's contract negotiation with them. Given the nature of AI systems and Anthropic's privileged access as the AI model's developer, curator and maintainer, there was a baseline risk given the potential harmful actions this privileged technical access makes possible. The supply chain risk level increased when Anthropic insisted on terms of service that would constrain the DoW beyond what is in the law. This risk further increased when Anthropic asserted in the negotiations that it have an approval role in the operational decision chain, which would require the DoW to accept significant operational risk. Then during the final weeks of negotiations, it became clear that Anthropic was leveraging the DoW's ongoing good faith negotiations for Anthropic's own public relations, and they began engaging in an increasingly hostile manner through the press, despite the ongoing private negotiations with DoW leadership. Finally, this hostile posture was even further compounded when, during a time of active military operations, Anthropic leadership questioned the use of their technology in our warfighting systems clearly permitted under the Terms of Service of their existing contract with our Prime contractor. This collective set of actions represents a fully mature supply chain risk – including increased potential for model poisoning, insider threat risk, data exfiltration, and denial of service – posing a direct, intolerable, and material risk to our warfighting capability which warrants the designation of Anthropic as a supply chain risk.

CUI

CUI



**RESEARCH
AND ENGINEERING**

**UNDER SECRETARY OF WAR**
**3030 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-3030**

5. Conclusion and Justification for Action

Anthropic's position is not a simple policy disagreement; it is an active demonstration of the exact risks our supply chain risk management laws were written to prevent. Use of Anthropic's products or services introduces significant risk to the DoW's covered systems, as the vendor, by maintaining the ability and necessity to continuously update and tune the product enables the potential for the vendor to subvert the design and/or functionality of their product or service. Such ability by the vendor could be used to implement changes in alignment with the vendor's ideology, putting the Department's lawful use of the capability at risk.

Therefore, Anthropic's unwillingness to permit the use of its technology to the extent permitted by law creates a clear and present supply chain risk as defined in 10 U.S.C. § 3252 and 41 U.S.C. § 4713.

Emil Michael

CUI

**UNCLASSIFIED**

**ATTACHMENT**
**Section 4713 Scoping Analysis for Anthropic, PBC**

This document supports the use of section 4713 of title 41, United States Code ("Section 4713') authorities. The Secretary of War, pursuant to the recommendation of the Under Secretary of War for Acquisition and Sustainment and the Department of War Chief Information Officer, has determined the following as the appropriate scope for use of Section 4713 authorities necessary to address the supply chain risk related to the use of covered products or services of Anthropic, PBC:

- **Covered Entity:** Anthropic, PBC, and its subordinate, subsidiaries, or affiliated offices or entities, doing business under various names, and all subsidiaries, successors, or assigns thereof ("Covered Entity").

- **Covered Products or Services:** All of the Covered Entity's products or services that meet the definition of a "covered article" or that are part of a "covered procurement," as those terms are defined at 41 U.S.C. § 4713(k), whether acquired as a product or service. This includes all of the Covered Entity's products or services offered by the Covered Entity that become available for procurement.

- **Covered Procurements:** All DoW procurements described in Section 4713(k)(3).

- **Covered Procurement Actions:** All actions described in Section 4713(k)(4).

**UNCLASSIFIED**