[ORAL ARGUMENT SCHEDULED FOR MAY 19, 2026]
**No. 26-1049**

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

ANTHROPIC, PBC,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF WAR, PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents*.

---

On Petition For Review Of A Department Of War Determination And Covered Procurement Actions Taken Under 41 U.S.C. § 4713

---

**BRIEF OF AMICI CURIAE FOUNDATION FOR AMERICAN INNOVATION, FIFTY YEARS, FATHOM, CHINATALK, MARTIN CHORZEMPA, ALEX IMAS, PANGRAM, INSTITUTE FOR PROGRESS, DEAN BALL, DWARKESH PATEL, ROOTS OF PROGRESS, SAIF KHAN, MICHAEL SOBOLIK, STEVE NEWMAN, AND TAREN STINEBRICKNER-KAUFFMAN IN SUPPORT OF PETITIONER**

---

Tim Hwang
Foundation for American Innovation
2443 Fillmore St #380-3386
San Francisco, CA, 94115
(973)-960-4955
tim.hwang@thefai.org
*Counsel for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Except for the following amici curiae appearing in this Court, all parties, intervenors, and amici appearing in this Court are listed in the Brief for Petitioner. The *amici curiae* are the Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Martin Chorzempa, Alex Imas, Pangram, Institute for Progress, Dean Ball, Dwarkesh Patel, Roots of Progress, Saif Khan, Michael Sobolik, Steve Newman, and Taren Stinebrickner-Kauffman.

### B. Rulings Under Review

Except for the following, references to the rulings at issue appear in the Brief for Petitioner. The challenged action includes the Department of War's March 3, 2026, determination under 41 U.S.C. § 4713 and any specific covered procurement actions taken pursuant to that determination, as described in the Brief for Petitioner. No Federal Register or other official citation is known to counsel.

### C. Related Cases

Counsel is aware of a related case pending in the United States District Court for the Northern District of California: *Anthropic PBC v. U.S. Department of War*, No. 3:26-cv-01996-RFL (N.D. Cal. filed Mar. 9, 2026). That action challenges separate but related government actions. Counsel is unaware of any other related cases currently pending in this Court or any other court.

**DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amici curiae state as follows:

The entity amici are Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Pangram, Institute for Progress, and Roots of Progress. To the best of amici's knowledge, no entity amicus has a parent company, and no publicly held company owns 10% or more of any organizational amicus. The remaining amici—Martin Chorzempa, Alex Imas, Dean Ball, Dwarkesh Patel, Saif Khan, Michael Sobolik, Steve Newman, and Taren Stinebrickner-Kauffman—appear solely in their individual capacities.

These entity amici include policy and research organizations focused on innovation, industrial capacity, and technology law; analytical and media organizations focused on artificial intelligence, and strategic competition; and industry- and infrastructure-oriented organizations focused on the financing, power, and deployment conditions for advanced computing and other frontier technologies. Collectively, their work bears directly on the rules governing when and how the government may exclude technology suppliers from federal procurement and national-security-related markets.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

DISCLOSURE STATEMENT ........................................................................... ii

RULE 29 STATEMENT................................................................................... vii

INTEREST OF AMICI CURIAE .......................................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ......................................................................................................4

    I. THE STATUTE'S DEFINITIONS, INDIVIDUALIZED-TREATMENT
    RULES, AND REVIEW PROVISIONS SHOW THAT CONGRESS MEANT
    TO DISCIPLINE THIS DEPARTMENT'S POWER TO EXCLUDE SOURCES
    FROM THE GOVERNMENT SUPPLY CHAIN. ...............................................4

    II. SECTION 4713 REQUIRES A CONCRETE, REVIEWABLE SEQUENCE
    OF FINDINGS AND PROCEDURES BEFORE EXCLUDING A SOURCE.....8

        A. Section 4713 imposes a structured recommendation and consultation
        process. .........................................................................................................8

        B. Section 4713 requires notice and an opportunity to respond unless the
        Department lawfully invoked the urgent-national-security exception. ..............9

        C. Section 4713 requires a written determination identifying necessity, less
        intrusive measures, and scope. ...................................................................11

        D. Section 4713 requires Congressional notification, including discussion of
        alternatives.................................................................................................12

        E. Agency-created reconsideration cannot substitute for compliance with the
        statutory predicate. ....................................................................................13

