**ORAL ARGUMENT HELD ON MAY 19, 2026**

**No. 26-1049**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHROPIC PBC,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF WAR, PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents*.

On Petition for Judicial Review of Department of War 41 U.S.C. § 4713 Notice

## SUPPLEMENTAL BRIEF OF PETITIONER

MICHAEL J. MONGAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
(628) 235-1000
michael.mongan@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

KELLY P. DUNBAR
JOSHUA A. GELTZER
KEVIN M. LAMB
ANNEKE DUNBAR-GRONKE
SAMSON F. COHEN
MEGAN O. GARDNER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com
joshua.geltzer@wilmerhale.com
kevin.lamb@wilmerhale.com
anneke.dunbar-gronke@wilmerhale.com
samson.cohen@wilmerhale.com
megan.gardner@wilmerhale.com

June 4, 2026

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................... ii

GLOSSARY ..................................................................................................... iv

INTRODUCTION ............................................................................................. 1

STATEMENT .................................................................................................... 1

ARGUMENT ..................................................................................................... 3

I.   THE INCURABLY PREMATURE DOCTRINE DOES NOT APPLY ........................... 4

     A.   The Doctrine Depends On A Statutory Finality
          Requirement, Which § 1327 Lacks ........................................................ 4

     B.   Any Finality Requirement Is Nonjurisdictional And
          Forfeited ............................................................................................... 8

II.  ANTHROPIC'S APRIL 17 LETTER DID NOT TRIGGER THE
     DOCTRINE ....................................................................................................... 9

III. ANTHROPIC DOES NOT OBJECT TO DELAYING ISSUANCE OF AN
     OPINION FOR 45 DAYS TO PERMIT NEW SECRETARIAL ACTION ..................... 11

CONCLUSION .................................................................................................. 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES[*]

Page(s)

*32 County Sovereignty Committee v. Department of State, 292 F.3d 797 (D.C. Cir. 2002) ................................................................................ 9-10

American Mining Congress v. EPA, 907 F.2d 1179 (D.C. Cir. 1990) ...................10

American Rivers v. FERC, 895 F.3d 32 (D.C. Cir. 2018) ........................................6

*BellSouth Corporation v. FCC, 17 F.3d 1487 (D.C. Cir. 1994)..............................7

Hall v. Hall, 584 U.S. 59 (2018)...............................................................................6

Humane Society of the United States v. USDA, 41 F.4th 564 (D.C. Cir. 2022) ...............................................................................................................11

ICC v. Brotherhood of Locomotive Engineers, 482 U.S. 270 (1987).......................8

Industrial Energy Consumers of America v. FERC, 125 F.4th 1156 (D.C. Cir. 2025) ...................................................................................................7

*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board, 574 F.3d 748 (D.C. Cir. 2009)...............................................................9

*National Association of Immigration Judges v. FLRA, 77 F.4th 1132 (D.C. Cir. 2023) ................................................................................................6, 8

Safe Extensions, Inc. v. FAA, 509 F.3d 593 (D.C. Cir. 2007) ..................................6

*Stone v. INS, 514 U.S. 386 (1995)........................................................................5, 8

TeleSTAR, Inc. v. FCC, 888 F.2d 132 (D.C. Cir. 1989) ........................................5, 6

*Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006) ..................................................8, 9

*United Transportation Union v. ICC, 871 F.2d 1114 (D.C. Cir. 1989)..............4, 5

---

[*]    Authorities upon which Anthropic chiefly relies are marked with asterisks.

## STATUTES AND RULES

5 U.S.C.
§ 551 ...........................................................................................................6
§ 704 ...........................................................................................................4
§ 7123 ......................................................................................................4, 8

8 U.S.C. § 1189 ..........................................................................................10

16 U.S.C. § 825*l* ..........................................................................................6

28 U.S.C.
§ 2342 ......................................................................................................4, 8
§ 2342 (1990)..............................................................................................5

41 U.S.C.
§ 1327 ............................................................... 1, 2, 3, 4, 5, 6, 7, 8, 9
§ 4713 ....................................................................................................1, 11

49 U.S.C. § 46110 ........................................................................................6

Federal Rule of Appellate Procedure 18....................................................2

