# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ANTHROPIC PBC,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF WAR, PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents*.

On Petition for Judicial Review of Department of War 41 U.S.C. § 4713 Notice

## SECOND SUPPLEMENTAL BRIEF OF PETITIONER

MICHAEL J. MONGAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
(628) 235-1000
michael.mongan@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

KELLY P. DUNBAR
JOSHUA A. GELTZER
KEVIN M. LAMB
ANNEKE DUNBAR-GRONKE
SAMSON F. COHEN
MEGAN O. GARDNER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com
joshua.geltzer@wilmerhale.com
kevin.lamb@wilmerhale.com
anneke.dunbar-gronke@wilmerhale.com
samson.cohen@wilmerhale.com
megan.gardner@wilmerhale.com

July 6, 2026

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

GLOSSARY.................................................................................................iv

INTRODUCTION ............................................................................................1

STATEMENT ..................................................................................................2

ARGUMENT ..................................................................................................3

I.  THE JUNE DECISION CONFIRMS THE DESIGNATION IS
    SUBSTANTIVELY UNLAWFUL .................................................................3

    A.  The June Decision's Revisionist Account Impermissibly
        Rewrites The Bases For The Designation And Is
        Arbitrary And Capricious........................................................3

    B.  The Remaining Justifications Provide No Statutorily
        Defensible Basis For The Designation.....................................6

II. THE JUNE DECISION DOES NOT EXCUSE THE PROCEDURAL
    VIOLATIONS ...........................................................................................8

    A.  Post-Hoc Process Does Not Cure Statutory Procedural
        Violations ................................................................................8

    B.  Post-Hoc Process Does Not Cure The Due Process
        Violation .................................................................................10

CONCLUSION ................................................................................................12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

Page(s)

## CASES[*]

*Alabama v. Bozeman*, 533 U.S. 146 (2001)....................................................9

*Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014)........................8

*\*Armstrong v. Manzo*, 380 U.S. 545 (1965)....................................................11, 12

*\*Esparraguera v. Department of the Army*, 101 F.4th 28
    (D.C. Cir. 2024)....................................................................10

*Fuentes v. Shevin*, 407 U.S. 67 (1972)........................................................11

*Geleta v. Gray*, 645 F.3d 408 (D.C. Cir. 2011) ...............................................5

*Louisiana Public Service Commission v. FERC*, 184 F.3d 892
    (D.C. Cir. 1999) ..................................................................4

*Mack Trucks, Inc. v. EPA*, 682 F.3d 87 (D.C. Cir. 2012)........................................9

*\*Missouri Public Service Commission v. FERC*, 337 F.3d 1066
    (D.C. Cir. 2003) ..................................................................5

*National Fuel Gas Supply Corporation v. FERC*, 468 F.3d 831
    (D.C. Cir. 2006) ..................................................................4

*\*National Tour Brokers Association v. United States*, 591 F.2d 896
    (D.C. Cir. 1978)................................................................9, 10

*New Jersey, Department of Environmental Protection v. EPA*,
    626 F.2d 1038 (D.C. Cir. 1980)....................................................9

*Oglala Sioux Tribe v. Nuclear Regulation Commission*, 896 F.3d 520
    (D.C. Cir. 2018) ..................................................................8

*Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988) ...............................11

*Ralls Corporation v. CFIUS*, 758 F.3d 296 (D.C. Cir. 2014) .................................11

---

[*]     Authorities upon which Anthropic chiefly relies are marked with asterisks.

*Ramaprakash v. FAA*, 346 F.3d 1121 (D.C. Cir. 2003) ............................4

*Sharon Steel Corporation v. EPA*, 597 F.2d 377 (3d Cir. 1979)............................10

*Shinseki v. Sanders*, 556 U.S. 396 (2009)....................................8

*Sugar Cane Growers Cooperative of Florida v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002)........................................9

*Trump v. Cook*, 609 U.S. __, 2026 WL 1855613 (U.S. June 29, 2026)..................11

**STATUTES**

5 U.S.C. § 706................................................................8

28 U.S.C. § 2111............................................................8

38 U.S.C. § 7261 ............................................................8

41 U.S.C.
    § 1327 .......................................................8, 9, 10
    § 4713 .................................................1, 6, 7, 8, 9, 10, 12

**OTHER AUTHORITIES**

2B *Sutherland Statutory Construction* § 51:2 (7th ed. 2025)....................................8

# GLOSSARY

| | |
|---|---|
| AI | artificial intelligence |
| DoW | Department of War |

**INTRODUCTION**

The Secretary's "June Decision" does not cure the § 4713 designation's defects.[1] It confirms them.

