# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 19, 2026 Decided August 18, 2026

No. 25-5256

HESAI TECHNOLOGY CO., LTD AND HESAI INC.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF DEFENSE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cv-01381)

*James E. Tysse* argued the cause for appellants. With him on the briefs were *Lide E. Paterno*, *Margaret O. Rusconi*, and *Caroline L. Wolverton*.

*Urja Mittal*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Brett A. Shumate*, Assistant Attorney General, and *Sharon Swingle*, Attorney.

Before: PILLARD and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*: Federal law requires the Secretary of Defense to annually publish a list identifying all "Chinese military companies" operating in the United States. In 2024, the Secretary included Hesai Technology Co., Ltd., and its subsidiary, Hesai, Inc. (collectively, Hesai) on that list. Hesai sued, claiming the Secretary violated the Fifth Amendment's Due Process Clause and the Administrative Procedure Act. The district court granted summary judgment to the Secretary.

We reverse based on Hesai's due process claim. Because the Secretary's designation carries reputational and legal consequences, it implicates a protected interest. The Constitution therefore required the Secretary to provide Hesai notice of the unclassified materials on which he intended to rely and a meaningful opportunity to respond before finalizing the designation. The Secretary provided neither, and that error was not harmless. We therefore reverse and remand so that the Secretary may afford Hesai the process it is due.

## I

### A

Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 directs the Secretary of Defense to identify "Chinese military compan[ies]" operating in the United States. Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (2021) (codified at 10 U.S.C. § 113 note). Each year, the Secretary must submit a list of those companies to Congress and concurrently "publish the unclassified portion of such list in the Federal Register." § 1260H(b)(2)(A).[1] The statute sets out several categories of companies that qualify for designation. *See* § 1260H(g). Nothing in the statute expressly requires the Secretary to

---

[1] Unless otherwise specified, citations to § 1260H are to the version in effect on the date of publication of this opinion, as codified at 10 U.S.C. § 113 note.

provide an entity notice or an opportunity to respond before designating it a Chinese military company operating in the United States.

An amended version of Section 1260H took effect on December 23, 2024. *See* Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123–26 (2024). Among other changes, it expanded the grounds for designation and required the Secretary, when he publishes the list, to include "the justification for inclusion in such list" for each company named. *Id.* at 2123; § 1260H(b)(2)(B).

Inclusion on the Section 1260H list carries concrete legal consequences. The Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods, services, or technology" with a listed company or an entity controlled by one. National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(1)(A), (a)(2), 137 Stat. 136, 315 (2023), as amended by National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 845, 139 Stat. 718, 977 (2025). The Department of Homeland Security likewise may not use federal funds to enter into a "procurement contract, memorandum of understanding, or cooperative agreement" with, or "make a grant to, or provide a loan or guarantee to," a listed company or its subsidiary. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (2024). And the Department of Energy may not extend "any covered support," including a "grant, contract, subcontract, award, [or] loan," to one. 42 U.S.C. § 18912(a)(2), (a)(3)(B), (c)(1)–(2).

Designation also carries reputational consequences. Because "the unclassified portion" of the Section 1260H list must be publicly announced "in the Federal Register," § 1260H(b)(2), designation "can be a blow to designated companies' reputations," Idrees Ali, Alexandra Alper & Michael Martina, *Pentagon Calls Out Chinese Companies It*

*Says Are Helping Beijing's Military*, Reuters (Feb. 1, 2024), https://perma.cc/GK6P-XQSE.

**B**

Hesai develops, manufactures, and sells Light Detection and Ranging (LiDAR) products. LiDAR uses light to measure distances and generate real-time, three-dimensional representations of the surrounding environment. Hesai's products are used principally in advanced driver-assistance systems and autonomous-vehicle fleets, where they enable "autonomous or assisted driving systems to navigate complex environments in a wide variety of driving conditions." *Hesai Tech. Co. v. DOD*, 792 F. Supp. 3d 22, 29 (D.D.C. 2025) (quotation marks omitted).

