ORAL ARGUMENT HELD MAY 19, 2026
No. 26-1049 (lead); No. 26-1162 (consolidated)

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

ANTHROPIC PBC,

*Petitioner*,

v.

U.S. DEPARTMENT OF WAR, *et al.*,

*Respondents.*

---

On Petition for Panel Rehearing or Rehearing En Banc

---

# BRIEF OF FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS AS *AMICI CURIAE* IN SUPPORT OF PETITIONER'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC

---


Harold Hongju Koh
Bruce Swartz
Peter Gruber Rule of Law Clinic
Yale Law School
127 Wall Street, P.O. Box 208215
New Haven, Connecticut 06520
(203) 432-4932
harold.koh@ylsclinics.org
bruce.swartz@ylsclinics.org

Alexis Loeb
Anthony Schoenberg
John Ugai
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400
aloeb@fbm.com
tschoenberg@fbm.com
jugai@fbm.com

*Counsel for Amici Curiae*
*Former National Security Government Officials*

## STATEMENT REGARDING SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amici curiae* certifies that a separate brief is necessary. *Amici* are former senior national security officials, diplomats, intelligence professionals, and subject-matter experts. Their decades of combined experience in defense procurement, supply chain security, and the protection of the United States' technological advantage in matters of national defense afford them distinct insights into managing supply chain risks within constitutional and applicable statutory frameworks, including 10 U.S.C. § 3252 and 41 U.S.C. § 4713. *Amici*'s experience renders them particularly well situated to explain how the government's actions in this case distort the national security authorities invoked and risk undermining, rather than advancing, U.S. national security interests.

To *amici*'s knowledge, no other *amicus* has filed, or plans to file, a brief providing the Court with insights from similar expertise. Accordingly, overlap between this brief and other *amicus* briefs is unlikely. *Amici*'s separate brief also provides the Court with the benefit of *amici*'s unique views in a clear, concise, and timely manner. *Amici*'s separate brief is thus justified and will serve the Court.

Dated: October 20, 2026

By: */s/ Alexis Loeb*
Alexis Loeb

*Counsel for Amici Curiae*
*Former National Security*
*Government Officials*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

Dated: October 20, 2026

By: */s/ Alexis Loeb*
Alexis Loeb

*Counsel for Amici Curiae Former National Security Government Officials*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I. Parties and *Amici Curiae*

All parties, intervenors, and *amici* appearing before this Court are listed at Add.52 – Add.53 of the Addendum filed in conjunction with Petitioner Anthropic PBC's ("Anthropic") Petition for Panel Rehearing or Rehearing En Banc.

### II. Action Under Review

References to the rulings at issue appear in Anthropic's Petition for Panel Rehearing or Rehearing En Banc, and a copy of the panel opinion for which Anthropic seeks rehearing appears at Add.1 – Add.51 of the Addendum.

### III. Related Cases

Anthropic has challenged its designation as a supply chain risk under 10 U.S.C. § 3252 in *Anthropic PBC v. U.S. Dep't of War, et al.*, 3:26-cv-01996 (N.D. Cal. Mar. 9, 2026). The U.S. District Court for the Northern District of California granted Anthropic's motion for a preliminary injunction in that case, and the defendants have appealed that order. The appeal is currently pending in the U.S. Court of Appeals for the Ninth Circuit in *Anthropic PBC v. United States Department of War, et al.*, 26-2011 (9th Cir. Apr. 2, 2026). On August 27, 2026, the U.S. District Court for the Northern District of California granted summary judgment to Anthropic on its First Amendment, Due Process, and Administrative

Procedure Act challenges to the supply chain designation. Counsel is unaware of any other related cases currently pending in this Court or any other court.

Dated: October 20, 2026

By: */s/ Alexis Loeb*
Alexis Loeb

*Counsel for Amici Curiae*
*Former National Security*
*Government Officials*

# TABLE OF CONTENTS

**Page**


INTEREST OF *AMICI CURIAE* .......... 1

SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. THE DESIGNATION OF ANTHROPIC AS A SUPPLY-CHAIN RISK WAS PRETEXTUAL. .......... 4

A. The Designation Was Decided Before Any Process Began. .......... 5

B. DoD Never Weighed the Designation's National Security Costs. .......... 7

II. THE DESIGNATION OF ANTHROPIC AS A SUPPLY-CHAIN RISK VIOLATES THE FIRST AMENDMENT .......... 9

CONCLUSION .......... 11

LIST OF *AMICI CURIAE* .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Anthropic PBC v. U.S. Dep't of War*,
No. 26-cv-01996-RFL (N.D. Cal. Aug. 27, 2026) ............................5, 6, 7, 9, 10

