IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 26-1049 (lead); No. 26-1162 (consolidated)**

ANTHROPIC PBC,

*Petitioner,*

v.

UNITED STATES DEPARTMENT OF WAR; PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents.*

*On Petitions for Judicial Review of Department of War 41 U.S.C. § 4713 Covered Procurement Actions*

# BRIEF OF THE FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, THE ELECTRONIC FRONTIER FOUNDATION, THE CATO INSTITUTE, CHAMBER OF PROGRESS, AND THE FIRST AMENDMENT LAWYERS ASSOCIATION AS *AMICI CURIAE* IN SUPPORT OF PETITION FOR REHEARING EN BANC

Addison W. Bennett
ASHURST PERKINS COIE US LLP
2525 E. Camelback Road, Ste. 500
Phoenix, AZ 85016
Telephone: 602.351.8000
Addison.Bennett@ashurstperkins.com

Sarah Grant
Todd M. Hinnen
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Ste. 4200
Seattle, WA 98101
Telephone: 206.359.8000
Sarah.Grant@ashurstperkins.com
Todd.Hinnen@ashurstperkins.com

*Counsel for* Amici Curiae

## RULE 28(a)(1)(A) STATEMENT

Pursuant to Circuit Rule 28(a)(1), undersigned counsel certifies the following:

**Parties and *Amici*.** All parties and intervenors appearing before this Court are listed in Petitioner's Rule 28(a)(1)(A) Statement filed in conjunction with the Petition for Panel Rehearing or Rehearing En Banc.

**Rulings Under Review.** The ruling under review is the panel's opinion and judgment denying Anthropic PBC's petitions for review, *Anthropic PBC v. U.S. Department of War*, Nos. 26-1049, 26-1162 (D.C. Cir. Sept. 25, 2026).

**Related Cases**. *Anthropic PBC* v. *U.S. Department of War, et al.*, No. 26-cv-1996 (N.D. Cal.); *Anthropic, PBC v. United States Department of War, et al.*, No. 26-2011 (9th Circ.). Counsel is unaware of any other related cases currently pending in this Court or any other court.

## STATEMENT REGARDING CONSENT TO FILE AND CERTIFICATE REGARDING SEPARATE BRIEFING

Counsel for Petitioner and Counsel for Respondents both consent to the timely filing of this brief. *See* D.C. Cir. R. 29(b).[1]

Pursuant to D.C. Circuit Rule 29(d), counsel for *amici* certifies that a separate brief is necessary. *Amici* are practitioners, policy researchers, advocates, and thought leaders who study and advocate for important civil liberties, including the freedom of speech, from multiple places on the political spectrum. *Amici*'s brief offers a unique perspective about the significant threats to freedom of speech at stake in this action.

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amici curiae* or their counsel made a monetary contribution to its preparation or submission.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## TABLE OF CONTENTS

Page

RULE 28(a)(1)(A) STATEMENT ........................................................ i

STATEMENT REGARDING CONSENT TO FILE AND CERTIFICATE REGARDING SEPARATE BRIEFING ...................... ii

CORPORATE DISCLOSURE STATEMENT ..................................... iii

TABLE OF AUTHORITIES ..................................................................v

INTRODUCTION..........................................................................................1

ARGUMENT ...............................................................................................1

I. The Pentagon's treatment of Anthropic violates the First Amendment. ..................................................................1

A. The panel majority invites the government to unlawfully compel speech through artificial intelligence models, which cannot exist without human input and expressive decisions. ............................ 2

B. The Pentagon independently violated the First Amendment by openly retaliating against Anthropic. ......................................................................... 5

CONCLUSION ..........................................................................................12

CERTIFICATES OF COMPLIANCE AND SERVICE........................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anthropic PBC* v. *U.S. Dep't of War, et al.*, No. 26-CV-01996-RFL, 2026 WL 2534714 (N.D. Cal. Aug. 27, 2026) .................... 2, 5, 8

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)........................................................................ 5

*CAIR Found. v. Desantis*,
822 F. Supp. 3d 1263 (N.D. Fla. 2026) ........................................... 9

*Houston Cmty. Coll. Sys. v. Wilson*,
595 U.S. 468 (2022)........................................................................ 5

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)........................................................................ 3

*NAACP v. Button*,
371 U.S. 415 (1963)........................................................................ 5

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024)........................................................................ 5

*Okwedy v. Molinari*,
333 F.3d 339 (2d Cir. 2003) ........................................................... 11

