**ORAL ARGUMENT HELD MAY 19, 2026**

No. 26-1049 (consolidated with No. 26-1162)

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

ANTHROPIC PBC,

*Petitioner,*

v.

UNITED STATES DEPARTMENT OF WAR; PETER B. HEGSETH, in his official capacity as Secretary of War,

*Respondents.*

---

On Petitions for Review of an Agency Action of the Department of War

---

# BRIEF OF 149 FORMER JUDGES AND DEMOCRACY DEFENDERS FUND AS AMICI CURIAE IN SUPPORT OF PETITIONER'S PETITION FOR REHEARING EN BANC


**DEMOCRACY DEFENDERS FUND**
Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 514-9948
*Counsel for Former Judges*

**GIBSON, DUNN & CRUTCHER LLP**
Lauren Goldman
200 Park Ave.
New York, NY 10166-0193
(212) 351-4000
*Counsel for Democracy Defenders Fund*

**GIBSON, DUNN & CRUTCHER LLP**
Gregg J. Costa
*Counsel of Record*
811 Main Street, Suite 3000
Houston, TX 77002-6117
(346) 718-6600

Martie Kutscher
310 University Ave.
Palo Alto, CA 94301-1744
(650) 849-5300

Sophia Brill
Connor P. Mui
1700 M St. NW
Washington, DC 20036-4504
(202) 955-8500
*Counsel for Democracy Defenders Fund*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae submit this certificate as to parties, rulings, and related cases.

### A. PARTIES AND AMICI

All parties, intervenors, and amici appearing before this Court are listed in the Rule 28(a)(1)(A) Statement at Add.52 of the Addendum filed in conjunction with Petitioner's Petition for Panel Rehearing or Rehearing En Banc, or have been disclosed by other *amici* to date.

### B. RULINGS UNDER REVIEW

References to the rulings at issue appear in the Brief for Petitioner. This brief supports Petitioner's petition for rehearing en banc of the panel's opinion and judgment entered September 25, 2026. *Anthropic PBC v. U.S. Dep't of War*, No. 26-1049 (D.C. Cir. Sept. 25, 2026).

### C. RELATED CASES

Cases No. 26-1049 and No. 26-1162 were consolidated, and the panel decided them in the same opinion. The following related cases involve the Department's separate designation of Petitioner under 10 U.S.C. § 3252: *Anthropic PBC v. U.S. Department of War*, No. 3:26-cv-

01996-RFL (N.D. Cal.) (final judgment entered Aug. 27, 2026); *Anthropic PBC v. U.S. Department of War*, No. 26-2011 (9th Cir.) (appeal from preliminary injunction, proceedings stayed). Counsel is unaware of any other related cases currently pending before this Court or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, *amicus* Democracy Defenders Fund states that it is a non-profit organization whose mission is to confront anti-democratic actions and defend American civic institutions. It has no parent corporation, and no publicly held company has a 10% or greater ownership interest in it. The individual *amici* are not entities subject to Rule 26.1.

## STATEMENT REGARDING INVITATION TO FILE AND CERTIFICATE OF SEPARATE BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(b)(2) and D.C. Circuit Rule 40(f), *amici* have filed a motion requesting an invitation from the Court to file this brief in support of Petitioner's petition for rehearing en banc. Counsel for Petitioner and Respondents consent to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), counsel certifies that a separate brief is necessary. Counsel is not aware of any other *amicus* brief addressing the subject of this brief, which concerns the role of the judiciary in adjudicating statutory and procedural claims related to national security interests. As former judges with centuries of collective experience on the bench, the judicial *amici* are uniquely well suited to offer their perspective about the ability of the judiciary to apply standard tools of statutory interpretation and settled due process principles in such contexts while affording appropriate deference to the national security judgments of other branches of government.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... vi

GLOSSARY .......... ix

IDENTITY AND INTEREST OF AMICI CURIAE .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. THE EXECUTIVE BRANCH'S INVOCATION OF NATIONAL SECURITY AUTHORITIES DOES NOT DISPLACE THE JUDICIARY'S INDISPENSABLE ROLE. .......... 4

A. The Court Must Perform Its Ordinary Functions of Judicial Review. .......... 4

B. When the Executive Branch Acts Pursuant to Statute, the Judiciary Must Independently Apply Ordinary Tools of Interpretation. .......... 7