    III. THE "LESS INTRUSIVE MEASURES" FINDING IS A CENTRAL
    SAFEGUARD, NOT A PLEA FOR LENIENCY...............................................14

        A. The statute requires a contemporaneous alternatives analysis. ...................14

        B. This safeguard has immediate Section 3252 carryover value because
        Congress reused it there.............................................................................16

    IV. ENFORCING SECTION 4713 AS WRITTEN PRESERVES LAWFUL
    PENTAGON ACTION ...................................................................................17

CONCLUSION .................................................................................................18

CERTIFICATE OF COMPLIANCE .................................................................19

CERTIFICATE OF SERVICE..........................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpharma, Inc. v. Leavitt*,
   460 F.3d 1 (D.C. Cir. 2006).................................................................13

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ..........................................................................15

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156 (1962) ..........................................................................11

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) ............................................................................5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020). .......................................................................13, 15

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) ............................................................................5

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ..........................................................................14

*Foote v. Moniz*,
   751 F.3d 656 (D.C. Cir. 2014)............................................................5

*Learning Resources v. Trump*,
   No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) .........................5

*Michigan v. EPA*,
   576 U.S. 743 (2015) ..........................................................................15

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................15

*Nat'l Council of Resistance of Iran v. Dep't of State,*
251 F.3d 192 (D.C. Cir. 2001)..................................................7, 10

*Northcross v. Memphis Bd. of Educ.,*
412 U.S. 427 (1973) ...............................................................15

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015) ...................................................................8

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.,*
758 F.3d 296 (D.C. Cir. 2014)...........................................7, 10, 17

*SEC v. Chenery Corp.,*
318 U.S. 80 (1943) .................................................................13

*Service v. Dulles,*
354 U.S. 363 (1957) .................................................................9

*Sterling v. Constantin,*
287 U.S. 378 (1932) ...............................................................17

*United States ex rel. Accardi v. Shaughnessy,*
347 U.S. 260 (1954) .................................................................9

*Util. Air Regul. Grp. v. EPA,*
573 U.S. 302 (2014) .................................................................5

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
435 U.S. 519 (1978) .................................................................8

*Vitarelli v. Seaton,*
359 U.S. 535 (1959) .................................................................9

**Statutes**

10 U.S.C. § 3201(a)(1) ..............................................................4

10 U.S.C. § 3252(b)(2)(B) ......................................................3, 16

41 U.S.C. § 1324(a)(3), (5), (7)....................................................6

41 U.S.C. § 1327(b)(2)(D)-(E) ........................................................5

41 U.S.C. § 1327(b)(4) ...........................................................7, 10, 17

41 U.S.C. § 4713(a), (b), (k)(3)–(4) .............................................4

41 U.S.C. § 4713(b)(1) ...............................................................8

41 U.S.C. § 4713(b)(2), (c) .........................................................9

41 U.S.C. § 4713(b)(3) ..............................................................11

41 U.S.C. § 4713(b)(3)(B) ..........................................................14

41 U.S.C. § 4713(b)(4) ..............................................................12

41 U.S.C. § 4713(c) .................................................................10

41 U.S.C. § 4713(d) .............................................................10, 17

41 U.S.C. §  4713(f) ..................................................................7

41 U.S.C. § 4713(i) ...................................................................6

41 U.S.C. § 4713(k)(6) ...............................................................7

## RULE 29 STATEMENT

1. All parties consent to the filing of this brief.

2. No party's counsel authored this brief in whole or in part.

3. No party or party's counsel contributed money intended to fund this brief.

4. No person other than amici or their counsel contributed money intended to fund this brief.

## CERTIFICATE OF COUNSEL
## UNDER D.C. CIRCUIT RULE 29(d)

Pursuant to D.C. Circuit Rule 29(d), counsel certifies that a separate amicus brief is necessary. Amici — technology-policy and research organizations, investors, and individual scholars whose work concerns the legal conditions under which frontier-technology firms participate in federal procurement — present two perspectives Petitioner cannot credibly offer from the posture of a designated source: (1) how the Department's construction of 41 U.S.C. § 4713 in the challenged determination affects the willingness of advanced-technology firms, their investors, and supporting institutions to engage in federal procurement, and the consequences for the defense-relevant technology base; and (2) why disciplined enforcement of § 4713 preserves, rather than limits, lawful Department authority. These perspectives are not adequately represented by any party, and a separate brief is the most effective means of placing them before the Court.