## OTHER AUTHORITIES

Hickman, Kristen E. & Richard J. Pierce, Jr., *Administrative Law
Treatise* § 17.11 (7th ed. 2025)....................................................4, 5

2B *Sutherland Statutory Construction* § 51:2 (7th ed. 2025)...................6

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FERC | Federal Energy Regulatory Commission |
| ICC | Interstate Commerce Commission |

**INTRODUCTION**

The Court has asked whether Anthropic's April 17 letter affects this Court's jurisdiction. It does not. The "incurably premature" doctrine is a judicial gloss on statutory finality requirements—and 41 U.S.C. § 1327 contains no such requirement. Regardless, any implicit finality requirement in § 1327 is nonjurisdictional and the Secretary forfeited the defense here. Even if the doctrine applied, the April 17 letter would not trigger it: Anthropic sought rescission, not reconsideration, of the designation while objecting to the inadequacy of post-designation process.

Anthropic's petition is fit for decision now. Anthropic recognizes, however, that the Court may prefer to afford the Secretary an opportunity to act on the information Anthropic submitted. Anthropic does not object to the Court delaying issuance of an opinion for 45 days for that purpose.

**STATEMENT**

On March 4, Anthropic received written notice of the Secretary's supply-chain risk designation under 41 U.S.C. § 4713. App.72; App.243. The notice stated that the designation was "effective immediately" and would "remain in effect until modified or terminated in writing." App.73. It contained instructions for "Requesting Reconsideration" within "30 days" from the letter's receipt. *Id*.

1

Anthropic did not seek reconsideration. Instead, given the irreparable harm the unlawful designation was inflicting, on March 9, Anthropic exercised its statutory right to petition this Court for review. 41 U.S.C. § 1327(b)(1). That same day, Anthropic requested that the Department stay the designation pursuant to Federal Rule of Appellate Procedure 18(a)(1). When the Department failed to act, Anthropic sought an emergency stay in this Court on March 11.

On March 19, hours before the Secretary opposed Anthropic's stay request, Anthropic's CEO received a letter from the Department's Executive Secretary. App.224. Unlike the March 4 notice, this letter mentioned neither reconsideration nor reconsideration procedures. Instead, it invited Anthropic to "submit information or arguments in opposition … within 30 days of receipt." App.224. It did not specify to whom that submission should be made.

Anthropic responded on April 17 by emailing a letter to the Executive Secretary, who had sent the March 19 letter, and the Department's General Counsel, who had been copied on the March 19 transmittal. Anthropic explained that post-designation process was statutorily and constitutionally insufficient. But to ensure the Secretary was aware of relevant developments, Anthropic attached declarations filed in this litigation explaining why the designation was unsupported, referred the Secretary to this case as the forum in which additional

2

materials would be filed, and requested that the Secretary "rescind the designation." April 17 Letter at 2 (Doc. #2172918).

On May 6, after the 30-day reconsideration period lapsed, the Secretary filed his merits brief. That brief repeatedly referenced Anthropic's failure to submit information to the Secretary after the designation. On May 8, undersigned counsel notified the Secretary's counsel of Anthropic's April 17 letter and prior March 9 stay request—which also identified legal and factual errors underlying the designation. The government disclosed these developments to the Court on May 12, attaching Anthropic's April 17 letter, but did not argue that the letter affected this Court's jurisdiction.

After oral argument, this Court directed supplemental briefing "addressing the effect, if any, of Anthropic's April 17 letter on this court's jurisdiction."

## ARGUMENT

The incurably premature doctrine does not apply to 41 U.S.C. § 1327. The doctrine's logic is that a petition for reconsideration renders a challenged agency action *nonfinal* for purposes of judicial review. But that logic holds only where the governing statute conditions judicial review on *finality*. Section 1327 does not. Regardless, any implicit finality requirement in § 1327 is nonjurisdictional, and the Secretary has forfeited the defense. Independently, Anthropic's letter did not trigger the doctrine because Anthropic sought rescission, not reconsideration, of

3

the designation. Although the petition is fit for decision now, Anthropic does not object to a 45-day delay in issuing an opinion to permit the Secretary to act.