The Department attempted to justify the original designation based on specific assertions that Anthropic could interfere with Claude once deployed on classified systems—a theory Anthropic has now explained is a technical impossibility. Faced with Anthropic's unrebutted showing, the Secretary could have confessed error and meaningfully reconsidered the designation. He did not. Instead, he issued a cursory, contradictory decision, implausibly claiming the designation did not depend on a particular factual understanding of Anthropic's post-deployment access. He also criticized Anthropic for failing to submit "new" evidence to the Department, despite having provided Anthropic no opportunity whatsoever to submit any evidence prior to the designation.

That response confirms the substantive unlawfulness of the designation. Notwithstanding the Secretary's revisionist account, the record is clear that the designation *did* rest on post-deployment-access concerns. And if the Department actually knew Anthropic lacked such access all along, that makes the designation

---

[1] "Decision Regarding Reconsideration of Determination," Secretary Suppl. Br. Add.1-2 ("June Decision").

more arbitrary. Overall, the shifting and contradictory explanations underscore that this has always been a designation in search of a rationale.

Nor does the June Decision cure the Secretary's underlying procedural violations. Those violations—both statutory and constitutional—were complete when the designation issued, and after-the-fact process cannot undo them. If the Secretary wishes to cure those failings, he can consider the matter anew on a blank slate. But the June Decision cannot substitute for pre-decisional process that Congress and the Constitution required.

## STATEMENT

On April 17, 2026, Anthropic submitted a letter to the Department, reaffirming its opposition to the supply-chain risk designation, attaching litigation declarations explaining why the designation rested on factual errors, and requesting rescission of the designation. The declarations made clear that, contrary to a central rationale for the designation, Anthropic has no ability to alter or control Claude once deployed on classified systems. *E.g.*, App.257-261. Through counsel, the Department explained it would treat the April 17 letter as a reconsideration request, prompting this Court to direct supplemental briefing by June 4 on whether the letter affected its jurisdiction.

On June 4, the government notified Anthropic of the June Decision. In that cursory, four-paragraph document, the Secretary "reaffirm[ed]" his March 3

"Determination," explaining that the "scope and applicability" of the designation "remain unchanged and in effect." June Decision at 1. Without identifying or addressing any of the evidence Anthropic had submitted, the Secretary asserted Anthropic "failed to submit materially new information or arguments." *Id.* He also claimed that the "factual information" Anthropic submitted "was largely already known … and in part informed the prior Determination." *Id.* And ignoring all the assertions about post-deployment access made in support of the designation, he purported to "clarif[y]" that the designation "did not depend on a particular understanding of [Anthropic's] real-time technical access" to Claude once deployed on classified systems. *Id.*

After Anthropic filed a protective petition for review, this Court directed supplemental briefing on the effect of the June Decision on Anthropic's legal challenges to the designation.

## ARGUMENT

### I. THE JUNE DECISION CONFIRMS THE DESIGNATION IS SUBSTANTIVELY UNLAWFUL

#### A. The June Decision's Revisionist Account Impermissibly Rewrites The Bases For The Designation And Is Arbitrary And Capricious

The June Decision's shifting, inconsistent explanations underscore that the designation is not the product of reasoned decisionmaking. The original determination rested on specific factual assertions that Anthropic could "alter or even shut off DoW's use of Claude," including "during a military operation."

3

App.213; *see* App.213-214, 409-413. For example, Under Secretary Emil Michael claimed that Anthropic could "make unilateral changes to" the model the Department "currently uses," App.218, and that twelve Anthropic employees have "administrative access" to deployed versions of Claude, App.413; *see also* Reply Br.15-16. Anthropic's unrebutted declarations disprove those assertions.