The Secretary first designated Hesai as a Chinese military company on January 31, 2024. Hesai filed this suit in May of that year. The parties cross-moved for summary judgment, and while those motions were pending, the Secretary informed the district court he "had received new information relevant to Hesai's listing and [that he] expected to make a new decision." *Id*. at 30. On October 15, 2024, the Secretary rescinded the initial designation and immediately redesignated Hesai. *See id*. at 31; J.A. 144–45; 89 Fed. Reg. 86,230 (Oct. 29, 2024) (providing notice of the rescission and redesignation).

Hesai amended its complaint to challenge the redesignation under the APA and the Fifth Amendment's Due Process Clause. Its APA claims alleged, among other things, that the Secretary misconstrued Section 1260H, inadequately explained its decision, and lacked substantial evidence to support the redesignation. Its due process claim alleged that the Secretary failed to provide constitutionally required notice of the materials on which it intended to rely and a meaningful opportunity to respond before the redesignation became final. The parties then filed new cross-motions for summary judgment. The district court granted summary judgment to

the Secretary, upholding the redesignation under the APA. *Hesai Tech.*, 792 F. Supp. 3d at 32–48. Without deciding whether Hesai was entitled to pre-designation process, the court held that any due process violation was harmless because Hesai had not shown prejudice from the alleged violations. *Id.* at 48–49. Hesai appealed, and we heard oral argument in March 2026. In June 2026, the Secretary notified us that he had published a new Section 1260H list, which again included Hesai. Consistent with the amended statute, the unclassified portion of the list set forth the reasons for designating Hesai. Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35,189, 35,192 (June 10, 2026).

## II

We begin with jurisdiction. The Secretary's publication of a new Section 1260H list while this appeal was pending raises the question of whether Hesai's challenge to the October 2024 redesignation is moot. The Secretary has not argued mootness and thus has not carried the "heavy burden" of establishing it. *Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022). But because we have an "independent obligation to ensure that appeals before us are not moot," *id.* (cleaned up), we explain why this case remains live.

Our recent decision in *SZ DJI Technology Co.* addressed a similar question. There, we held that a renewed Section 1260H designation did not moot a challenge to an earlier designation in part because the record did not show that the earlier designation ceased to have any effect or that the challenged conduct was unlikely to recur. *SZ DJI Tech. Co. v. DOD*, No. 25-5367, slip op at 6–8 (D.C. Cir. Aug. 14, 2026). Those considerations apply equally here. The record does not establish that the October 2024 designation lacks continuing reputational effect, nor does it establish that the asserted failure to provide pre-designation process will not recur (indeed, that asserted failure may already have recurred). Therefore, "on the present record, this case is not moot." *Id.* at 7 (cleaned up).

## III

We review the district court's grant of summary judgment de novo. *See Epsilon Elecs., Inc. v. Dep't of the Treasury*, 857 F.3d 913, 918 (D.C. Cir. 2017). Hesai presses APA and due process challenges to the October 2024 redesignation. We agree with Hesai's due process argument and do not reach the APA issues. *See People's Mojahedin Org. of Iran v. Dep't of State* (*PMOI*), 613 F.3d 220, 227 (D.C. Cir. 2010) (per curiam) (taking the same approach).

### A

The Fifth Amendment provides that "[n]o person shall be . . . deprived of . . . liberty[] or property[] without due process of law." U.S. Const. amend. V. Corporations are "person[s]" within the meaning of the Due Process Clause, so Hesai may invoke its protections. *See Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 962 n.19 (D.C. Cir. 1980). "The first inquiry in every due process challenge" is whether the government has deprived the plaintiff of a protected liberty or property interest. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If the challenged action implicates such an interest, we then determine "how much process is due." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993).

Hesai contends that the Section 1260H designation implicates a protected interest under the "stigma-plus" doctrine. Under that doctrine, "in addition to reputational harm" a plaintiff must show that either "(1) the government has deprived [the plaintiff] of some benefit to which [it has] a legal right" or "(2) the government-imposed stigma is so severe that it 'broadly precludes' [the plaintiff] from pursuing 'a chosen trade or business.'" *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) (quoting *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003)).