*Bennett v. Spear*,
520 U.S. 154 (1997).........................................................................................6

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019).........................................................................................6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020).............................................................................................6

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010).........................................................................................5, 10

*Jenner & Block LLP v. U.S. Dep't of Just.*,
784 F. Supp. 3d 76 (D.D.C. 2025).................................................................10

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025)...............................................................10

*President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*,
798 F. Supp. 3d 77 (D. Mass. Sep. 3, 2025)...................................................10

*Susman Godfrey LLP v. Exec. Off. of the President*,
789 F. Supp. 3d 15 (D.D.C. 2025), *appeal docketed*, No. 25-5241
(D.C. Cir. July 2, 2025) ..................................................................................10

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*,
784 F. Supp. 3d 127 (D.D.C. 2025)...............................................................10

## FEDERAL STATUTES

10 U.S.C.
§ 111(a) .......... 2
§ 3252 .......... 4

41 U.S.C.
§ 1327(a), (b)(1) .......... 4
§ 4713 .......... 1, 4

## OTHER AUTHORITIES

Donald J. Trump, *White House Accord on Super Intelligence,* Am. Presidency Project (Sept. 29, 2026), https://www.presidency.ucsb.edu/documents/white-house-accord-super-intelligence .......... 3, 8

Greg Brockman, *The Defender's Window*, OpenAI (Aug. 17, 2026), https://openai.com/index/the-defenders-window/ .......... 8

Harold Hongju Koh, Bruce Swartz, Avi Gupta & Brady Worthington, *The War on Anthropic: Pretextual Designation and Unlawful Punishment*, Just Security (Mar. 6, 2026), https://www.justsecurity.org/133247/anthropic-hegseth-unlawful-punishment .......... 10

Jared Perlo*, Anthropic Says the Pentagon Has Declared It a National Security Risk*, NBC News (Mar. 5, 2026, 10:07 PM), https://www.nbcnews.com/tech/tech-news/anthropic-says-pentagon-declared-national-security-risk-rcna262013 .......... 8

Karen Freifeld, *Big Tech Group Tells Pentagon's Hegseth They Are 'Concerned' About Anthropic Supply-Chain Risk Designation*, Reuters (Mar. 4, 2026, at 1:45 PM), https://www.reuters.com/business/retail-consumer/big-tech-group-tells-pentagons-hegseth-they-are-concerned-about-declaring-2026-03-04 .......... 7

Pete Hegseth, *Artificial Intelligence Strategy for the Department of War*, DoW (Jan. 9, 2026), https://media.defense.gov/2026/Jan/12/2003855671/-1/-1/0/ARTIFICIAL-INTELLIGENCE-STRATEGY-FOR-THE-DEPARTMENT-OF-WAR.PDF ........................................................................ 10

*Political Declaration on Responsible Military Use of Artificial Intelligence and Autonomy*, U.S. Dep't of State, https://2021-2025.state.gov/political-declaration-on-responsible-military-use-of-artificial-intelligence-and-autonomy/ ................................................................ 9

Steven Sloan & Mary Clare Jalonick, *Tech CEOs Call for AI Regulation. Trump and Congress Are Not Rushing to Act*, PBS (Sep. 15, 2026, 3:21 PM EDT), https://www.pbs.org/newshour/politics/tech-ceos-call-for-ai-regulation-trump-and-congress-are-not-rushing-to-act ........................................ 8

Tobias Vestner & Juliette François-Blouin, *Globalizing Responsible AI in the Military Domain by the REAIM Summit*, Just Sec. (Mar. 13, 2023), https://www.justsecurity.org/85440/globalizing-responsible-ai-in-the-military-domain-by-the-reaim-summit/ ............................ 9

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are former senior national security officials, diplomats, intelligence professionals, and subject-matter experts with decades of combined experience in defense procurement, supply-chain security, and protecting the United States' technological advantage in matters of national defense.

Many *amici* held senior roles, in both Republican and Democratic Administrations, at the White House, National Security Council, Departments of State, Defense, Justice, and Homeland Security, Office of Management and Budget, and other national security and intelligence institutions, where they implemented or advised on the statutory and constitutional authorities at issue here. *Amici* have no financial interest in this litigation.