*Rosado v. Bondi*,
831 F. Supp. 3d. 685 (N.D. Ill. 2026)............................................. 8, 9

*Susman Godfrey LLP v. Exec. Off. of President*,
789 F. Supp. 3d 15 (D.D.C. 2025) .................................................. 9

*Texas v. Johnson*,
491 U.S. 397 (1989)........................................................... 10, 11, 12

*W. Virginia State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)................................................................. 4, 10

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) ........................................................ 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

10 U.S.C. § 3252 .......... 7

41 U.S.C. § 4713 .......... 7, 12

**OTHER AUTHORITIES**

*Claude's new constitution*, Anthropic (Jan. 22, 2026) .......... 6

Dave Lawler, et al., *Exclusive: Pentagon Threatens Anthropic Punishment*, Axios (Feb. 16, 2026) .......... 6

Greg Lukianoff, *The Pentagon's Anthropic ultimatum and the case for the 'separation of power and truth,'* The Eternally Radical Idea (Mar. 3, 2026) .......... 2

Letter from Kristi Noem, Sec'y of Homeland Security, to Maureen Martin, Harvard Univ. (May 22, 2025) .......... 9

President Donald J. Trump, Truth Social (Feb. 26, 2026) .......... 8

Secretary of War Pete Hegseth, X (Feb. 27, 2026) .......... 1, 7, 8, 10

Statement from Dario Amodei on our discussions with the Department of War, Anthropic (Feb. 26, 2026) .......... 4, 6, 7

Under Secretary of War Emil Michael, X (Feb. 26, 2026) .......... 8

Under Secretary of War for Research and Engineering, Memorandum for the Record, App.180–184 .......... 8

## INTRODUCTION

*Amici* the Foundation for Individual Rights and Expression, the Electronic Frontier Foundation, the Cato Institute, Chamber of Progress, and the First Amendment Lawyers Association are an ideologically diverse set of First Amendment advocates, thought leaders, and practitioners. They urge this Court to grant Anthropic's petition for rehearing *en banc* to correct the panel majority's insufficient regard for the grave threats to freedom of speech at stake in this action. This case is exceptionally important because Respondents' actions squarely threaten core expressive rights. If left uncorrected, the panel majority's opinion hands a roadmap to government officials who wish to compel speech and retaliate against disfavored speech.

## ARGUMENT

### I. The Pentagon's treatment of Anthropic violates the First Amendment.

The Pentagon designated Anthropic a supply chain risk because of Anthropic's "hostile" positions and expression of values that the Pentagon deems "fundamentally incompatible with American principles."[2] Facing a markedly similar record in Anthropic's related challenge to its designation as a "supply chain risk" under 10 U.S.C. § 3252, the Northern

---

[2] Secretary of War Pete Hegseth, X (Feb. 27, 2026) ("Secretary of War Pete Hegseth, X"), https://x.com/SecWar/status/2027507717469049070.

District of California found that the government violated the First Amendment. *Anthropic PBC v. Department of War*, 2026 WL 2534714, at *12 (N.D. Cal. Aug. 27, 2026). That decision was correct; the panel majority was wrong.

The panel majority erred in holding that the Pentagon's speech-silencing, speech-altering, and speech-compelling demands survive First Amendment scrutiny for two independent reasons. First, Anthropic's choices about Claude's output are expressive and receive First Amendment protection. The Pentagon has no justification—beyond mere policy disagreement—for its demand that Anthropic *change* its safeguards to enable Claude to process data in a particular way or to provide certain analyses or outputs. Second, by designating Anthropic a supply chain risk, the Pentagon openly and shamelessly retaliated against Anthropic for its protected speech.

### A. The panel majority invites the government to unlawfully compel speech through artificial intelligence models, which cannot exist without human input and expressive decisions.

Humans at Anthropic created its Usage Policy and its government-specific addendum. And Claude is fundamentally expressive. It is a "system that talks, explains, summarizes, argues, and refuses—a system that sits in the middle of human inquiry."[3] Anthropic's decisions about

[3] *See* Greg Lukianoff, *The Pentagon's Anthropic ultimatum and the case*

Claude's safeguards, and its public commentary about these decisions, are expressive choices that qualify for First Amendment protection. This conclusion is nothing new; it is well-established that the speech and expressive choices of businesses, including those operating online "platforms," plainly "receive the First Amendment's protection." *Moody v. NetChoice, LLC*, 603 U.S. 707, 728–29 (2024).