C. The Judiciary Must Also Ensure the Executive Branch Adheres to Core Procedural Requirements. .......... 10

II. THE REMEDY SOUGHT BY PETITIONER WOULD NOT REQUIRE JUDICIAL ENCROACHMENT ON THE EXECUTIVE BRANCH'S NATIONAL SECURITY PREROGATIVES. .......... 13

CONCLUSION .......... 15

CERTIFICATE OF COMPLIANCE .......... 16

CERTIFICATE OF SERVICE .......... 17

EXHIBIT A .......... i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Anthropic PBC v. U.S. Dep't of War*,
No. 3:26-cv-01996-RFL, 2026 WL 2534714 (N.D. Cal. Aug. 27, 2026) .......... 4

*Baker v. Carr*,
369 U.S. 186 (1962) .......... 5

*Fischer v. United States*,
603 U.S. 480 (2024) .......... 9

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) .......... 8

*Hesai Tech. Co. v. U.S. Dep't of Def.*,
186 F.4th 873 (D.C. Cir. 2026) .......... 11, 13

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) .......... 6, 7

*Korematsu v. United States*,
323 U.S. 214 (1944), *overruled by Trump v. Hawaii*, 585 U.S. 667 (2018) .......... 5

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) .......... 3, 6, 8, 9, 10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......... 8

*Maracich v. Spears*,
570 U.S. 48 (2013) .......... 9

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .......... 5

*Ex parte Milligan*,
71 U.S. (4 Wall.) 2 (1866) .......... 5

*Nat'l Council of Resistance of Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001) .......... 11, 13

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025) .......... 7

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
613 F.3d 220 (D.C. Cir. 2010) .......... 11, 13

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*,
758 F.3d 296 (D.C. Cir. 2014) .......... 3, 5, 11, 12, 13

*Rotkiske v. Klemm*,
589 U.S. 8 (2019) .......... 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .......... 5

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
566 U.S. 189 (2012) .......... 3, 6, 13

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
576 U.S. 1 (2015) .......... 8

**Statutes**

10 U.S.C. § 3252 .......... 4

41 U.S.C. § 1327(b) .......... 6

41 U.S.C. § 1327(b)(2) .......... 2

41 U.S.C. § 1327(b)(2)(A)–(E) .......... 14

41 U.S.C. § 1327(b)(2)(E) .......... 12

41 U.S.C. § 4713 .......... 2, 9, 11, 13, 14

41 U.S.C. § 4713(b) .......... 11

41 U.S.C. § 4713(c) .......... 12

41 U.S.C. § 4713(k)(6) .......... 4, 9

National Defense Authorization Act for Fiscal Year 2019 § 889, Pub. L. No. 115-232, 132 Stat. 1636, 1917 (2018) .......... 10

## GLOSSARY

| | |
|---|---|
| App. | Joint Appendix |
| Dissent | Dissenting opinion of Judge Henderson, *Anthropic PBC v. U.S. Dep't of War*, No. 26-1049 (D.C. Cir. Sept. 25, 2026) |
| IEEPA | International Emergency Economic Powers Act |
| Op. | Panel opinion, *Anthropic PBC v. U.S. Dep't of War*, No. 26-1049 (D.C. Cir. Sept. 25, 2026) |
| Resp'ts Br. | Brief for Respondents, Doc. No. 2172140 (May 6, 2026) |

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

*Amici* submitted briefs in support of Petitioner at the stay and merits stages and now submit this brief in support of rehearing en banc. The *amici* judges are 149 former federal and state judges, including judges appointed by presidents and governors of both major political parties.[2] Collectively, *amici* served for centuries in state and federal courts. *See* Exhibit A. *Amici* have a deep and abiding interest in preserving the independent role of the federal judiciary, including in cases involving national defense and foreign policy, and firsthand understanding of how judges apply standard tools of statutory interpretation in such cases while deferring appropriately to the national security judgments of other branches.

*Amicus* Democracy Defenders Fund is a non-profit organization whose mission is to confront anti-democratic actions and defend American civic institutions.

---

[1] No counsel for a party authored this brief in whole or in part. No person other than *amici curiae* or their counsel contributed money that was intended to fund preparing or submitting the brief.

[2] *Amici* also include one judge who served on an international tribunal. *See* Exhibit A.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Constitution vests the federal judiciary with the duty of ensuring that the Executive Branch does not exceed the powers Congress delegates to it. That duty does not go away when the Executive Branch purports to act under statutes that protect our nation's security.