/s/ Tim Hwang

Tim Hwang
Counsel for *Amici Curiae*

## INTEREST OF AMICI CURIAE[1]

Amici are technology-policy organizations, companies, investors, and individual scholars and analysts whose work concerns artificial intelligence, advanced computing, and the legal framework governing participation in federal procurement for advanced technology.

The organizational amici are the Foundation for American Innovation, Fifty Years, Fathom, ChinaTalk, Pangram, Institute for Progress, and Roots of Progress. The individual amici are Martin Chorzempa, Alex Imas, Dean Ball, Dwarkesh Patel, Saif Khan, Michael Sobolik, Steve Newman, and Taren Stinebrickner-Kauffman. Affiliations are provided for identification only.

This case concerns whether the Department may invoke Section 4713 without complying with the procedures Congress prescribed. Amici have a substantial interest in that question because it affects whether advanced-technology firms can rely on stable legal rules and predictable procedural safeguards when deciding whether to work with the federal government. Their perspective is useful because their work centers on the firms, investors, analysts, and policy institutions that operate under those rules.

---

[1] No party's counsel authored any part of this brief or contributed money intended to fund this brief's preparation or submission.

**SUMMARY OF ARGUMENT**

Petitioner should prevail on the merits because Section 4713 authorizes exclusion only through the predicates and procedures Congress specified, and Section 1327 directs this Court to hold unlawful a covered procurement action that is contrary to law, unsupported by the administrative record, or taken without required procedures. Congress vested the Department of War with substantial power to mitigate supply-chain risks. That power deserves serious respect. However, Congress also prescribed how that power is to be exercised and explicitly gave this Court jurisdiction to ensure its mandates were followed.

Section 4713 defines supply-chain risk in technical, operational terms. The Federal Acquisition Supply Chain Security Act, of which it is a part, prioritizes mitigation, private-sector best practices, and engagement with nongovernmental stakeholders over outright bans. Section 4713(i) rejects proxy reasoning based solely on foreign ownership. And Section 1327 channels direct review to this Court. Together, these features show that Congress intended the exclusion of companies to be disciplined by concrete standards, subject to judicial review. It did not provide agencies with a free-floating power to bar otherwise qualified vendors.

There are also judicially reviewable procedural requirements before a vendor (termed a "source" in the statute) may be excluded. Section 4713 requires:

2

institutional recommendation and consultation, notice and an opportunity to respond, a written determination containing specified findings, and Congressional notification. This procedural framework is mandatory. If its elements are not satisfied, the challenged action cannot stand.

Among the mandatory findings that the Secretary must make to sustain a supply-chain risk designation, amici wish to put special emphasis on the dispositive significance that should be placed on the absence of any demonstrated, contemporaneous basis for the less-intrusive-measures finding Congress required. Such an absence is a clear failure by the Department to engage in Congress's disciplined risk management scheme. The same safeguard additionally appears in 10 U.S.C. § 3252(b)(2)(B), where it also reflects a Congressional judgment that supply-chain risk designations should not be a first resort.

The only question this Court needs to answer to rule in favor of the Petitioner is whether the challenged action rests on the predicates and procedures Congress required in the ordinary course before action, or, if Section 4713(c) was lawfully invoked, as soon as practicable after the immediate action. Petitioner is correct that the materials on which the Department relied must establish compliance with Section 4713's mandatory requirements, and Section 1327 requires the United States to file the administrative record that will allow this Court

3

to decide that question. Because the Department has failed to demonstrate compliance, that is sufficient to grant the petition.

Though amici support Petitioner, they urge the Court to rule in a way that preserves lawful Pentagon power. A careful merits ruling in Petitioner's favor would reinforce a broader and important principle: powerful supply-chain authorities remain lawful and lasting only when the decisionmaker makes the findings Congress required. Enforcing Section 4713 as written would preserve lawful Pentagon authority while ensuring that exclusion decisions rest on the findings and procedures Congress mandated.

## ARGUMENT

### I. THE STATUTE'S DEFINITIONS, INDIVIDUALIZED-TREATMENT RULES, AND REVIEW PROVISIONS SHOW THAT CONGRESS MEANT TO DISCIPLINE THIS DEPARTMENT'S POWER TO EXCLUDE SOURCES FROM THE GOVERNMENT SUPPLY CHAIN.