## I.    THE INCURABLY PREMATURE DOCTRINE DOES NOT APPLY

### A.    The Doctrine Depends On A Statutory Finality Requirement, Which § 1327 Lacks

Many statutes governing judicial review of federal agency action impose a finality requirement. Section 1327 does not. That textual point alone forecloses application of the incurably premature doctrine.

The Administrative Procedure Act provides a prominent example of statutory finality, limiting judicial review to "final agency action." 5 U.S.C. § 704. Like the APA, "[m]any agency organic acts include a similar [finality] limit on judicial review." Hickman & Pierce, *Administrative Law Treatise* § 17.11 (7th ed. 2025); *see, e.g.*, 5 U.S.C. § 7123(a) (review of "final order[s]" under Federal Service Labor-Management Relations Statute); 28 U.S.C. § 2342 (review of "final orders" under Hobbs Act).

The incurably premature doctrine rests on, and is inseparable from, statutory finality requirements. Its core logic is that a reconsideration request renders agency action *nonfinal* for purposes of judicial review. The foundational case makes that clear. *United Transportation Union v. ICC*, 871 F.2d 1114 (D.C. Cir. 1989), involved a challenge to an Interstate Commerce Commission order. The ICC's organic statute incorporated the Hobbs Act's judicial-review scheme, which itself

4

supplied "jurisdiction" over challenges to "final orders of the [ICC]." 28 U.S.C. § 2342(5) (1990). In the context of that express finality requirement, this Court held that a "pending petition for rehearing … render[s] the underlying agency action nonfinal (and hence unreviewable)." *United Transp.*, 871 F.2d at 1116; *see also TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133-134 (D.C. Cir. 1989) (per curiam) (applying doctrine to petition for review under Communications Act, which incorporates Hobbs Act's "final order" requirement, 28 U.S.C. § 2342(1)).

Section 1327's text is materially different. Its cause of action is triggered not by a final order but by "notif[ication]" of "covered procurement action[s] under [§] 4713." 41 U.S.C. § 1327(b)(1). The statute's 60-day period to petition for review runs from receipt of that notification. *Id.* And § 1327's jurisdictional grant creates "exclusive jurisdiction" in this Court "over claims arising under … [§] 4713," *id.* § 1327(b)(3)—again, without reference to finality.

"Congress has broad power to declare an agency action final and reviewable," *Administrative Law Treatise* § 17.11, including specifying *when* judicial review is available, *see Stone v. INS*, 514 U.S. 386, 393 (1995). Here, Congress modeled § 1327(b)(2)'s review standards on the APA but did not import the APA's finality requirement. Nor did it borrow the Hobbs Act's "final order" limitation. Had Congress done so, this Court would presume those terms "'bring[] the old soil with [them],'" *Hall v. Hall*, 584 U.S. 59, 73 (2018), including the

5

incurably premature doctrine. By contrast, where Congress "inserts a provision in only one of two statutes that deal with a closely related subject, courts construe the omission as deliberate." 2B *Sutherland Statutory Construction* § 51:2 (7th ed. 2025). Because § 1327 contains no finality requirement, the incurably premature doctrine—a judicial gloss on finality—does not apply.

Anthropic has not identified a decision of this Court applying the doctrine to a statute without a finality requirement or comparable limit—for example, where reconsideration is statutorily required.[2] There are good reasons not to expand the doctrine to a statute like § 1327, where its logic does not apply.

For one thing, the doctrine is a "trap for the unwary." *National Ass'n of Immigr. Judges v. FLRA*, 77 F.4th 1132, 1140 (D.C. Cir. 2023) (Randolph, J., concurring). This case illustrates the point. Upon receiving the March 19 letter ten

---

[2]    For example, this Court has applied the doctrine to FERC-administered statutes. Those statutes "generally require[] any party seeking judicial review … to first present its claims in an application for rehearing," and the time to petition for review runs once FERC "acts on the application." *American Rivers v. FERC*, 895 F.3d 32, 42-43 (D.C. Cir. 2018) (citing 16 U.S.C. § 825*l*(a)). Those cases reflect statutory design: when "rehearing is mandated by statute," the statute itself "dictate[s] when a litigant may petition for court review." *TeleSTAR*, 888 F.2d at 134. Furthermore, this Court has applied the doctrine to judicial-review schemes governing agency "order[s]." *E.g.*, 49 U.S.C. § 46110. But those decisions reflect this Court's view that Congress statutorily defined "order" to include a "'*final* disposition'" element, *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (quoting 5 U.S.C. § 551(6)'s definition of "order"). Section 1327 contains nothing comparable.