The Secretary does not now attempt to defend those erroneous factual claims. But he also does not acknowledge error or explain why the same designation would have issued without it—the showing he was required to make under *National Fuel Gas Supply Corporation v. FERC*, 468 F.3d 831 (D.C. Cir. 2006). He instead attempts to disavow his mistake, claiming that his original determination "did not depend on a particular understanding of [Anthropic's] real-time technical access to" Claude "post-deployment." June Decision at 1.

The record forecloses that revisionist account, as shown above. Although an agency may clarify its precedent, it may not rewrite it. The Secretary's obvious "failure to come to grips" with the grounds of the original determination "constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'" *Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C. Cir. 2003) (Roberts, J.). This Court rejects such "ad hocery." *Id.* at 1130; *see Louisiana Pub. Serv. Comm'n v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999) ("180 degree turn away from [agency precedent] was arbitrary and capricious"). So too here it should

reject the Secretary's attempt to rewrite the express grounds for the original determination now that one of those grounds has been conclusively disproven.

The Secretary's fallback claim—that the facts Anthropic submitted were "largely already known to the Department and in part informed the prior Determination," June Decision at 1—makes matters worse, not better. If the Secretary knew at the time of the designation that Anthropic lacked post-deployment access, but nonetheless relied on that theory to justify the designation, the designation's arbitrariness is even clearer. "Reliance on facts that an agency knows are false at the time it relies on them is the essence of arbitrary and capricious decisionmaking." *Missouri Pub. Serv. Comm'n v. FERC*, 337 F.3d 1066, 1075 (D.C. Cir. 2003).

In short, however the June Decision is read, it confirms that the designation is neither reasonable nor reasonably explained. On one account, the designation rested on a material factual error, which the Secretary now attempts to abandon by impermissibly rewriting the designation's original rationales. On another, the Secretary relied on facts he knew were false. Neither account is consistent with reasoned decisionmaking, and neither can sustain the designation.[2]

---

[2] Moreover, the "shifting and inconsistent justifications are 'probative of pretext'" for purposes of Anthropic's First Amendment claim. *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011); *see* Anthropic Br.53-60.

**B.** **The Remaining Justifications Provide No Statutorily Defensible Basis For The Designation**

Having disclaimed a post-deployment-access rationale, the Secretary asserts that "pre-deployment risks, loss of trust, and other risk factors" "support" the designation. June Decision at 2. They do not. The Secretary never had a defensible claim that § 4713—a statute targeting sabotage and similar covert, intentional acts—reaches contractual disputes. *E.g.*, Anthropic Br.39-47. Absent a post-deployment-access theory, there is no basis to support a claim that Anthropic is a saboteur.

*Pre-deployment risks.* The Department never raised pre-deployment risks with Anthropic before the designation. App.26, 235. To the contrary, days before, the Secretary praised Claude's "exquisite capabilities" while threatening to commandeer Claude under the Defense Production Act. App.25. And the Department expressed "hope" contract negotiations would "work" the day after the designation was signed. App.241. All of that forecloses the notion the Department had genuine technical concerns. Even if such concerns existed, the record contains no support for the claim that Anthropic would maliciously and surreptitiously encode limitations in Claude "so as to" "surveil, deny, disrupt, or otherwise manipulate" covered military systems. 41 U.S.C. § 4713(k)(6).

*Loss of trust.* The Secretary's claimed "loss of trust" in Anthropic is an unjustifiable (and non-falsifiable) reframing of a contract dispute. It has no

6

foothold in § 4713(k)'s text, which targets intentional acts of sabotage or manipulation—not public vendor disagreements. Defending contract terms the Department previously agreed to is normal and reasonable behavior. And openly disclosing concerns and negotiating to address them is what trustworthy companies do. These are not the actions of a saboteur. Indeed, if these were genuine concerns, a wide range of ordinary procurement tools exist to address them—including contract termination. *See* Anthropic Br.47-49. They do not justify branding Anthropic a national-security threat. That is presumably why § 4713 has never before been wielded against an American company.