Hesai relies on the first option, which has its roots in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971).[2] There, a police chief publicly "posted" a notice "in all retail liquor outlets" in town identifying the plaintiff as a person to whom liquor could not be sold. *Id*. at 435. The posting attached a "stigma or badge of disgrace" and legally prohibited others from selling liquor to her. *Id*. at 435–37. The Supreme Court held that "procedural due process require[d] notice and an opportunity to be heard" before the government could take that action. *Id*. at 436. As the Court later explained in *Paul v. Davis*, 424 U.S. 693 (1976), the legal prohibition was critical: The posting both damaged the plaintiff's reputation and deprived her of "the right to purchase or obtain liquor in common with the rest of the citizenry." *Id*. at 708. That "alteration of legal status," "combined with" the reputational injury, triggered due process safeguards. *Id*. at 708–09.

We have long applied the same principle in the government-contracting context. In *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994), we explained that government action sufficiently changes a plaintiff's legal status when it "formally or automatically excludes" the plaintiff "from work on some category of future [government] contracts." *Id*. at 1528. That is, combined with reputational harm, depriving someone of "the right to be considered for government contracts in common with all other persons" suffices to trigger constitutional protections. *Gen. Elec*., 610 F.3d at 121 (quotation marks omitted); *accord Trifax*, 314 F.3d at 643.

Hesai satisfies the stigma-plus test. It is undisputed that Hesai meets the reputational-harm component: Publication on the Section 1260H list labels Hesai a "Chinese military

---

[2] By contrast, in our recent decision in *SZ DJI Technology Co*., the plaintiff's stigma-plus claim rested exclusively on the second theory, that the designation broadly precluded it from pursuing its chosen trade or business. Slip op. at 9–11.

company," a designation that "can be a blow to a company's reputation." *Supra* Section I.A (quoting Ali et al.); *see also* J.A. 524 (sworn declaration explaining how "[t]he listing is causing Hesai serious reputational injury"); Appellees' Brief 53–54 (disputing only whether Hesai identified a relevant change in legal status). And Hesai has also been deprived of a legal right it would otherwise enjoy: Federal law makes listed companies automatically ineligible for certain government contracts and forms of financial assistance. *See supra* Section I.A. Those statutory exclusions supply the "plus."

The Secretary argues that, because Hesai has not identified "any specific contracts, benefits, grants, or loans" that it intends to pursue but cannot because of the designation, its claim rests on potential future effects and is therefore "unripe and unfit for review." Appellees' Brief 53–54. That argument falls flat under our case law. A deprivation of the "right to be considered for government contracts in common with all other persons" is the prototypical example of a sufficient change in legal status. *Gen. Elec.*, 610 F.3d at 121 (quotation marks omitted). And it is the disqualification from consideration, not the withholding of any particular benefit, that matters. Accordingly, cases applying the stigma-plus doctrine do not require a plaintiff to go further by identifying a specific contract or grant it imminently intends to pursue. Similarly, in *Constantineau*, the Court did not ask whether the plaintiff intended to purchase alcohol within city limits during the one-year prohibition—the formal prohibition, combined with the accompanying stigma, was sufficient. *See* 400 U.S. at 436–37. As we put it in *Trifax*, "formally debarring a corporation from government contract bidding . . . would . . . unquestionably constitute[] a deprivation of liberty." 314 F.3d at 643. That is precisely what occurred here: Hesai is

presently excluded from opportunities available to other non-designated companies.[3]

**B**

Having concluded that the designation implicates a protected interest, we turn to what process the Constitution requires and when that process must occur. Due process generally demands notice and an opportunity to be heard "at 'a meaningful time and in a meaningful manner.'" *Alaska Commc'ns Sys. Holdings, Inc. v. NLRB*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "Absent exigent circumstances," that process must happen "*before* final deprivation." *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 40 (D.C. Cir. 2024) (cleaned up). We have applied those principles in analogous challenges to Foreign Terrorist Organization (FTO) designations by the Secretary of State under the Antiterrorism and Effective Death Penalty Act of 1996. Two such decisions are particularly instructive here.