*Amici* believe that preserving the integrity of the supply-chain risk authorities at issue here is a national security imperative. They submit this brief to explain how the government's actions distort these authorities and thereby undermine, rather than advance, U.S. national security interests. Because the panel decision would set a dangerously erroneous standard for § 4713 designations going forward, *amici* urge the full Court to rehear this case.

---

[1] Pursuant to D.C. Circuit Rule 29(a)(4)(E), counsel for *amici* state that no counsel for a party authored this brief in whole or in part, and that no person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting the brief.

A full list of *amici* and their former positions appears in Appendix A.

## SUMMARY OF ARGUMENT

This case is exceptional in every respect, except one: Anthropic is just the latest in a long line of individuals and entities that President Trump has sought to punish on entirely pretextual grounds. On February 27, 2026, the President denounced Anthropic, one of the Nation's leading artificial intelligence ("AI") companies, as a "RADICAL LEFT, WOKE COMPANY" and "direct[ed] EVERY Federal Agency in the United States Government to IMMEDIATELY CEASE all use of Anthropic's technology." An hour later, Secretary of Defense Hegseth announced by social media that, "in conjunction with the President's directive," he was "directing the Department of War to designate Anthropic a Supply-Chain Risk to National Security."[2]

The panel majority elided these exceptional facts and instead deemed Secretary Hegseth's designation reasonable. The panel reached this conclusion notwithstanding that none of the procedures required by statute preceded this designation. And the panel so concluded even though the recommendations on which the designation was ostensibly based came days after the designation, and the

[2] This brief uses the title "Department of Defense" ("DoD") because DoD is established by statute, and any formal name change would require congressional approval, which is absent here. *See* 10 U.S.C. § 111(a).

government later disclaimed the supposed reasoning underlying the recommendations.

Nothing about this designation resembles a legitimate supply-chain risk determination. In *amici*'s experience, a determination pursuant to the controlling statutes requires officials to identify a specific national security threat posed by a particular source, assess it through established review channels, weigh the consequences of excluding the supplier, consider less intrusive measures, and document the basis for the decision before acting. None of that happened here. The designation decision came first, with rationales supplied after the fact—conclusion first and justification later is the hallmark of pretext. If the panel decision stands, this Court will validate a sham process that not only weakens national security but gives this and future administrations authorization to punish any company that falls out of favor.

This is particularly consequential in the context of AI, a technology whose capabilities even its developers do not yet fully understand. Indeed, only days after the panel's decision, the Administration announced a "Joint Commitment on Frontier Responsibilities," proclaiming that every AI company "is responsible for developing its own technology safely." *See* Donald J. Trump, *White House Accord on Super Intelligence,* Am. Presidency Project (Sept. 29, 2026), https://www.presidency.ucsb.edu/documents/white-house-accord-super-

intelligence. But no company can make good on this commitment to ensure its products are developed safely if any safeguard DoD dislikes invites a supply-chain risk designation.

Because Congress vested this Court with exclusive jurisdiction over § 4713 designations, 41 U.S.C. § 1327(a), (b)(1), the panel's construction is not just one court's view among many. It is the governing law nationwide. No other court can revisit it. If it stands, it will establish how DoD may deal with every defense contractor from here on out. Few questions could be of more exceptional importance for this Court to rehear en banc.

## ARGUMENT

### I. THE DESIGNATION OF ANTHROPIC AS A SUPPLY-CHAIN RISK WAS PRETEXTUAL.

DoD's designations of Anthropic under 41 U.S.C. § 4713 and 10 U.S.C. § 3252 were pretextual. DoD announced the designation first and supplied the supposed justification afterward. The pretext is further demonstrated by DoD's failure to weigh the designation's national security costs.

In *amici*'s experience, the statutory designation process is essential because a designation does damage the moment it is announced. The process refines, and often resolves, national security concerns by drawing on cross-agency expertise and allowing time to clarify points of contention. It thereby keeps consequential decisions from turning on disputed or incomplete evidence.

Following that process also entitles the Executive's decision to judicial deference. The panel deferred to DoD at nearly every step of its analysis, even though DoD did not follow the statutory process. *Anthropic PBC v. U.S. Dep't of War*, No. 26-1049, slip op. at 16–17, 33, 41 (Sept. 25, 2026) ("Slip op."). Deference is owed to bona fide national security judgments reached through proper process, but even valid national security concerns do "not warrant abdication of the judicial role." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010). Here, there was neither a valid process nor valid national security concerns.