The Supreme Court has been clear that "whatever the challenges of applying the Constitution to ever-advancing technology, the basic principles of the First Amendment do not vary." *Id.* at 733 (citing *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011)). The government may not "forc[e]" a person or business—no matter the means of its expression—to "present views it wish[es] to spurn," to change its "expressive choices," or to associate with speakers and "messages it would prefer to exclude." *Id.* at 731–33. The government therefore can no more force artificial intelligence (AI) models to operate absent safeguards, or answer questions the model's creator would prefer that it not, than it can force newspapers to print or censor articles on specified topics. *Id.* at 743. Although emerging technologies can sometimes present complicated applications of these principles, that is not the case here: *everything* Claude does is speech-driven, so *all* of its user interactions implicate these First Amendment

---

*for the 'separation of power and truth,'* The Eternally Radical Idea (Mar. 3, 2026), https://eternallyradicalidea.com/p/the-pentagons-anthropic-ultimatum.

protections.

Requiring Claude to express ideas Anthropic does not wish to express is classic compelled speech, the prohibition of which lies in the heartland of the First Amendment. *See W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943) (the government may not "compel" a person "to utter what is not in his mind"); *see also X Corp. v. Bonta*, 116 F.4th 888, 900 (9th Cir. 2024) (The "First Amendment's guarantee of freedom of speech" generally prohibits government-mandated "compelled speech."). It similarly bars the Pentagon's demand that Anthropic silence itself—for instance, that it eliminate the safeguard that might prevent requests to monitor social media for comments critical of the government and to use other available data to unmask commenters who post anonymously. *See id.* at 900 (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988) (First Amendment also prohibits "compelled silence")).

Designating Anthropic as a supply chain risk and imposing the consequences that designation carries also punishes Anthropic for its beliefs and speech—for instance, its stated viewpoint that "AI can undermine, rather than defend, democratic values" if not used responsibly.[4] The Pentagon evidently does not agree with that sentiment, but the Constitution

---

[4] *Statement from Dario Amodei on our discussions with the Department of War*, Anthropic (Feb. 26, 2026) ("Statement from Dario Amodei"), https://www.anthropic.com/news/statement-department-of-war.

protects Anthropic's expression through both Claude and in its employees' public statements just the same. *See NAACP v. Button*, 371 U.S. 415, 444–45 (1963).

The panel majority's opinion is a dramatic and unwarranted departure from these bedrock principles. Absent correction, the decision will provide a roadmap for future invasions of our most basic freedoms.

### B. The Pentagon independently violated the First Amendment by openly retaliating against Anthropic.

It is textbook First Amendment law that "government officials" may not "subject[ ] individuals to 'retaliatory actions' … for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). And the government may not use a "threat of invoking legal sanctions and other means of coercion … to achieve the suppression" of future disfavored speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 70 (1963); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 185 (2024). The Pentagon did both here.

As the Northern District of California held on a materially identical record, the Pentagon's treatment of Anthropic in this case unlawfully retaliated against it for protected expression. As that court held, "[t]he undisputed facts establish that Anthropic's protected speech, on a matter of great public importance, was a substantial motivating factor for Defendants' speech-chilling conduct." *Anthropic*, 2026 WL 2534714, at *12. The

panel majority erred in rejecting that same straightforward conclusion here.

Specifically, Anthropic refused to yield to the Pentagon's attempts to strong-arm it into removing safeguards from its AI tools to help the Pentagon develop fully autonomous weapons or conduct mass domestic surveillance, and Anthropic spoke publicly about its concerns. Anthropic designed Claude to embrace a broad set of values and safeguards.[5] It also created and adopted a Usage Policy with a government-specific addendum. That policy, which applied to Anthropic's dealings with the Pentagon from the outset of their contract, does not permit Claude to support fully autonomous weapons or mass domestic surveillance.[6]

When the Pentagon demanded that Anthropic allow it to use Anthropic's technology for any purportedly "lawful purpose," which the Pentagon evidently believes includes fully autonomous weapons and mass domestic surveillance, Anthropic held firm on maintaining its limitations on the use of Claude. The Pentagon then went public with the dispute and threatened to penalize Anthropic.[7] Anthropic Chief Executive Officer Dario Amodei responded in a public post explaining Anthropic's position

---

[5] *See Claude's new constitution*, Anthropic (Jan. 22, 2026), https://www.anthropic.com/news/claude-new-constitution.

[6] Statement from Dario Amodei.