This case is a straightforward challenge to unlawful agency action. Purporting to apply 41 U.S.C. § 4713, the Department of War designated Anthropic a "supply chain risk." In doing so, the Department misinterpreted the statute and ignored the necessary procedures. The reviewing court therefore had a duty to "hold unlawful" the designation. 41 U.S.C. § 1327(b)(2).

The panel nonetheless upheld the designation. In construing the statute, it announced a seemingly new canon of statutory construction—that courts should "resolve ambiguities against intruding on the national-security determinations of the Executive Branch," Op. 16–17, and it excused the Department's failure to provide the notice Congress required as harmless, Op. 33–38.

The panel's approach abdicates the judicial role. Whether national security concerns permit this departure from ordinary principles of

statutory interpretation and bedrock procedural requirements is a question of exceptional importance warranting the full Court's attention.

The deference courts afford the Executive Branch in national security matters does not extend to the Executive's interpretations of the law. When a party challenges government action under a statute that protects national security interests, courts must perform the "familiar judicial exercise" of determining whether the government's interpretation of the statute is lawful and whether it has followed the processes required by law. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012) ("*Zivotofsky I*"). Even executive actions designed to address national emergencies are subject to standard rules of statutory interpretation. *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). And binding Circuit precedent entitles private parties to meaningful procedural protections *before* the Executive Branch takes actions affecting liberty or property, even in the name of national security. *See, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296 (D.C. Cir. 2014).

Those principles resolve this case. A private company's contractual dispute with a government agency cannot render that company a "supply

chain risk" within the meaning of Section 4713(k)(6) when no thumb is impermissibly placed on the government's side of the interpretive scale. And the Department's failure to follow required procedures independently warrants holding its action unlawful. Neither conclusion requires second-guessing the Executive Branch's national security judgments. Nor does the remedy: Petitioner is not asking this Court to order the Department of War, or any other agency, to work with it. "[T]he Department of War is undisputedly free to select the AI vendor of its choice." *Anthropic PBC v. U.S. Dep't of War*, No. 3:26-cv-01996-RFL, 2026 WL 2534714, at *1 (N.D. Cal. Aug. 27, 2026) (setting aside the Department's separate designation under 10 U.S.C. § 3252). Petitioner seeks only the familiar remedy of holding unlawful a retaliatory domestic sanction imposed for declining to provide certain services.

## ARGUMENT

### I. THE EXECUTIVE BRANCH'S INVOCATION OF NATIONAL SECURITY AUTHORITIES DOES NOT DISPLACE THE JUDICIARY'S INDISPENSABLE ROLE.

#### A. The Court Must Perform Its Ordinary Functions of Judicial Review.

There is no "national security exception" to ordinary principles of judicial review. Rather, "[i]t is emphatically the province and duty of the

judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). The same rule applies when a justiciable case could implicate national security. "[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Ralls Corp.*, 758 F.3d at 313 (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)). And the judiciary cannot "distort the Constitution" or other applicable law to accommodate the Executive Branch's claims of necessity or expediency. *Korematsu v. United States*, 323 U.S. 214, 244 (1944) (Jackson, J., dissenting), *overruled by Trump v. Hawaii*, 585 U.S. 667, 710 (2018).

That is why, again and again, courts have decided cases properly before them even when they implicate the nation's security. In *Ex parte Milligan*, 71 U.S. (4 Wall.) 2 (1866), the Supreme Court held that a citizen could not be tried by a military tribunal while Article III courts were open, notwithstanding the government's invocation of military necessity. *Id.* at 120–21, 127. The Court prevented President Truman from nationalizing the steel industry during the Korean War, notwithstanding his finding that the seizure was "necessary to avert a national catastrophe." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582

(1952). And this year, it held that the President lacked authority to impose tariffs under a statute conferring broad emergency powers, notwithstanding his findings that the tariffs were necessary to address public health and economic emergencies. *Learning Resources*, 607 U.S. at 237, 255.

The panel nevertheless held that courts should "resolve ambiguities against intruding on the national-security determinations of the Executive Branch." Op. 16–17. But courts accommodate national security concerns through discrete doctrines, not a thumb on the government's side in interpreting legal texts whenever national security is invoked. No relevant doctrine applies here.

First, the parties agree that this case is justiciable. Congress channeled review of the Department's designation into this Court, 41 U.S.C. § 1327(b); Op. 14, which need only perform the "familiar judicial exercise" described above, *Zivotofsky I*, 566 U.S. at 196.

Second, this case does not require a court to second-guess executive factfinding. It is true that the Executive Branch's "evaluation of the *facts*" concerning national security may be "entitled to deference." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010) (emphasis added).