The lodestar of federal procurement law, including for the Department of War, is the Congressional mandate that federal programs be serviced through "full and open competition through the use of competitive procedures." 10 U.S.C. § 3201(a)(1). Against this, Congress has provided certain, well-defined exceptions, which include the authority to exclude certain vendors (or "sources") from the procurement process. Section 4713 gives the Department substantial authority to designate source exclusions, but that authority is not open-ended. It authorizes

4

covered procurement actions through concrete predicates and specified procedures. *See* 41 U.S.C. § 4713(a), (b), (k)(3)–(4). And when the Department takes such an action, Section 1327 directs this Court to review it and to hold unlawful action that is "lacking substantial support in the administrative record," or "not in accord with procedures required by law." *See* 41 U.S.C. § 1327(b)(2)(D)-(E). That combination of delegated power and specified review shows Congress did not confer a free-floating power to disable otherwise qualified sources.

Deference to national-security judgments does not enlarge delegated authority beyond the statutory terms Congress enacted. *See Learning Resources, Inc. v. Trump,* 607 U. S. ___, slip op. at 5, 7–8 (2026); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013); *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 326 (2014). The Department's discretion to protect national security and manage supply-chain risk is substantial. Courts owe respect to military and national-security judgments of the Executive "unless Congress specifically has provided otherwise." *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988). But deference does not displace the definitions, individualized-treatment rules, and review mechanisms Congress specifically prescribed for this regime. *See Foote v. Moniz*, 751 F.3d 656, 657-8 (D.C. Cir. 2014) (applying *Egan* only after confirming that the challenged action was made by personnel specifically trained and authorized under the governing regulatory scheme to render that predictive national-security

5

judgment). Taken individually and as a whole, the predicates and procedures that Section 4713 prescribes show that Congress did not give the Secretary a free-floating power to exclude otherwise qualified sources for reasons untethered to the statutory criteria.

An order designating a corporation as a supply-chain risk is a significant government intervention in the market. It not only debars a company from competing for government contracts, but will often "flow down" to other companies, who must also exclude a source from their own business operations that touch and concern the federal government. Congress therefore intended to limit supply-chain risk designations to circumstances where the Secretary had identified concrete present dangers with particularity.

This is most evident from the fact that Section 4713 defines "supply chain risk" in technical, operational terms. *See* 41 U.S.C. § 4713(k)(6). The definition contemplates sabotage, malicious function, extraction of data, and manipulation of covered articles. The broader statutory structure points the same way. It directs strategic planning around mitigation, best practices, incentives for private-sector risk management, and dealings with nongovernmental stakeholders. *See* 41 U.S.C. § 1324(a)(3), (5), (7).

6

Congress also forbade designations "solely" based on the foreign ownership of an otherwise qualified source. 41 U.S.C. § 4713(i). In other words, even where a source presents the inherent risks that can be assumed from its presumptive loyalties to a foreign government, the Department must still make a specific finding that a source poses the kinds of concrete present dangers described in 41 U.S.C. § 4713(k)(6).

Section 4713(f) additionally requires the Department to engage in an annual review of its determinations and promptly amend covered procurement actions as appropriate. That requirement confirms that Congress treated exclusion as a current, reviewable national-security judgment tied to an administrative record identifying a concrete present danger, not as a punitive imposition of disability.

And crucially for this Court's purposes, Congress required the United States to file an administrative record consisting of the information the appropriate official relied upon in issuing the challenged covered procurement action. That record is what enables this Court to ensure that the predicates and procedures Congress mandated have been satisfied. Congress also provided explicit authority to review classified and other national-security information under seal or in camera where necessary. *See* 41 U.S.C. § 1327(b)(4); *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 317–19 (D.C. Cir. 2014). In doing so, it relied upon this Court's history of demonstrating that meaningful review and protected

7

handling of sensitive materials can coexist. *See Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208–09 (D.C. Cir. 2001).