days after filing its petition (more than two weeks after being designated), Anthropic would have faced a Hobson's choice: submit information in opposition to the designation and risk dismissal of this case, thereby losing the ability to secure timely judicial review, or stay silent and face the Secretary's argument—pressed multiple times in his brief, *e.g.*, Secretary Br.37—that Anthropic relinquished its rights by forgoing post-designation process. That catch-22 should not be imposed absent clear textual support. Section 1327 provides none.

In addition, the doctrine's core rationale—conserving "judicial resources," *BellSouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994)—offers no reason to find jurisdiction lacking. Indeed, the doctrine repackages prudential ripeness concerns, which lack firm constitutional footing. *E.g.*, *Industrial Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163-1167 (D.C. Cir. 2025) (Henderson, J., concurring). Relying on "'judicial resources'" as a justification for withholding Article III review clashes with the "'strict judicial duty to exercise the jurisdiction that is conferred upon the judiciary by Congress.'" *Id.* at 1165 (alterations omitted). That too weighs against expanding the doctrine to a new context involving a statute without a finality requirement.

**B.    Any Finality Requirement Is Nonjurisdictional And Forfeited**

Independently, the Secretary forfeited a finality objection. Some statutory finality requirements are jurisdictional; others are not. The APA's finality

requirement, for example, is nonjurisdictional. As this Court has held, because the APA creates a "cause of action" but does "not confer [subject matter] jurisdiction" that finality requirement is nonjurisdictional. *Trudeau v. FTC*, 456 F.3d 178, 184-185 (D.C. Cir. 2006). When Congress wishes to make finality jurisdictional, it tethers the requirement to a statutory grant of jurisdiction. *E.g., National Ass'n of Immigr. Judges*, 77 F.4th at 1136-1137 (interpreting as jurisdictional "final order" in 5 U.S.C. § 7123); 28 U.S.C. § 2342 (defining "jurisdiction" under Hobbs Act by reference to "final orders").

Any implicit finality requirement in § 1327 is nonjurisdictional. When the incurably premature doctrine applies, it operates to "toll[] the period for judicial review." *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 279 (1987); *Stone*, 514 U.S. at 392 ("as construed in *Locomotive Engineers* both the APA and the Hobbs Act embrace a tolling rule"). If it were applied to § 1327, the doctrine would necessarily toll the 60-day time limit to file a petition for review in § 1327(b)(*1*)—the statute's cause of action. A tolling principle could not sensibly be applied to § 1327(b)(*3*)—the statute's jurisdictional grant—because there is no time limit in that subsection to toll.

Thus, if the doctrine applies at all, it must be an implied limit in § 1327(b)(1). Because that subsection creates a cause of action, not jurisdiction, failure to satisfy the limit would be nonjurisdictional. *Trudeau* made precisely that

8

point in holding that the APA's finality requirement attaches to a cause of action, not a grant of jurisdiction, and thus is nonjurisdictional. 456 F.3d at 184-185.

"'[N]onjurisdictional'" objections are subject to the "normal forfeiture rule," *Intercollegiate Broadcasting Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 756 (D.C. Cir. 2009). And the Secretary forfeited a finality defense by failing to raise it in his brief, in the letter to the Court, or at oral argument. This is not a "'rare case[],'" *id*. at 755, warranting departure from forfeiture rules. Doing so would reward the Secretary's shifting positions: repeatedly faulting Anthropic for not making a post-designation submission; conceding this Court's jurisdiction, Secretary Br.4; but then invoking the April 17 letter as a bar to judicial review. The Secretary cannot have it all three ways.

## II.    ANTHROPIC'S APRIL 17 LETTER DID NOT TRIGGER THE DOCTRINE

Even if the doctrine applied, Anthropic's April 17 letter did not trigger it. Anthropic's request to "rescind the designation," April 17 Letter at 2, is a request for *new* action—not a request that the agency revisit an original decision based on an existing record. That is the logic of *32 County Sovereignty Committee v. Department of State*, which treated a comparable post-designation request to "revoke a [foreign terrorist] designation" as a request for "new" agency action rather than reconsideration. 292 F.3d 797, 799 (D.C. Cir. 2002).