***Other risk factors.*** Remaining "risk factors" are common to every frontier AI model, do not map onto the contractual dispute that actually triggered the designation, and otherwise provide no basis for designating Anthropic a supply-chain threat to national security. Anthropic Br.46-47.

In short, the June Decision confirms the designation has no statutory basis under § 4713. Once the post-deployment-access theory is abandoned, all that remains is a contract dispute implausibly repackaged as a national-security threat under a statute directed at sabotage.

**II. THE JUNE DECISION DOES NOT EXCUSE THE PROCEDURAL VIOLATIONS**

**A. Post-Hoc Process Does Not Cure Statutory Procedural Violations**

Congress mandated certain procedures before a designation is imposed, 41 U.S.C. § 4713(b), and directed this Court to hold unlawful acts taken "not in accord with" those procedures, *id.* § 1327(b)(2)(E). The Secretary failed to satisfy the statute's critical procedural protections before designating Anthropic a national-security threat. *See* Anthropic Br.30-38; Reply Br.11-13. The June Decision does not cure those defects or render the violations harmless.

To start, as Circuit precedent makes clear, application of harmless-error principles depends on statutory authorization. *See Oglala Sioux Tribe v. Nuclear Regul. Comm'n*, 896 F.3d 520, 533 (D.C. Cir. 2018) (harmless error requires statutory authorization); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1109 (D.C. Cir. 2014) (Medicare Act contains no textual basis for harmless error); *see, e.g.*, 5 U.S.C. § 706; 38 U.S.C. § 7261(b)(2).[3] Section 1327 contains no such authorization. Despite borrowing § 706's substantive standards, Congress did not incorporate § 706's "rule of prejudicial error." That "omission" should be deemed "deliberate." 2B *Sutherland Statutory Construction* § 51:2 (7th ed. 2025). Reinforcing the point, Congress's direction that this Court "shall hold unlawful"

---

[3] *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009), observed that harmless-error rules "ordinarily apply in civil cases," but that is because statutes require or authorize it, *id.* at 406-408 (discussing 28 U.S.C. § 2111). Section 1327 does not.

actions that defy required procedures, 41 U.S.C. § 1327(b), is language of command. It is not an invitation to forgive procedural errors. *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) (declining to read harmless-error exception into interstate agreement that specified remedy for violation using the word "shall").

Regardless, there are compelling reasons not to permit post-designation process to excuse the procedural violations here. First, doing so would "virtually repeal" § 4713(b)'s "requirements." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002). If the Secretary "could skip those procedures," offer post-designation process, and "then be protected from judicial review," the procedures Congress mandated would be discretionary. *Id.*; *see also Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012) ("agencies would have no use for the APA" if post-promulgation comment cured process violations).

Second, this Court has identified the powerful "psychological and bureaucratic realities" that explain why after-the-fact process cannot substitute for pre-decisional process. *New Jersey, Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1050 (D.C. Cir. 1980). Once an agency has "put its credibility on the line" with a "'final'" decision, there are strong incentives for a decisionmaker to defend rather than reconsider the decision. *National Tour Brokers Ass'n v. United States*, 591 F.2d 896, 902 (D.C. Cir. 1978). "People naturally tend to be more closeminded and

9

defensive once they have made a 'final' determination." *Id.*; *accord Sharon Steel Corp. v. EPA*, 597 F.2d 377, 381 (3d Cir. 1979).

That is apparent here. In the June Decision, the Secretary expressly required Anthropic to "demonstrate [a] basis for altering or rescinding the prior Determination." June Decision at 1. And he repeatedly faulted Anthropic for purportedly not submitting "new" information, *id.* at 1-2, confirming that he assigned Anthropic the burden to overcome a decision he had made without any pre-designation opportunity for Anthropic to respond. That is not a decision made on a blank slate with an open mind, to which Anthropic would have been entitled had statutory procedures been followed. It is an after-the-fact ratification of a "final" decision to which the Secretary had publicly committed. App.77.