In *National Council of Resistance of Iran v. Department of State* (*NCRI*), 251 F.3d 192 (D.C. Cir. 2001), two organizations challenged the Secretary of State's decision to designate them collectively as one FTO. *Id.* at 195–96. We held that, once the Secretary reached a "tentative determination" to designate them, due process required her to notify the organizations of the impending action, disclose the unclassified materials on which she proposed to rely, and afford them an opportunity, "at least in written form," to rebut the administrative record or otherwise negate the basis for

[3] We note that Hesai has not disavowed an interest in pursuing the opportunities from which it is excluded, *see* Reply Brief. 27–28, 30 n.4, and those opportunities are not so attenuated from its business as to arguably render the deprivation merely theoretical. We therefore need not and do not decide whether such circumstances would alter the analysis.

designation. *Id.* at 208–09. And in accord with the "fundamental norm" that notice and opportunity to respond ordinarily come "before" a deprivation occurs, that process had to precede the designation unless the Secretary made a "showing of particularized need" to postpone it. *Id.* at 205, 208.

We later applied those requirements in *PMOI*, which involved the denial of a petition to revoke an FTO designation. 613 F.3d at 222. Although the organization had been permitted to submit evidence supporting delisting, that opportunity was inadequate because the organization had no chance to "rebut the unclassified portion of the record the Secretary [of State] was compiling" before the decision became final. *Id.* at 227.

We see no basis for deviating from those requirements in the context of Chinese military designations under Section 1260H, which similarly reflect consequential judgments based on compiled administrative records. *See also Ralls Corp. v. CFIUS*, 758 F.3d 296, 318–20 (D.C. Cir. 2014) (applying *NCRI* and *PMOI* to a Presidential Order prohibiting a corporation's acquisition of four other companies under the Defense Production Act of 1950). And the Secretary's process here did not comply with them. It is undisputed that the Secretary redesignated Hesai without providing Hesai the unclassified materials on which he intended to rely or an opportunity to respond before finalizing the decision. Hesai was "notified of the Secretary's decision and permitted access to the . . . record only *after* the [re-listing] decision was final." *PMOI*, 613 F.3d at 227.

The Secretary offers two responses, but neither succeeds.

First, the Secretary contends that pre-designation process was unnecessary because Section 1260H serves national-security interests. Appellees' Brief 57–60. *NCRI* rejected a similar argument. There, the Secretary of State invoked both

the importance of national security and the sensitive nature of the information underlying FTO designations to argue that process could be postponed until after designation. 251 F.3d at 207. We acknowledged that the national security context could affect what process was due—for example, by permitting certain measures to protect classified information—but explained that it did not, without more, justify postponing that process. *Id.* at 207–08.

At the same time, *NCRI* held out the possibility that postponement could be warranted based on a "particularized" showing that "earlier notification would impinge upon the security and other foreign policy goals of the United States." *Id.* at 208. As an example, we cited *Palestine Information Office v. Shultz*, 853 F.2d 932 (D.C. Cir. 1988), which upheld the closing of a foreign mission without advance hearing given the "changeable and explosive nature of contemporary international relations" and the resulting need for prompt action. *NCRI*, 251 F.3d at 207 (cleaned up). By contrast, in *NCRI* itself, it was "not immediately apparent how the foreign policy goals of the government . . . would be inherently impaired by" notifying the organizations that the Secretary of State intended to designate them an FTO. *Id.* at 208.

Here, the Secretary of Defense gestures at a more specific concern: He states that advance notice might allow designated entities to "obscure their ties to foreign governments" by "spinning off assets to create new entities, concealing their ownership, or otherwise shielding relevant information about their activities." Appellees' Brief 58–59. But the Secretary has not explained in a "particularized" way how notifying Hesai—a publicly-traded company—that the Secretary intends to designate it and providing the unclassified evidence on which he intends to rely would lead to the types of evasive actions the Secretary posits. *NCRI*, 251 F.3d at 208. Nor is that connection "immediately apparent." *Id.* In fact, any such connection is especially difficult to discern here given

that Hesai had already been designated. That is, Hesai already knew it was on the Secretary's radar for inclusion on the Section 1260H list. The Secretary does not identify what additional incentive for evasion notice of the impending redesignation would have created.