### A. The Designation Was Decided Before Any Process Began.

The decision to designate Anthropic as a supply-chain risk was made by social media post. Executing the President's February 27 directive, Secretary Hegseth accused Anthropic of "betrayal" and "duplicity" and announced the designation. *See Anthropic PBC v. U.S. Dep't of War*, No. 26-cv-01996-RFL, Dkt. No. 250, at 11 (N.D. Cal. Aug. 27, 2026) ("SJ Order"). The punishment was broadcast before any administrative process began.

These posts *were* the agency decision—Secretary Hegseth directed DoD to designate Anthropic a supply-chain risk, declaring that designation "final" and "effective immediately." *Id.* at 11, 41. Agencies across the government immediately implemented that final order by removing Anthropic's products that day. *Id.* at 19-20 (describing actions by GSA, OPM, State, Treasury, HHS, and others to

implement the President's order and Hegseth's designation). The Northern District of California accordingly held that the Secretary's directive was itself final agency action. *Id*. at 41-42 (applying *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). The panel erred in dismissing the posts as mere "rhetoric." Slip op. at 42. The timing matters because an agency "must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020). The February 27 posts offered no national security rationale at all.

DoD's supposed rationale came only after the decision, and it does not withstand scrutiny. The formal determination issued on March 3, four days after the Secretary's announcement, and it rested on a recommendation and memorandum that the panel rotely credited. Slip op. at 11–12, 17. Neither could have informed a decision already made. And when the record refuted the asserted rationale that Anthropic could disable its technology mid-operation, DoD disclaimed reliance on it. Slip op. at 22–23; SJ Order at 17, 38-39. What remains is the observation that Anthropic shapes each new model it delivers (Slip op. at 23), which is true of any AI developer. Where the "evidence tells a story that does not match the explanation" given, courts need not accept after-the-fact reasons. *Dep't of Commerce v. New York*, 588 U.S. 752, 784 (2019). "Accepting contrived reasons would defeat the purpose" of judicial review. *Id.* at 785.

### B. DoD Never Weighed the Designation's National Security Costs.

Had DoD followed the statutorily required process, it would have confronted, and weighed up, the designation's potential national security costs. That it did not do so further demonstrates that national security concerns had nothing to do with this designation.

First, a lawful process would have considered the national security cost of the federal government ceasing to use Anthropic's products. The designation deprived the government of what Secretary Hegseth called the "exquisite capabilities" of Anthropic's technology. SJ Order at 9. Indeed, "[e]ven now, the government is discussing collaboration with Anthropic on its new model, Mythos, in an array of sensitive contexts." *Id.* at 2.

Second, a lawful process would have weighed national security costs more generally, including the harm to the U.S. innovation ecosystem, U.S.-China strategic competition, incentives for responsible AI development, U.S. leadership on AI governance, and the defense industrial base.[3]

---

[3] Before the designation, the Information Technology Industry Council, whose members include Amazon, Apple, and NVIDIA, warned that a designation threatened to "undermine the government's access to the best-in-class products and services from American companies." Karen Freifeld, *Big Tech Group Tells Pentagon's Hegseth They Are 'Concerned' About Anthropic Supply-Chain Risk Designation*, Reuters (Mar. 4, 2026, at 1:45 PM), https://www.reuters.com/business/retail-consumer/big-tech-group-tells-pentagons-hegseth-they-are-concerned-about-declaring-2026-03-04. This threat to innovation is particularly acute in the context of U.S.-China strategic competition over

Third, a lawful process would also have asked whether removing the incentive for AI companies to impose internal guardrails would actually harm—rather than advance—national security. DoD never asked this question. But the AI industry itself has warned of possible catastrophic risks from AI technology. *See, e.g.*, Greg Brockman, *The Defender's Window*, OpenAI (Aug. 17, 2026), https://openai.com/index/the-defenders-window/ (describing the "rapid change in security risk" in the aftermath of the Hugging Face incident); Steven Sloan & Mary Clare Jalonick, *Tech CEOs Call for AI Regulation. Trump and Congress Are Not Rushing to Act*, PBS (Sep. 15, 2026, 3:21 PM EDT), https://www.pbs.org/newshour/politics/tech-ceos-call-for-ai-regulation-trump-and-congress-are-not-rushing-to-act (describing how executives at Anthropic, OpenAI, and xAI are seeking greater government oversight). Since the panel ruled, AI companies have committed, with the White House's blessing, to regulate themselves for safety purposes. *See* Trump, *supra*, *White House Accord on Super Intelligence*. But if guardrails on the use of a dangerous technology are grounds for a supply-chain risk designation, no company will self-regulate.