[7] *See* Dave Lawler, et al., *Exclusive: Pentagon Threatens Anthropic Punishment*, Axios (Feb. 16, 2026), https://www.axios.com/2026/02/16/anthropic-defense-department-relationship-hegseth.

and pledging that, "should the Department choose to offboard Anthropic," Anthropic would "work to enable a smooth transition to another provider, avoiding disruption to ongoing military planning, operations, or other critical missions."[8]

But rather than agree to an amicable resolution, the Pentagon designated Anthropic a supply chain risk in an unprecedented attempt to strangle an American company for its supposed threat to national security interests. *See* 41 U.S.C. § 4713; *see also* 10 U.S.C. § 3252. If left in place, that exceptional sanction imposes a culture of coercion, complicity, and silence, in which the public understands the government will use any means, lawful or otherwise, at its disposal to punish those who dare to disagree.

In this case, the government went as far as to boast about its retaliatory motives. In Secretary Hegseth's announcement of his "final" decision designating Anthropic as a supply chain risk, he chided Anthropic for purportedly failing to create an AI model that is sufficiently "patriotic."[9] He criticized as "fundamentally incompatible with American principles"[10] Anthropic's "ideological whims," its supposed "virtue signaling," and ultimately its "stance" on Claude's design. And he made clear these criticisms were all based on Anthropic's Usage Policy for Claude. Based

[8] Statement from Dario Amodei.

[9] Secretary of War Pete Hegseth, X.

[10] *Id.*

on all of this, Secretary Hegseth announced the Department's intent to "transition to a … more patriotic service."[11] Under Secretary of Defense Emil Michael supported the decision by claiming that Anthropic's CEO "is a liar and has a God-complex,"[12] and scolded Anthropic in his formal justification memo for "opt[ing] to publicly spat with DoW."[13] President Trump endorsed Secretary Hegseth's decision and labeled Anthropic "RADICAL," "WOKE," and "Leftwing nut jobs."[14]

As the Northern District of California found:

> [T]he decision to publicly broadcast Anthropic's punishment via social media—even before the formal, administrative process of making the necessary findings to designate Anthropic a supply chain risk had begun—makes little sense except as an attempt to swiftly make a public example of Anthropic for daring to criticize the Administration.

*Anthropic*, 2026 WL 2534714, at *13.

Until recently, it was rare for government leaders to brag so openly about retaliating against protected speech. Now it is commonplace,[15] and

---

[11] *Id.*

[12] Under Secretary of War Emil Michael, X (Feb. 26, 2026), https://x.com/USWREMichael/status/2027211708201058578.

[13] Under Secretary of War for Research and Engineering, Memorandum for the Record, App.182.

[14] President Donald J. Trump, Truth Social (Feb. 26, 2026), https://truthsocial.com/@realDonaldTrump/posts/116144552969293195.

[15] As one example, the government has engaged openly in a campaign of retaliation against the creators of online platforms that report public

according to the panel majority, that is of no consequence. Evidently only those who agree to be complicit in this administration's assertion of unfettered power are safe. The rest—that is, anyone unwilling to toe the party line—are "virtually shunn[ed] … as persona non grata." *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 50 (D.D.C. 2025); *cf. CAIR Found. v. Desantis*, 822 F. Supp. 3d 1263, 1269 (N.D. Fla. 2026) (observing "the troubling trend of using an executive office to make a political statement at the expense of others' constitutional rights").

Contrary to the panel majority's view, the public statements of President Trump, Secretary Hegseth, and Under Secretary Michael on official social media accounts berating Anthropic are directly relevant in judging the lawfulness of the Pentagon's subsequent actions. By the administration's own admission, it is using its tremendous coercive power to promote what it views as "patriotic" and to punish what it views as

---

sightings of Immigration and Customs Enforcement officers *and* the news organizations that merely cover the application. *See Rosado v. Bondi*, 831 F. Supp. 3d. 685 (N.D. Ill. 2026). The administration has also engaged in a similar retaliatory campaign against Harvard University, imposing on it as many sanctions as possible with the *stated goal* of "warning [ ] all universities"—public and private—that they must change their policies in order to remain in the administration's good graces. *See* Letter from Kristi Noem, Sec'y of Homeland Security, to Maureen Martin, Harvard Univ. (May 22, 2025), available at Secretary Kristi Noem (@Sec_Noem), X (May 22, 2025, 2:01 PM), https://x.com/Sec_Noem/status/1925612991703052733.

"incompatible with American principles,"[16] to force Anthropic to alter its expressive position and its speech. But "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty" has that power. *Barnette*, 319 U.S. at 642.