But even then, "concerns of national security and foreign relations do not warrant abdication of the judicial role," and courts must not "defer to the Government's reading" of the law itself. *Id.* at 34. The government does not claim to rely on classified reporting, predictive judgments about hostile foreign actors, or technological expertise. It seeks deference for its conclusion that an American company's public disagreement with the government renders it so untrustworthy as to be a would-be saboteur. Resp'ts Br. 28–29. To defer to that conclusion would be the very "abdication of the judicial role" the Supreme Court has warned against. *Holder*, 561 U.S. at 34.

Third, while courts sometimes exercise caution in crafting remedies given "the deference owed to the Executive Branch in the conduct of foreign affairs," *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025), holding an agency action unlawful is a straightforward remedy that requires no judicial entanglement in national security affairs. *See infra* Part II.

### B. When the Executive Branch Acts Pursuant to Statute, the Judiciary Must Independently Apply Ordinary Tools of Interpretation.

Perhaps no area of law is less susceptible to national security exceptionalism than statutory interpretation. When the Executive Branch acts pursuant to statute, it is "not free from the ordinary controls and checks of Congress merely because foreign affairs" or national security concerns are invoked. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015). Accordingly, when the Executive acts under a law whose function is to protect national security, the Supreme Court has repeatedly applied ordinary tools of statutory interpretation to determine whether those acts fit within the bounds of the law. *See, e.g.*, *Learning Resources*, 607 U.S. at 247–48; *Hamdan v. Rumsfeld*, 548 U.S. 557, 577–78 (2006). As the Supreme Court held in *Loper Bright Enterprises v. Raimondo*, courts must "exercise independent judgment in construing statutes administered by agencies," full stop. 603 U.S. 369, 406 (2024). The panel's new substantive canon of interpretive deference to the Executive Branch on national-security matters, Op. 16–17, defies these bedrock principles by instructing courts to set aside ordinary rules of construction in order to adopt interpretations of statutes that favor the Executive.

The ordinary tools of statutory interpretation—applied fairly, without a thumb on the interpretive scale—resolve this case. Under the *noscitur a sociis* canon, words capable of multiple meanings should be "construed in light of their accompanying words in order to avoid giving" the statutory term "unintended breadth." *Maracich v. Spears*, 570 U.S. 48, 62–63 (2013) (quotation marks omitted). This applies even to statutes that implicate national security. *See*, *e.g.*, *Learning Resources*, 607 U.S. at 250 (applying *noscitur a sociis* to IEEPA).

So too here. Section 4713 defines "supply chain risk" as the "risk that any person may sabotage, maliciously introduce unwanted function, extract data, or *otherwise manipulate*" covered articles "so as to surveil, deny, disrupt, or *otherwise manipulate*" their function. 41 U.S.C. § 4713(k)(6) (emphases added). The term "otherwise manipulate" should be construed to share commonalities with "sabotage" and "malicious[] introduc[tion of] unwanted function," *i.e.*, the types of actions a hostile, clandestine actor might take to damage or obtain information from a government system. *Cf. Fischer v. United States*, 603 U.S. 480, 487 (2024) (words preceding a residual "otherwise" clause supply "examples" of what follows). A "supply chain risk" must therefore involve a risk of

insidious interference with the functioning of a technology, not disagreement about how a technology should be used. As the dissent explained, that reading follows from "basic canons of construction." Dissent 2.

Congressional practice points the same way. When Congress has wanted to bar federal agencies and their contractors from doing business with a particular supplier on national security grounds, it has done so expressly. *See* National Defense Authorization Act for Fiscal Year 2019 § 889, Pub. L. No. 115-232, 132 Stat. 1636, 1917 (2018). Such "congressional practice" is "strong evidence" of a statute's meaning. *Learning Resources*, 607 U.S. at 248–50; *see Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

### C. The Judiciary Must Also Ensure the Executive Branch Adheres to Core Procedural Requirements.

Just as the judiciary must apply ordinary principles of statutory interpretation, it must enforce the procedural protections that Congress and the Due Process Clause require. Although the Executive Branch may receive deference for substantive national security judgments,

Congress often prescribes the *process* for reaching them. Ensuring that private parties receive that process is a quintessential judicial exercise.