## II. SECTION 4713 REQUIRES A CONCRETE, REVIEWABLE SEQUENCE OF FINDINGS AND PROCEDURES BEFORE EXCLUDING A SOURCE

Section 4713's substantive designation is further disciplined by findings and procedural requirements that must be satisfied *before* the Secretary may declare a source a "supply chain risk." Each of these procedures reflects important policy choices rooted in Congress's direction that a balance be struck between the potential benefits of excluding a risky source from the government supply-chain and the costs to federal programs that are subject to Congressional oversight and appropriations. To achieve this balancing, Congress built in procedural safeguards to ensure that the Executive accounted for both sides of the ledger. And it gave this Court the responsibility for enforcing the Department's compliance with the procedures Congress imposed. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,* 435 U.S. 519, 524, 543-44 (1978); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101-03 (2015).

### A. Section 4713 imposes a structured recommendation and consultation process.

Before designating an entity a "supply chain risk," Congress mandated that the Secretary obtain "a joint recommendation, in unclassified or classified form,

from the chief acquisition officer and the chief information officer … which includes a review of any risk assessment … that there is a significant supply-chain risk in a covered procurement." 41 U.S.C. § 4713(b)(1). Congress thus chose institutional vetting before exclusion, not *ad hoc* action. While not every imperfection in the agency process defeats agency action, procedural predicates to the exercise of a delegated power are requirements, and agencies are obliged to follow their own rules. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Service v. Dulles*, 354 U.S. 363, 372–73, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 546–47 (1959).

The administrative record must contain the recommendation materials on which the Secretary relied. If those materials contain classified or otherwise protected information, they can be lodged under seal or in camera. But if the record does not contain the recommendation Congress required, the challenged action is unlawful.

**B.  Section 4713 requires notice and an opportunity to respond unless the Department lawfully invoked the urgent-national-security exception.**

In the absence of exceptional circumstances requiring urgency, Section 4713 requires notice to the source and an opportunity to submit information and argument in opposition before the designation is made. 41 U.S.C. § 4713(b)(2), (c). Congress imposed this requirement because doing so gives *the government*, as

9

much as the source, the benefits of due process. By allowing vendor input into high-consequence procurement judgments that affect the capabilities and budgetary demands of government departments subject to ongoing Congressional oversight and appropriations, Congress ensured that such judgments reliably benefit from otherwise inaccessible information.

This Court has recognized that, even in national-security matters, official notice, disclosure of unclassified bases relied on, and a meaningful opportunity to respond can coexist with in camera treatment of classified evidence. *See Ralls*, 758 F.3d at 318–19 (D.C. Cir. 2014); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208–09 (D.C. Cir. 2001). Section 4713 itself makes vendor participation secrecy-compatible. Section 4713(d) requires that the source notice remain confidential until a determination is made. And Section 1327(b)(4)(B) further provides this Court a mechanism to review sensitive support under seal or in camera where necessary. The Department therefore need not choose between confidentiality and the process Congress required.

Even where the Department may invoke special procedures to address urgent national security interests, those special procedures alter the sequencing, but not the substance, of the process Congress directed. Under Section 4713(c), the Department may *delay* providing notice to a source "to the extent necessary to address such national security interest." 41 U.S.C. § 4713(c)(1). But it must also

then provide the required notice "as soon as practicable after addressing the urgent national security interest." *Id*. § 4713(c)(2). The statute, in other words, allows a different sequence where the agency head determines that urgent national-security interests require immediate action. But urgency does not alter the substance.

The administrative record must show either compliance with the notice-and-response requirements or lawful invocation of Section 4713(c)'s urgent-national-security exception, together with the statute's follow-on notice obligations. If the record shows neither, the challenged action is unlawful.

### C. Section 4713 requires a written determination identifying necessity, less intrusive measures, and scope.

Section 4713 requires the Department to make a written determination that (A) designating a source a "supply chain risk" is "necessary to protect national security," (B) "less intrusive measures are not reasonably available to reduce such supply chain risk," and (C) that "the use of such authorities will apply to a single covered procurement or a class of covered procurements, and otherwise specifies the scope of the determination." 41 U.S.C. § 4713(b)(3).

These written findings are not incidental or pro forma. Like other mandatory findings required in federal law, an agency must explain the choice made on the facts found before the Court in a manner that is sufficiently precise and logical to survive judicial review. In other words, they must "articulate [a] rational

11

connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

The scope requirement, in particular, serves important legislative goals. Congress authorized defined covered procurement actions. It did not authorize an exclusion power divorced from covered-procurement standards.