Several features of this case reinforce that conclusion. To start, Anthropic did not invoke the March 4 notice's express "[r]equirements and [p]rocedures … for reconsideration" when invited to do so. App.73. Moreover, unlike many cases in which this Court applies the doctrine, the statute itself contains no formal reconsideration process, much less a mandatory one. And neither the Department's March 19 letter nor Anthropic's April 17 letter mentioned "reconsideration."

Indeed, Anthropic did not seek reconsideration in any ordinary sense. It did not ask to reopen the designation; it asked for new agency action, while making clear that judicial review was properly underway. The letter objected to the legal sufficiency of post-designation process. It referred the Secretary to already-filed litigation declarations. And it made clear additional materials would be submitted in this proceeding. The letter thus ensured the Secretary was aware of litigation materials supporting rescission—a new action the Secretary may take at any time.

"Although the analogy is not perfect," Anthropic's request to have its "designation revoked" was thus "similar to a request for a new rulemaking," which does not implicate the doctrine. *32 Cnty.*, 292 F.3d at 799; *cf. American Min. Cong. v. EPA*, 907 F.2d 1179, 1185 (D.C. Cir. 1990) (petition for new rulemaking does not render regulation nonfinal).[3]

---

[3]    *32 County* assumed the doctrine applied to foreign terrorist designations. That is likely because judicial review is tied to "publication in the Federal Register," 8 U.S.C. § 1189(c)(1), and Federal Register publication has been

### III.  ANTHROPIC DOES NOT OBJECT TO DELAYING ISSUANCE OF AN OPINION FOR 45 DAYS TO PERMIT NEW SECRETARIAL ACTION

This Court has jurisdiction, and Anthropic's petition is fit for decision. Anthropic appreciates, however, that prudential considerations could counsel in favor of permitting time for new action by the Secretary. Anthropic hopes the Secretary will rescind his designation. But delay should not be indefinite; otherwise the Secretary could effectively evade the judicial-review scheme Congress created in § 1327. Anthropic would not object to delaying issuance of an opinion for 45 days to permit the Secretary to consider the April 17 letter.

If the Secretary rescinds the designation, this petition may be moot, absent indication the challenged conduct is capable of repetition. If the Secretary reaffirms his designation in a new decision, Anthropic anticipates filing a protective petition for review and moving to consolidate it with this petition, at which point supplemental briefing may be warranted.

## CONCLUSION

This Court has jurisdiction to hold the § 4713 actions unlawful.

---

"consistently understood" as shorthand for "final agency action," *Humane Society of the United States v. USDA*, 41 F.4th 564, 579 (D.C. Cir. 2022) (Rao, J., dissenting).

11

Dated:  June 4, 2026

Respectfully submitted.

*Kelly P. Dunbar*

MICHAEL J. MONGAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
(628) 235-1000
michael.mongan@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

KELLY P. DUNBAR
JOSHUA A. GELTZER
KEVIN M. LAMB
ANNEKE DUNBAR-GRONKE
SAMSON F. COHEN
MEGAN O. GARDNER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com
joshua.geltzer@wilmerhale.com
kevin.lamb@wilmerhale.com
anneke.dunbar-gronke@wilmerhale.com
samson.cohen@wilmerhale.com
megan.gardner@wilmerhale.com

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 2,499 words. I further certify that the foregoing brief has been prepared in proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), I have relied upon the word count feature of this word processing system in preparing this certificate.

Dated: June 4, 2026                                    /s/   *Kelly P. Dunbar*
                                                             Kelly P. Dunbar

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, the foregoing was electronically filed through this Court's CM/ECF system. Pursuant to Fed. R. App. P. 25(c)(2)(A), I further certify that the foregoing was served to all registered users by filing it with the Court's electronic filing system. Pursuant to the Court's Per Curiam Order dated May 21, 2026, as amended, I further certify that I caused paper copies to be submitted to the Court on June 4, 2026 by 4:00pm.

/s/  *Kelly P. Dunbar*
KELLY P. DUNBAR
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com