## B.     Post-Hoc Process Does Not Cure The Due Process Violation

Similar principles govern Anthropic's due process claim. Section 1327(b)(2)(B) directs this Court to hold unlawful § 4713 actions that are "contrary to constitutional right." Here, the designation impaired constitutionally protected interests without pre-deprivation notice or an opportunity to respond. Anthropic Br.48-57; Reply Br.21-26. Post-designation process does not excuse that violation.

As this Court recently put it, post-deprivation process "[i]s no substitute for the pre-deprivation process to which [a party] [i]s constitutionally entitled." *Esparraguera v. Department of the Army*, 101 F.4th 28, 40 (D.C. Cir. 2024).

Rather, a procedural due process violation occurs and is complete at the time of the deprivation; it cannot be "later" "undo[ne]." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972). That is so regardless of "uncertainty that more process would have led to a different … decision." *Ralls Corp. v. CFIUS*, 758 F.3d 296, 320 (D.C. Cir. 2014); *cf. Trump v. Cook*, 609 U.S. __, 2026 WL 1855613, at \*15 (U.S. June 29, 2026) (denial of required process rendered decision "'void' from the start" regardless of effect on outcome).

Supreme Court precedent prescribes the remedy in such circumstances. Procedural due process violations, the Court has explained, "demand" "'wip[ing] the slate clean,'" restoring a party to the "'position [it] would have occupied" absent denial of required process "'in the first place.'" *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 87 (1988). The Court's decision in *Armstrong v. Manzo*, 380 U.S. 545 (1965), illustrates the point. There, a Texas court terminated a father's parental rights through an adoption decree entered without notice. After learning of the decree, he obtained a post-deprivation opportunity to "set aside the decree." *Id.* at 550. State courts held that the later hearing "cured" the "constitutional infirmity," but the Supreme Court decisively rejected that proposition. *Id.* at 551. With only post-deprivation process, the father "faced … the task of overcoming an adverse decree" and bore the "burden of affirmatively showing" reason to modify it. *Id.*

11

That result, the Supreme Court held, was constitutionally unacceptable. "A fundamental requirement of due process is 'the opportunity to be heard'" at "a meaningful time and in a meaningful manner." *Armstrong*, 380 U.S. at 552. The only remedy that "fully" protects that right is to "set aside the decree and consider the case anew." *Id.*

Those principles are dispositive here. In the June Decision, the Secretary expressly inverted the burden—demanding that Anthropic "demonstrate" a "basis for altering or rescinding" the designation. He also did not consider the issues anew. Instead, Anthropic was forced to overcome a decision the Secretary had publicly announced as final and defended for months in court. Such post-designation process does not cure the prior constitutional violation.

## CONCLUSION

The Court should hold unlawful the Secretary's § 4713 actions.

Dated:  July 6, 2026

Respectfully submitted.

*/s/ Kelly P. Dunbar*

MICHAEL J. MONGAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
(628) 235-1000
michael.mongan@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

KELLY P. DUNBAR
JOSHUA A. GELTZER
KEVIN M. LAMB
ANNEKE DUNBAR-GRONKE
SAMSON F. COHEN
MEGAN O. GARDNER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com
joshua.geltzer@wilmerhale.com
kevin.lamb@wilmerhale.com
anneke.dunbar-gronke@wilmerhale.com
samson.cohen@wilmerhale.com
megan.gardner@wilmerhale.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that this brief complies with the type-volume limitations of this Court's June 24, 2026 Order. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 2,478 words. I further certify that the foregoing brief has been prepared in proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), I have relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  July 6, 2026                                    */s/ Kelly P. Dunbar*
                                                        Kelly P. Dunbar

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, the foregoing was electronically filed through this Court's CM/ECF system. Pursuant to Fed. R. App. P. 25(c)(2)(A), I further certify that the foregoing was served to all registered users by filing it with the Court's electronic filing system. Pursuant to Circuit Rules 27(b) and 32(d), I further certify that I caused paper copies to be submitted to the Court on July 6, 2026.

*/s/ Kelly P. Dunbar*
KELLY P. DUNBAR
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
kelly.dunbar@wilmerhale.com