The Secretary also invokes *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), to justify departing from the default of pre-deprivation process. Appellees' Brief 58. But that case, like *Palestine Information Office*, only underscores what is missing here. There, the Court upheld the seizure of a yacht under a forfeiture statute without advance notice. Postponement of process was permissible in that "extraordinary" situation because, among other things, there was a "special need for very prompt action," and providing advance notice could have allowed the yacht to be removed from the jurisdiction, destroyed, or concealed, thereby frustrating the seizure. *Pearson*, 416 U.S. at 677–80. Here, by contrast, the Secretary has not shown how advance notice and an opportunity to respond would similarly frustrate the designation process.

Second, the Secretary argues, as the district court held, that any procedural violation was harmless. The Secretary urges that Hesai has neither identified what additional evidence it would have submitted to contest the designation nor explained how such evidence might have affected the Secretary's decision. Appellees' Brief 60–61. *NCRI* and *PMOI* again mark our path. In *NCRI*, we expressly acknowledged that we had "no reason to presume that the petitioners in this particular case could have offered evidence which might have either changed the Secretary's mind or affected the adequacy of the record." 251 F.3d at 209. We granted relief anyway, because "without the due process protections we ha[d] outlined, we [could not] presume the contrary either." *Id.* Similarly, we held in *PMOI* that even if the administrative record otherwise appeared sufficient, the designation could not stand "absent the

procedural safeguards required by our precedent." 613 F.3d at 227; *see also id.* at 228 (refusing to assume that "nothing the PMOI would have offered . . . could have changed [the Secretary's] mind"). In neither case did we demand the kind of evidentiary showing the Secretary contends should be required here.

Our hesitancy to find harmless error in this context fits with the general principle that an agency's "utter failure to comply" with required procedures "cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003). Here, the uncertainty concerns not just what additional evidence Hesai might have submitted, if any. Due to the lack of any pre-deprivation process, Hesai also was unable to *respond* to the unclassified evidence the Secretary intended to rely upon and tailor its arguments accordingly, before the Secretary made a final decision. *See PMOI*, 613 F.3d at 227 (emphasizing that PMOI was unable to "rebut the unclassified portion of the record the Secretary [of State] was compiling"). Hesai's awareness of the original determination did not mitigate this concern because the final decision differed from the original designation in "important respects." *Hesai Tech.*, 792 F. Supp. 3d at 31. Before redesignating Hesai, the Secretary informed the district court it had "new information relevant to Hesai's listing and expected to make a new decision on whether Hesai would remain on the [January 2024] 1260H list." *Hesai Tech.*, 792 F. Supp. 3d at 30 (cleaned up). And the new decision did in fact "add[] several bases and evidence to justify the listing." *Id.* at 31.

On this record, we "cannot presume" that an opportunity to respond before the Secretary's decision became final would have had no effect. *NCRI*, 251 F.3d at 209.

**C**

The remaining question is remedy. In *NCRI* and *PMOI*, despite finding due process violations, we declined to vacate the designations at issue while the government cured those violations, citing "the realities of the foreign policy and national security concerns asserted by the Secretary in support of those designations." *NCRI*, 251 F.3d at 209; *see PMOI*, 613 F.3d at 230–31. The fact that Hesai has been redesignated in the Secretary's 2026 list arguably undercuts the national security interests at stake here, but that fact also undercuts the significance of vacating the Secretary's designation. We accordingly see no reason to deviate from the course indicated by *NCRI* and *PMOI*, and we remand without vacating the 2024 designation before us.

**IV**

The district court's judgment is reversed, and the case is remanded to the district court with instructions to remand the matter to the Secretary for further proceedings consistent with this opinion.

*So ordered.*