---

artificial intelligence. Jared Perlo, *Anthropic Says the Pentagon Has Declared It a National Security Risk*, NBC News (Mar. 5, 2026, 10:07 PM), https://www.nbcnews.com/tech/tech-news/anthropic-says-pentagon-declared-national-security-risk-rcna262013.

Further, had DoD engaged in a lawful process, it would have considered the specific risks posed by the two capabilities Anthropic refused to provide: mass domestic surveillance and lethal autonomous weapons. DoD has not explained why DoD should have the first, much less how it could exercise it lawfully. Nor has DoD reconciled the second with the United States' commitment that "[m]ilitary use of AI be in compliance with applicable international law."[4]

In sum, every essential feature of a genuine supply-chain designation is missing here. The decision preceded any process, and DoD never weighed the designation's national security costs. This Court should not defer to an obviously pretextual designation.

## II. THE DESIGNATION OF ANTHROPIC AS A SUPPLY-CHAIN RISK VIOLATES THE FIRST AMENDMENT.

DoD's designation of Anthropic also violates the First Amendment, which bars the government from punishing a company for its speech. The record shows that DoD acted to make an example of Anthropic based on its public statements. SJ Order at 24. Secretary Hegseth tied the designation to Anthropic's speech, declaring that he

---

[4] *See* Tobias Vestner & Juliette François-Blouin, *Globalizing Responsible AI in the Military Domain by the REAIM Summi*t, Just Sec. (Mar. 13, 2023), https://www.justsecurity.org/85440/globalizing-responsible-ai-in-the-military-domain-by-the-reaim-summit/; *Political Declaration on Responsible Military Use of Artificial Intelligence and Autonom*y, U.S. Dep't of State, https://2021-2025.state.gov/political-declaration-on-responsible-military-use-of-artificial-intelligence-and-autonomy/.

was attacking its “sanctimonious rhetoric,” “virtue-signaling,” and “Silicon Valley ideology.”[5] Slip op. at 42. The announcement of the designation on social media, before any formal process, “makes little sense except as an attempt to swiftly make a public example of Anthropic for daring to criticize the Administration.” SJ Order at 26.

The panel erred in accepting the government’s account of its own motive. Slip op. at 41–43. Courts “do not defer to the Government’s reading of the First Amendment, even when [national-security] interests are at stake.” *Humanitarian L. Project*, 561 U.S. at 34.

The designation fits a pattern of similar punitive actions the Administration has taken against perceived political enemies—actions courts have held unconstitutional.[6]

---

[5] Secretary Hegseth also expressed ideological hostility more than a month earlier, criticizing “utopian idealism” and “social ideology” in AI development. *See* Pete Hegseth, *Artificial Intelligence Strategy for the Department of War*, DoW (Jan. 9, 2026), https://media.defense.gov/2026/Jan/12/2003855671/-1/-1/0/ARTIFICIAL-INTELLIGENCE-STRATEGY-FOR-THE-DEPARTMENT-OF-WAR.PDF.

[6] *See, e.g.*, *Perkins Coie LLP v. U.S. Dep’t of Just.*, 783 F. Supp. 3d 105 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep’t of Just.*, 784 F. Supp. 3d 76 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15 (D.D.C. 2025), appeal docketed, No. 25-5241 (D.C. Cir. July 2, 2025); *President & Fellows of Harvard Coll. v. U.S. Dep’t of Health & Hum. Servs.*, 798 F. Supp. 3d 77 (D. Mass. Sep. 3, 2025). *See also* Harold Hongju Koh, Bruce Swartz, Avi Gupta & Brady Worthington, *The War on Anthropic: Pretextual Designation and Unlawful Punishment*, Just Security (Mar. 6, 2026), https://www.justsecurity.org/133247/anthropic-hegseth-unlawful-punishment.

Like those other actions, the designation was meant both as a punishment of the target and as a warning to others, here to other AI companies and defense contractors. Each of them now faces the choice to accede to DoD's demands or risk being designated a national security threat.

## CONCLUSION

The panel deferred to a pretextual designation, made without process and devised as a punishment in violation of the First Amendment. Left undisturbed that ruling will threaten all defense contractors. For the foregoing reasons, the Court should grant rehearing en banc.