To state a fundamental truth the administration seems not to understand: In a free society, "patriotism" is not measured by one's willingness to obey blindly those in power. Dissent and good-faith debate about matters of critical societal importance are as American as apple pie. The First Amendment guarantees that even "concepts virtually sacred to our Nation as a whole" do not "go unquestioned in the marketplace of ideas." *Texas v. Johnson*, 491 U.S. 397, 418 (1989). Our society thrives because of the "joust of principles protected by the First Amendment." *Id.*; *see also Barnette*, 319 U.S. at 637 ("To enforce those rights today is not to choose weak government over strong government. It is only to adhere as a means of strength to individual freedom of mind in preference to officially disciplined uniformity for which history indicates a disappointing and disastrous end.").

Robust debate is especially important when government policy will have profound societal consequences. This case implicates at least two areas of extraordinary consequence: first, the rapid evolution and transformational impact of AI; and second, the immense powers of our

[16] Secretary of War Pete Hegseth, X.

government's national security apparatus. The lines Anthropic sought to draw in its arrangement with the Pentagon, and the ideas Anthropic aims to contribute to the marketplace more broadly, are hardly "radical" or "unpatriotic." Rather, concerns over Claude's use for mass domestic surveillance and fully autonomous weapons are well-founded given the history of government mass surveillance efforts and the myriad risks associated with lethal autonomous weapons. But even if Anthropic's views were "radical" or "unpatriotic," the First Amendment still protects its right to express them without suffering government retaliation.

To protect this marketplace of ideas, courts cannot allow the government to punish people merely because it deems them or their conduct "unpatriotic." *See Johnson*, 491 U.S. at 418 ("To say that the government has an interest in encouraging proper treatment of the flag, however, is not to say that it may criminally punish a person for burning a flag as a means of political protest."). The chilling effects of the government's unconstitutional retaliation against Anthropic, left to stand, will extend far beyond this case. As the wide range of amici from the business community have attested, the government's retaliation against Anthropic will lead other AI providers, and anyone who interacts with this administration, to reasonably believe that not complying with its demands will lead to "punishment" for "fail[ing] to accede to [an] official's request." *Okwedy v. Molinari*, 333 F.3d 339, 342 (2d Cir. 2003). Even ordinary citizens may decide not to engage with the government or speak publicly, or may

decide to alter their expressive activity to avoid being branded by the government as "RADICAL" or "WOKE" and harassed or punished accordingly. Such coerced ideological uniformity is both flatly unconstitutional and ultimately self-defeating. The "conviction that our toleration of criticism … is a sign and source of our strength" is a value that sustains our Republic. *Johnson*, 491 U.S. at 419.

## CONCLUSION

This Court should grant rehearing and hold unlawful the Department of War's designation of Anthropic as a supply chain risk to national security under the Federal Acquisition Supply Chain Security Act of 2018, 41 U.S.C. § 4713. Permitting the government to dictate Anthropic's speech would violate the First Amendment, chill Anthropic's and other businesses' rights, and stifle the marketplace of ideas with regard to AI's transformative power, how to harness it responsibly, and the potential privacy and civil-liberty risks associated with its use by the national security apparatus.

Dated: October 20, 2026

Respectfully submitted,

*/s/Sarah Grant*

Sarah Grant
Todd M. Hinnen
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Ste. 4200
Seattle, WA 98101
Telephone: 206.359.8000
Sarah.Grant@ashurstperkins.com
Todd.Hinnen@ashurstperkins.com

Addison W. Bennett
ASHURST PERKINS COIE US LLP
2525 E. Camelback Road, Ste. 500
Phoenix, AZ 85016
Telephone: 602.351.8000
Addison.Bennett@ashurstperkins.com

*Counsel for* Amici Curiae *the Foundation for Individual Rights and Expression, the Electronic Frontier Foundation, the Cato Institute, Chamber of Progress, and the First Amendment Lawyers Association*

## CERTIFICATES OF COMPLIANCE AND SERVICE

I hereby certify that the foregoing brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced 14-point Century Schoolbook typeface, using Microsoft Word. I also certify that this brief complies with Fed. R. App. P. 29(a)(5) and 32(f) because it contains 2,582 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that on October 20, 2026, I filed this brief with the Clerk of this Court via the CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished through that system.

Dated: October 20, 2026

*/s/ Sarah Grant*

Sarah Grant

*Counsel for* Amici Curiae