This Court has repeatedly emphasized the importance of pre-deprivation safeguards when the Executive acts under significant grants of national security authority. In *Ralls Corp.*, a Presidential divestment order issued on national-security grounds violated due process because the corporation received no notice, access to unclassified evidence, or opportunity to respond before the final determination. 758 F.3d at 319–20. That holding drew on a line of cases requiring the same before the designation of foreign terrorist organizations. *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220, 227 (D.C. Cir. 2010); *Nat'l Council of Resistance of Iran v. Dep't of State* ("*NCRI*"), 251 F.3d 192, 208 (D.C. Cir. 2001). And this Court applied those requirements this summer to "Chinese military company" designations, holding that a general invocation of national security does not justify postponing notice absent a "particularized" showing. *Hesai Tech. Co. v. U.S. Dep't of Def.*, 186 F.4th 873, 879–81 (D.C. Cir. 2026).

Section 4713 reflects the same judgment. *Before* designating a supply chain risk, the agency head must, among other things, give the

affected entity notice and an opportunity to respond. 41 U.S.C. § 4713(b). A court "shall hold unlawful a covered action taken under" Section 4713 that is "not in accord with procedures required by law." *Id.* § 1327(b)(2)(E). The exception the Department invoked, Section 4713(c), permits an agency head to delay notice only upon determining "that an urgent national security interest requires the immediate exercise of the authority provided . . . ." A bare assertion of a compelling national security interest cannot suffice; the entire statute presupposes that such an interest exists. Read to avoid serious due process concerns, as is appropriate under basic principles of constitutional avoidance, Section 4713(c) requires an affirmative showing of why "immediate" action was needed and why adherence to Section 4713(b) would have jeopardized national security. No such showing was made here. In fact, the Secretary invoked urgency while directing that Anthropic "will continue to provide the Department of War its services" for up to six months. App. 77; *see* Op. 12.

Nor can adherence to procedural protections be excused on the theory that more process would not have changed the outcome. *Ralls Corp.* found a due process violation "despite [the Court's] uncertainty

that more process would have led to a different . . . decision." 758 F.3d at 320. *People's Mojahedin* rejected the State Department's "no harm, no foul" argument. 613 F.3d at 229. *NCRI* granted relief though the court had "no reason to presume" that more process would have changed the Secretary's mind, because without the required protections "we cannot presume the contrary either." 251 F.3d at 209. And *Hesai* reversed a harmless-error holding for the same reason. 186 F.4th at 881.

## II. THE REMEDY SOUGHT BY PETITIONER WOULD NOT REQUIRE JUDICIAL ENCROACHMENT ON THE EXECUTIVE BRANCH'S NATIONAL SECURITY PREROGATIVES.

Deciding whether the type of concern animating the Department's actions fits within Congress's definition of a "supply chain risk" is a "familiar judicial exercise," *Zivotofsky I*, 566 U.S. at 196, not second-guessing of substantive national security judgments. And upholding private parties' rights to notice and an opportunity to respond "does not encroach on the prerogative of the political branches." *Ralls Corp.*, 758 F.3d at 314.

Anthropic asks this Court to apply familiar standards and grant a familiar remedy: to "hold unlawful" a Section 4713 action that is

arbitrary and capricious, contrary to constitutional right, in excess of statutory authority, lacking substantial record support, or not in accord with legally required procedures. 41 U.S.C. § 1327(b)(2)(A)–(E). This discrete, congressionally commanded remedy raises none of the concerns that arise when a court superintends the Executive's foreign policy or national defense functions.

More fundamentally, no one is trying to force the Department to contract with Anthropic; the parties agree the Department does not want Anthropic's services in the form Anthropic is willing to provide them. Anthropic asks only that it not be punished on its way out the door. The Department may decide whom it contracts with. But it cannot use Section 4713 to brand Anthropic a threat to national security, with consequences that reach Anthropic's dealings with the Department's contractors and the rest of the world. Because the panel's opinion allowed the Department to inappropriately do just that, while also unduly deferring to the government on the question of Section 4713's meaning, en banc review is appropriate.

## CONCLUSION

The petition for rehearing en banc should be granted.

Dated: October 20, 2026

Respectfully submitted,

By: */s/ Gregg J. Costa*
Gregg J. Costa
*Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
(346) 718-6600
GCosta@gibsondunn.com

Lauren Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166-0193
(212) 351-4000

Martie Kutscher
GIBSON, DUNN & CRUTCHER LLP
310 University Ave.
Palo Alto, CA 94301-1744
(650) 849-5300

Sophia Brill
Connor P. Mui
GIBSON, DUNN & CRUTCHER LLP
1700 M St. NW
Washington, DC 20036-4504
(202) 955-8500

*Counsel for Democracy Defenders Fund*

Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 514-9948

*Counsel for Former Judges*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,599 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook LT font.