The Court need not resolve every edge case to insist that the Department identify the scope on which it relies. Congress required the Department to specify whether it was acting with respect to a single covered procurement or a class of covered procurements and otherwise to define the determination's scope. If the administrative record does not show that finding, the action is unlawful.

### D.  Section 4713 requires Congressional notification, including discussion of alternatives.

Section 4713 requires notice to specified Congressional committees, together with materials that include the recommendation and a discussion of the basis for the determination, including why less intrusive measures were not reasonably available. 41 U.S.C. § 4713(b)(4). Congressional notification allows Congress to ensure that the exclusion of sources for government programs that it authorizes and must fund is exercised through documented, reasoned decision-making. It further gives Congress the opportunity to consider legislative action on decisions with which it disagrees.

12

The administrative record must show that the required notification was made to Congress, together with the materials Section 4713(b)(4) requires. Protected material can be produced under seal or in camera as appropriate. If the record does not show that notification, the action is unlawful.

### E.  Agency-created reconsideration cannot substitute for compliance with the statutory predicate.

While offering an internal reconsideration process may supplement the statutory scheme in valuable ways, it cannot cure fatal defects in the Department's compliance with the predicates Congress required in Section 4713. A post-determination reconsideration process does not erase the need for the recommendation, notice, written determination, scope identification, and alternatives finding that Congress required at the time of action, nor can it substitute for the notice-and-response process Congress required in the ordinary course or, if Section 4713(c) was invoked, as soon as practicable afterward.

Later review by the agency may clarify reasoning already adopted. Formal reopening may produce a new reviewable order. But optional reconsideration cannot retroactively create predicates Congress required at the time of action. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020); *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). The action of the agency must be judged according to the justifications that the record discloses it was based

13

on; the agency cannot simply rationalize the action later. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

## III. THE "LESS INTRUSIVE MEASURES" FINDING IS A CENTRAL SAFEGUARD, NOT A PLEA FOR LENIENCY

Among the predicates Congress has imposed, this Court should place dispositive weight on the absence of any demonstrated, contemporaneous basis for the less-intrusive-measures finding. Before invoking exclusion authority, Congress required the Department to determine that less intrusive measures than designation were not reasonably available. 41 U.S.C. § 4713(b)(3)(B). This is not a least-restrictive-means rule, and vendors are not entitled to a preferred mitigation package. Nor are policy changes forbidden. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But by requiring federal agencies to consider "less intrusive measures" in good faith before effectively banning a vendor as a "supply chain risk," and by making such determinations judicially reviewable, Congress intended such designations to be necessary and appropriate to the risks presented.

### A. The statute requires a contemporaneous alternatives analysis.

The less-intrusive-measures requirement is meaningful only if it rests on a contemporaneous analysis of concrete, mission-compatible alternatives. Mission-compatible alternatives may include such measures as tailored contract restrictions,

14

phased mitigation measures, technical controls, or other procurement-specific steps to mitigate risk.

The Court need not substitute its choices for the Department's nor require a thousand-page documented review. The Department's analysis can be classified or terse. But whatever its format, it must exist at the time the decision is made. The Department must have made the findings Congress required before or contemporaneously with issuing the order, and not only after litigation has commenced. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). When Congress makes a consideration relevant to an agency's threshold decision, the agency must address it at that decision point, and it may not ordinarily cure the omission through post hoc reasoning once challenged. *See Michigan v. EPA*, 576 U.S. 743, 752–53, 758 (2015); *Regents* at 31–33.

Congress's requirement that such alternatives must be considered at the time the decision is made echoes principles of administrative law that apply broadly, even outside the acquisition context. An agency acts arbitrarily when it "entirely fail[s] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Where Congress specifically required consideration of reasonably available alternatives, the absence of a contemporaneous alternatives analysis is a fundamental defect.

15

The less-intrusive-measure requirement matters most when the source is otherwise qualified and subject to ordinary forms of oversight, audit, monitoring, and technical mitigation. In that setting, the range of mission-compatible alternatives may be broader. The statute requires the Department to confront those governability tools before resorting to exclusion.