Dated: October 20, 2026

Respectfully submitted,

By: */s/ Alexis Loeb*

Alexis Loeb
Anthony Schoenberg
John Ugai
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400
aloeb@fbm.com
tschoenberg@fbm.com
jugai@fbm.com

*Counsel for Amici Curiae*
*Former National Security*
*Government Officials*

Harold Hongju Koh[7]
Bruce Swartz
Peter Gruber Rule of Law Clinic[8]
Yale Law School
127 Wall Street, P.O. Box 208215
New Haven, Connecticut 06520
(203) 432-4932
harold.koh@ylsclinics.org
bruce.swartz@ylsclinics.org

---

[7] Law student interns Mia Alvarez, Elizabeth Bailey, Kate Davidson, Marty Hooper, Simone Lipkind, Max Pushkin, and Brady Worthington contributed to this brief's drafting under supervision by counsel for *amici*.

[8] This brief sets forth the position of the signatories, as represented by counsel and law student members of the Peter Gruber Rule of Law Clinic but does not purport to state the views of Yale Law School or Yale University.

## APPENDIX A

## LIST OF *AMICI CURIAE*

The list that follows identifies the individual *amici* and the government positions they formerly held:

- **Donald Ayer –** Deputy Attorney General (1989–1990); Principal Deputy Solicitor General (1986–1988); United States Attorney, Eastern District of California (1982–1986)
- **John B. Bellinger III –** Legal Adviser, Department of State (2005–2009); Senior Associate Counsel to the President and Legal Adviser, National Security Council (2001–2005)
- **Mary DeRosa –** Deputy Counsel to the President and Legal Adviser, National Security Council (2009–2011)
- **Jon Finer –** Principal Deputy National Security Advisor (2021–2025); Director of Policy Planning, Department of State (2016–2017)
- **Stuart Gerson –** Acting Attorney General (1993); Assistant Attorney General (Civil) (1989–1993); Assistant United States Attorney for the District of Columbia (1972–1975)
- **Avril Haines –** Director of National Intelligence (2021–2025); Deputy National Security Advisor (2015–2017)
- **Peter Keisler –** Acting Attorney General (2007); Assistant Attorney

General (Civil) (2003–2007)

- **Mary B. McCord –** Acting Assistant Attorney General for National Security (2016-2017); Principal Deputy Assistant Attorney General for National Security (2014-2017); Assistant United States Attorney for the District of Columbia (1994-2014)
- **James C. O'Brien –** Assistant Secretary of State for European and Eurasian Affairs (2023–2025); Head, Office of Sanctions Coordination, Department of State (2022–2023); Special Envoy for Hostage Affairs (2015–2017)
- **Nuala O'Connor –** Member, President's Board on Safeguarding Americans' Civil Liberties (2004–2005); Chief Privacy Officer, Department of Homeland Security (2003–2005); Chief Counsel, Technology Administration and Chief Privacy Officer, Department of Commerce (2002–2003); Deputy Director, Policy & Strategic Planning, Department of Commerce (2001–2002)
- **Alan Raul –** Associate Counsel to the President (1986–1988); General Counsel, Office of Management and Budget (1988–1989); Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006–2008)
- **Susan E. Rice –** Domestic Policy Advisor (2021–2023); National

Security Advisor (2013–2017); United States Ambassador to the United Nations (2009–2013)

- **Paul Rosenzweig –** Special Advocate, Data Protection Review Court (2023-2025); Deputy Assistant Secretary for Policy, Department of Homeland Security (2005–2009)
- **Nicholas Rostow –** General Counsel and Senior Policy Adviser to the United States Permanent Representative to the United Nations (2001–2005); Special Assistant to the President for National Security Affairs and Legal Adviser, National Security Council (1987–1993)
- **Wendy Sherman –** Deputy Secretary of State (2021–2023); Undersecretary for Political Affairs, Department of State (2011–2015)
- **Suzanne Spaulding –** Undersecretary, Department of Homeland Security (2013–2017); Minority Staff Director, House Permanent Select Committee on Intelligence (2003–2004); General Counsel, Senate Select Committee on Intelligence (1995–1998); Associate/Assistant General Counsel, Central Intelligence Agency (1989–1995)
- **Jake Sullivan –** National Security Advisor (2021–2025); National Security Advisor to the Vice President (2013–2014); Director of Policy Planning, Department of State (2011–2013)

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,297 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 20, 2026

By: */s/ Alexis Loeb*
Alexis Loeb

*Counsel for Amici Curiae*
*Former National Security*
*Government Officials*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on October 20, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 20, 2026

By: * /s/ Alexis Loeb*
Alexis Loeb

*Counsel for Amici Curiae Former National Security Government Officials*