Dated: October 20, 2026

By: */s/ Gregg J. Costa*
Gregg J. Costa
GIBSON, DUNN & CRUTCHER LLP

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2026, I caused a true and correct copy of the foregoing brief to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated: October 20, 2026

By: */s/ Gregg J. Costa*
Gregg J. Costa
GIBSON, DUNN & CRUTCHER LLP

# EXHIBIT A

**Judge Michael Luttig, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)**

**Judge Nancy Gertner, U.S. District Judge, District of Massachusetts (Ret.)**

**Federal**

- Chief Judge John W. Bissell, U.S. District Judge, District of New Jersey (Ret.)
- Judge Robert J. Cindrich, U.S. District Judge, Western District of Pennsylvania (Ret.)
- Chief Judge U.W. Clemon, U.S. District Judge, Northern District of Alabama (Ret.)
- Judge Susan E. Cox, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge Andre M. Davis, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (Ret.)
- Judge Morton Denlow, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge David K. Duncan, U.S. Magistrate Judge, District of Arizona (Ret.)
- Chief Judge Sheila Finnegan, U.S. Magistrate Judge, Northern District of Illinois (Ret.)
- Judge Jeremy Fogel, U.S. District Judge, Northern District of California (Ret.)
- Judge James C. Francis IV, U.S. Magistrate Judge, Southern District of New York (Ret.)
- Judge Royal Furgeson Jr., U.S. District Judge, Western District of Texas (Ret.)
- Judge Steven M. Gold, U.S. Magistrate Judge, Eastern District of New York (Ret.)
- Judge A. Benjamin Goldgar, U.S. Bankruptcy Judge, Northern District of Illinois (Ret.)

- Chief Judge Robert Harlan Henry, U.S. Circuit Judge, U.S. Court of Appeals for the Tenth Circuit (Ret.)
- Judge Faith Hochberg, U.S. District Judge, District of New Jersey (Ret.)
- Judge Richard J. Holwell, U.S. District Judge, Southern District of New York (Ret.)
- Judge Ellen Segal Huvelle, U.S. District Judge, District of Columbia (Ret.)
- Judge John E. Jones III, U.S. District Judge, Middle District of Pennsylvania (Ret.)
- Judge Roanne L. Mann, U.S. Magistrate Judge, Eastern District of New York (Ret.)
- Chief Judge Paul Michel, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)
- Judge Kathleen O'Malley, U.S. Circuit Judge, U.S. Court of Appeals for the Federal Circuit (Ret.)
- Judge Brian Owsley, U.S. Magistrate Judge, Southern District of Texas (Ret.)
- Judge Philip M. Pro, U.S. District Judge, District of Nevada (Ret.)
- Judge Victoria A. Roberts, U.S. District Judge, Eastern District of Michigan (Ret.)
- Judge Shira A. Scheindlin, U.S. District Judge, Southern District of New York (Ret.)
- Judge John D. Tinder, U.S. Circuit Judge, U.S. Court of Appeals for the Seventh Circuit (Ret.)
- Judge Ursula Ungaro, U.S. District Judge, Southern District of Florida (Ret.)
- Judge Thomas I. Vanaskie, U.S. Circuit Judge, U.S. Court of Appeals for the Third Circuit (Ret.)
- Judge T. John Ward, U.S. District Judge, Eastern District of Texas (Ret.)

- Judge Alexander Williams Jr., U.S. District Judge, District of Maryland (Ret.)

**State**

- Judge Verna A. Adams, Marin County Superior Court, California (Ret.)
- Judge Stephanie A. Arend, Pierce County Superior Court, Washington (Ret.)
- Judge Sharon S. Armstrong, King County Superior Court, Washington (Ret.)
- Judge Elaine Andrews, Anchorage Superior Court, Alaska (Ret.)
- Judge Beth M. Andrus, Washington State Court of Appeals (Ret.)
- Chief Justice Thomas A. Balmer, Oregon Supreme Court (Ret.)
- Judge Paul A. Bastine, Spokane County Superior Court, Washington (Ret.)
- Judge Martha Beckwith, Anchorage District Court, Alaska (Ret.)
- Associate Justice William W. Bedsworth, California Court of Appeal (Ret.)
- Chief Justice Michael L. Bender, Colorado Supreme Court (Ret.)
- Judge Linda L. Bergman, Multnomah Circuit Court, Oregon (Ret.)
- Justice Margot Botsford, Massachusetts Supreme Judicial Court (Ret.)
- Associate Justice Bobbe J. Bridge, Washington Supreme Court (Ret.)
- Justice G. Arthur Brennan, York County Superior Court, Maine (Ret.)
- Chief Justice Eric Brown, Supreme Court of Ohio (Ret.)
- Judge Regina S. Cahan, King County Superior Court, Washington (Ret.)
- Judge Wynne Carvill, Alameda County Superior Court, California (Ret.)
- Chief Justice Walter L. Carpeneti, Alaska Supreme Court (Ret.)