### B. This safeguard has immediate Section 3252 carryover value because Congress reused it there.

Section 4713 uses materially similar less-intrusive-measures language to that found in 10 U.S.C. § 3252(b)(2)(B). Reaffirming the need for a disciplined administrative process here therefore has broader institutional value. It would reinforce the principle that powerful supply-chain authorities remain lawful and credible only when the decisionmaker has determined, on a contemporaneous record, that less intrusive measures were not reasonably available. *See Northcross v. Memphis Bd. of Educ.*, 412 U.S. 427, 428 (1973) (per curiam) (treating materially similar language in related statutes as a strong indication that the provisions should be construed alike). The parallel-text point is modest. It does not erase the differences between the statutes, but it does support giving a shared safeguard a disciplined meaning across related supply-chain authorities.

## IV. ENFORCING SECTION 4713 AS WRITTEN PRESERVES LAWFUL PENTAGON ACTION

16

The Court can enforce the predicates and procedures Congress has required without limiting the Pentagon's lawful authority. Section 4713 protects the confidentiality of source notice until determination, and Section 1327 permits the Department to defend classified deliberations through sealed or in camera submissions. *See* 41 U.S.C. §§ 4713(d), 1327(b)(4); *Ralls*, 758 F.3d at 317–19 (D.C. Cir. 2014). The Court can require the record Congress demanded without compelling public disclosure of sensitive information.

If the administrative record does not establish compliance with Section 4713's mandatory predicates, the Court should grant the petition for review and hold unlawful the challenged determination and any covered procurement actions taken under it. Such a disposition would leave the Department free to issue a new or revised action promptly if it satisfies the statute.

A disciplined approach, supported by meaningful judicial review, vindicates Congress's design for a regime of this consequence. *See Sterling v. Constantin*, 287 U.S. 378, 401 (1932) ("What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions"). A ruling that enforces Section 4713 as written would do more than resolve this petition; it would clarify the legal conditions under which advanced-technology firms, capital providers, and supporting institutions engage with the federal government. That clarity has sector-wide significance. It affects whether

17

firms developing strategically important technologies view federal procurement as a market governed by knowable statutory constraints, disciplined decision-making, and judicial review, or instead as a domain of unpredictable exclusion. Enforcing Congress's predicates here would strengthen, not weaken, the long-run credibility of lawful government action in these markets.

## CONCLUSION

The Court should hold unlawful the challenged determination and any covered procurement actions taken under 41 U.S.C. § 4713 because the Department did not satisfy the statute's mandatory predicates and procedures.

Respectfully submitted,

/s/ Tim Hwang
Tim Hwang
Foundation for American Innovation
2443 Fillmore St #380-3386
San Francisco, California, 94115
Telephone: (973)-960-4955

tim.hwang@thefai.org

*Counsel for Amici Curiae*

 Dated: April 22, 2026

18

**CERTIFICATE OF COMPLIANCE**

This brief complies with Fed. R. App. P. 29(a)(5) and 32(f) because it contains 3612 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

/s/ Tim Hwang
Tim Hwang
*Counsel for Amici*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, I caused the foregoing brief to be served on all parties through the Court's electronic filing system.

<u>/s/ Tim Hwang</u>
Tim Hwang
*Counsel for Amici*

**APPENDIX**

## APPENDIX — LIST OF AMICI CURIAE

SETH BANNON
Founding Partner
FIFTY YEARS

ANDREW FREEDMAN
Co-Founder and Chief Strategic Officer
FATHOM

JORDAN SCHNEIDER
Founder
CHINATALK

MARTIN CHORZEMPA
Dennis Weatherstone Senior Fellow
PETERSON INSTITUTE FOR INTERNATIONAL ECONOMICS

ALEX IMAS
Professor of Economics and Applied AI
UNIVERSITY OF CHICAGO BOOTH SCHOOL OF BUSINESS

MAX SPERO
Co-Founder and CEO
PANGRAM

ALEC STAPP
Co-Founder and Co-CEO
INSTITUTE FOR PROGRESS

DEAN BALL
Senior Fellow
FOUNDATION FOR AMERICAN INNOVATION

DWARKESH PATEL
Host
DWARKESH PODCAST

JASON CRAWFORD
Founder and President
ROOTS OF PROGRESS

SAIF KHAN
Former Director for Technology and National Security
WHITE HOUSE NATIONAL SECURITY COUNCIL

MICHAEL SOBOLIK
Senior Fellow
HUDSON INSTITUTE

STEVE NEWMAN
Chairman
GOLDEN GATE INSTITUTE FOR AI

TAREN STINEBRICKNER-KAUFFMAN
Chairman
GOLDEN GATE INSTITUTE FOR AI