- Judge Patrick A. Cathcart, Los Angeles Superior Court, California (Ret.)
- Judge Harriett M. Cody, King County Superior Court, Washington (Ret.)
- Justice Carol Ann Conboy, New Hampshire Supreme Court (Ret.)
- Chief Justice Dori Contreras, 13th Court of Appeals, Texas (Ret.)
- Judge Ronald E. Culpepper, Pierce County Superior Court, Washington (Ret.)
- Judge Beverly W. Cutler, Alaska Superior Court (Ret.)
- Judge James Dannenberg, Hawaii District Court, First Circuit (Ret.)
- Justice Mary McGowan Davis, New York State Supreme Court (Ret.)
- Justice Michael P. Donnelly, Supreme Court of Ohio (Ret.)
- Judge Kitty-Ann van Doorninck, Pierce County Superior Court, Washington (Ret.)
- Justice Fernande R.V. Duffly, Massachusetts Supreme Judicial Court (Ret.)
- Justice Robert D. Durham, Oregon Supreme Court (Ret.)
- Judge Lynn Duryee, Marin County Superior Court, California (Ret.)
- Judge Sally Duncan, Maricopa County Superior Court, Arizona (Ret.)
- Acting Justice Mark Dwyer, New York State Supreme Court (Ret.)
- Judge Anita H. Dymant, Los Angeles Superior Court, California (Ret.)
- Judge George Eskin, Santa Barbara County Superior Court, California (Ret.)
- Judge Noel Fidel, Arizona Court of Appeals (Ret.)
- Judge Francisco Firmat, Orange County Superior Court, California (Ret.)

- Judge Helen E. Freedman, New York Appellate Division of the Supreme Court (Ret.)
- Judge Raymond Funk, Fairbanks District Court, Alaska (Ret.)
- Judge Deborra Garrett, Whatcom County Superior Court, Washington (Ret.)
- Justice Janine P. Geske, Wisconsin Supreme Court (Ret.)
- Judge David George, First Judicial District of Alaska (Ret.)
- Justice Emily Jane Goodman, New York State Supreme Court (Ret.)
- Judge Dianna Gould-Saltman, Los Angeles Superior Court, California (Ret.)
- Justice Karen F. Green, Massachusetts Superior Court (Ret.)
- Chief Justice Mark V. Green, Massachusetts Appeals Court (Ret.)
- Judge Helen Halpert, King County Superior Court, Washington (Ret.)
- Judge Brook Hedge, Superior Court of the District of Columbia (Ret.)
- Judge James Hely, New Jersey Superior Court (Ret.)
- Judge Bethany G. Hicks, Maricopa County Superior Court, Arizona (Ret.)
- Justice Geraldine S. Hines, Massachusetts Supreme Judicial Court (Ret.)
- Judge Vicki L. Hogan, Pierce County Superior Court, Washington (Ret.)
- Justice Robin E. Hudson, North Carolina Supreme Court (Ret.)
- Judge J. Robin Hunt, Washington Court of Appeals (Ret.)
- Justice Barbara Jaffe, New York State Supreme Court (Ret.)
- Chief Justice Jim Jones, Idaho Supreme Court (Ret.)
- Judge Henry Kantor, Multnomah County Circuit Court, Oregon (Ret.)

- Judge Steven J. Kleifield, Los Angeles Superior Court, California (Ret.)
- Judge Michael S. Kupersmith, Chittenden County Superior Court, Vermont (Ret.)
- Judge David A. Kurtz, Snohomish County Superior Court, Washington (Ret.)
- Judge Linda Lau, Washington State Court of Appeals (Ret.)
- Chief Judge John P. Leopold, Colorado District Court (Ret.)
- Chief Justice R. Fred Lewis, Florida Supreme Court (Ret.)
- Judge Richard Lyman, Los Angeles Superior Court, California (Ret.)
- Judge Barbara Mack, King County Superior Court, Washington (Ret.)
- Judge Patrick J. Mahoney, San Francisco Superior Court, California (Ret.)
- Judge Victoria S. Marks, Hawaii First Circuit Court (Ret.)
- Judge Kevin McKenney, Santa Clara County Superior Court, California (Ret.)
- Justice James F. McHugh, Massachusetts Appeals Court (Ret.)
- Judge Christopher Melly, Clallam County Superior Court, Washington (Ret.)
- Judge Peter Michalski, Anchorage Superior Court, Alaska (Ret.)
- Judge Rita Miller, Los Angeles Superior Court, California (Ret.)
- Judge John Meyer, Skagit County Superior Court, Washington (Ret.)
- Judge Robert Mello, Addison County Superior Court, Vermont (Ret.)
- Judge Walter M. Morris Jr., Orleans County Superior Court, Vermont (Ret.)
- Justice James C. Nelson, Montana Supreme Court (Ret.)
- Judge Peggy J. Nelson, New Mexico District Court (Ret.)

- Judge Leslie C. Nichols, Santa Clara County Superior Court, California (Ret.)
- Judge Rita M. Novak, Cook County Circuit Court, Illinois (Ret.)
- Justice Michael J. Obus, New York County Supreme Court (Ret.)
- Chief Justice Maureen O'Connor, Supreme Court of Ohio (Ret.)
- Judge Ann O'Regan Keary, Superior Court of the District of Columbia (Ret.)
- Judge Gary Oxenhandler, Missouri Circuit Court (Ret.)
- Judge Philip M. Pallenberg, Juneau Superior Court, Alaska (Ret.)
- Chief Justice Barbara J. Pariente, Florida Supreme Court (Ret.)
- Judge Lynn Pickard, New Mexico Court of Appeals (Ret.)
- Judge Maurice Portley, Arizona Court of Appeals (Ret.)
- Judge Jeffrey M. Ramsdell, King County Superior Court, Washington (Ret.)
- Judge Judith H. Ramseyer, King County Superior Court, Washington (Ret.)
- Justice Rosalyn Richter, New York Appellate Division (Ret.)
- Judge Palmer Robinson, King County Superior Court, Washington (Ret.)
- Judge David A. Rosen, Los Angeles Superior Court, California (Ret.)
- Judge Richard L. Seabolt, Alameda County Superior Court, California (Ret.)
- Judge Carol Schapira, King County Superior Court, Washington (Ret.)
- Judge Ann Schindler, Washington State Court of Appeals (Ret.)
- Judge Barry C. Schneider, Maricopa County Superior Court, Arizona (Ret.)
- Judge Robert Schnider, Los Angeles Superior Court, California (Ret.)

- Judge Catherine Shaffer, King County Superior Court, Washington (Ret.)
- Associate Justice Sheila Sonenshine, California Court of Appeal (Ret.)
- Administrative Judge Jacqueline Silbermann, New York County Supreme Court (Ret.)
- Judge Michael Spearman, Washington Court of Appeals (Ret.)
- Judge Julie Spector, King County Superior Court, Washington (Ret.)
- Chief Justice Laura Denvir Stith, Supreme Court of Missouri (Ret.)
- Judge Jeffrey Swartz, Miami-Dade County Court, Florida (Ret.)
- Chief Justice Marsha Ternus, Iowa Supreme Court (Ret.)
- Judge Michael J. Trickey, Washington Court of Appeals (Ret.)
- Judge Emily E. Vasquez, Sacramento County Superior Court, California (Ret.)
- Judge Art Wang, Washington Court of Appeals (Ret.)
- Chief Justice Daniel E. Wathen, Maine Supreme Judicial Court (Ret.)
- Judge Larry Weeks, Juneau Superior Court, Alaska (Ret.)
- Judge John P. Wesley, Windham County Superior Court, Vermont (Ret.)
- Judge Ken Williams, Clallam County Superior Court, Washington (Ret.)
- Judge Jeffrey K. Winikow, Los Angeles Superior Court, California (Ret.)
- Chief Justice Michael A. Wolff, Supreme Court of Missouri (Ret.)
- Judge Margie G. Woods, San Diego County Superior Court, California (Ret.)
- Judge Merri Souther Wyatt, Oregon Circuit Court (Ret.)

**International**

- Judge Patricia Whalen, War Crimes Chamber, Court of Bosnia and Herzegovina (Ret.)