**ORAL ARGUMENT HELD MAY 19, 2026**

**Nos. 26-1049, 26-1162**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

ANTHROPIC PBC,

Petitioner,

v.

UNITED STATES DEPARTMENT OF WAR, et al.,

Respondents.

---

On Petitions for Review of Agency Action

---

# RESPONSE TO PETITION FOR REHEARING OR REHEARING EN BANC

---

JONATHAN D. GUYNN
*Acting Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

SHARON SWINGLE
SEAN R. JANDA
BRIAN J. SPRINGER
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND SUMMARY ........ 1

STATEMENT ........ 3

ARGUMENT ........ 9

I. The Panel Decision Was Correct and Does Not Conflict with Any Holding of this Court or the Supreme Court ........ 10

A. The Panel Correctly Applied Settled Principles of Statutory Interpretation ........ 10

B. The Panel Correctly Rejected Petitioner's Other Contentions ........ 14

II. En Banc Review Is Unwarranted ........ 19

CONCLUSION ........ 22

CERTIFICATE OF COMPLIANCE

## GLOSSARY

| | |
|---|---|
| AI | Artificial Intelligence |
| APA | Administrative Procedure Act |
| Department | Department of War |
| Secretary | Secretary of War |

## INTRODUCTION AND SUMMARY

Anthropic's rehearing petition barely attempts to show that the panel's context-specific rulings involve recurring legal issues that justify further review. Rather, petitioner seeks to relitigate the case by presenting four separate statutory and constitutional questions—none of which is the subject of any circuit split and three of which did not even divide the panel—for resolution by the full Court. En banc review is an extraordinary step that is not warranted simply because petitioner believes that the panel reached a mistaken outcome.

In any event, the panel majority's decision is case-specific and demonstrably correct. The Secretary of War exercised his authority to remove petitioner's technology from sensitive Department of War systems based on his assessment that petitioner may encode limitations restricting the Department's ability to use the technology as part of military operations and other missions critical to national security. The limited effect of the Secretary's challenged designation is to prohibit petitioner from contracting or subcontracting on certain Department contracts.

Applying ordinary rules of statutory interpretation, the panel majority explained that the agency's determination falls within the statute, which

encompasses the "risk" that "any person" may "manipulate" the "design" or "operation" of technologies incorporated into government systems in ways that "deny" or "disrupt" their "use" or "function." 41 U.S.C. § 4713(k)(6). Despite relegating this interpretive issue to a handful of pages in its merits briefing, petitioner now draws on the dissenting opinion and claims that the Court should consider the issue en banc. Petitioner's newly developed efforts to limit the statute's meaning provide no basis to overturn the panel's sound decision, much less to convene the entire Court. The remaining hodgepodge of issues on which petitioner seeks rehearing does not change the calculus. Those challenges depended on the particular circumstances at issue and were rejected by the panel without dissent.

Petitioner has failed to justify rehearing. By petitioner's own account, the statute at issue has rarely been invoked. The panel's analysis primarily turned on the specific facts in this case. It is thus unsurprising that petitioner does not purport to identify any conflict with another court of appeals. Petitioner's asserted inconsistencies with precedent from this Court and the Supreme Court are likewise illusory. And petitioner strains to generate outsized practical effects from an agency determination that resolves only the narrow question whether petitioner may continue to supply

its software for use in the Department's supply chain. Rehearing should be denied.

## STATEMENT

1. To ameliorate the risk that contractors may tamper with technologies incorporated into Department systems, the Secretary may take certain procurement-related actions against contractors that present a supply-chain risk. The relevant statute defines a supply-chain risk as "the risk that any person may sabotage, maliciously introduce unwanted function, extract data, or otherwise manipulate the design, integrity, manufacturing, production, distribution, installation, operation, maintenance, disposition, or retirement" of the relevant technology "so as to surveil, deny, disrupt, or otherwise manipulate the function, use, or operation" of the technology or "information stored or transmitted" thereon. 41 U.S.C. § 4713(k)(6).

If the Secretary determines that a contractor presents such a risk, *see* 41 U.S.C. § 4713(b), he may act to remove the contractor from the Department's supply chain by, among other things, ordering "exclusion of [the] source" from covered procurements and "withhold[ing] consent for a contractor to subcontract with [the] particular source" on covered procurements, *id.* § 4713(k)(4). The effect of the designation is that, with

respect to certain procurements, the contractor may not provide its products or services to the Department directly or as subcontractor. *See* Op.5.

2. Petitioner is an artificial-intelligence[1] company that has developed an AI model called Claude. App.6. Since 2024, the government has employed petitioner's model, through direct contracts and through subcontracts where other contractors have integrated Claude into products provided to government customers. *See* App.31-33. Claude has been deployed by the Department for highly sensitive uses, including for classified work and to support ongoing military operations. *See* App.11; *see also* App.413.

In 2025, petitioner and the Department began negotiations around deployment of Claude on the Department's GenAI.mil platform. App.13. The Department requested that petitioner permit the Department to "use all versions of Claude for 'all lawful uses,'" App.13-14; that request reflected the Secretary's determination that national security required the Department to be able to use AI "models free from usage policy constraints that may limit lawful military applications," App.206. Petitioner refused to agree. App.14.

[1] This response uses the term "artificial intelligence," or "AI," because that is the term used in the record and by the panel.

And during the parties' negotiations, petitioner's behavior increasingly raised concerns within the Department that petitioner might manipulate Claude to enforce its own policy judgments about the Department's appropriate use. *See* App.371-74.

3. The Department evaluated the risks and determined that continued use of Claude reflected a significant supply-chain risk under § 4713. *See* App.367. The Secretary's designation was based on the assessed risk that petitioner will manipulate Claude to "inhibit the [Department's] use," causing significant harm to the Department's "operational capabilities." App.368.

The Department explained that AI models present "unique" risks because the "opaque nature of the technology" renders those models "acutely vulnerable to manipulation." App.372. Through development and training of the model, a party may encode "specific behavioral constraints" that restrict the model's behavior "regardless of how it is subsequently deployed or configured." App.274-75; *see* App.372. The record reveals multiple instances in which petitioner's model refused to perform activities required by government clients based on guardrails that petitioner embedded into the model unbeknownst to the government clients until they

experienced real-time failures. *See* Op.18-19 (citing App.212; App.255). And the Department has an extremely limited capability to monitor any subversion that may be incorporated into the model. Op.21; App.410-12. As a result, the Department's ability to be confident in the "integrity" of the model "is fundamentally based on the trustworthiness of the vendor." App.372.

The Department determined that petitioner is not a trustworthy partner whose model can be relied on, particularly in the Department's extremely sensitive national-security systems. That determination stems from multiple facets of petitioner's behavior, including its attempt to contractually limit the Department's use of Claude, its apparent unease at the Department's potential use of Claude during a specific military operation, and its seeming treatment of "public perception" as more important than the Department's ability to fully use its software. *See* App.371-73. Based on those actions, the Department assessed that petitioner "can and would impose its moral and policy judgments on the warfighting capabilities of the" Department by manipulating or restricting Claude. App.372-73. Thus, the Department concluded that "there is a substantial risk" that petitioner could "disable its technology or preemptively and

surreptitiously alter the behavior of the model" to enforce its own judgments. App.373. Such attempts could result in "catastrophic downstream consequences." App.372; *see* App.421.

In issuing the initial designation, the Secretary invoked statutory procedures permitting him, in certain circumstances, to act before providing notice. *See* 41 U.S.C. § 4713(c). As required by the statute, the Secretary then promptly provided petitioner with notice, materials underlying the determination, and the opportunity to request reconsideration. *See* App.72-75; App.224-32. Petitioner submitted a letter that the Department treated as a request for reconsideration. *See* App.288-90. The Secretary denied that request and "reaffirm[ed]" his previous determinations. Add.1. The Secretary explained that petitioner's reconsideration request did not include "materially new information," instead "simply incorporat[ing] by reference the information and arguments contained in" court filings. *Id.* That information, the Secretary concluded, "was largely already known to the Department" and did not "address the supply chain risks identified in" the determination. *Id.*

4. Petitioner challenged the designation and the later denial of reconsideration in this Court, claiming that these decisions were contrary to statute, unconstitutional, and arbitrary and capricious.

A panel denied the petitions. The panel held that the challenged decisions comported with statutory and procedural requirements. The panel detailed how "[t]he record in this case amply supports" the Department's assessment "that [petitioner] might manipulate Claude's design to prevent it from performing national-security functions." Op.18-23. As the panel explained, the plain language of the statute—which encompasses the risk that a contractor like petitioner will "*manipulate* the *design* or *operation* of an information-technology product" like Claude—"perfectly describes" the circumstances here. Op.25. The panel rejected petitioner's effort to "impose a narrowing construction on" the broad "statutory terms." Op.24-32. The panel also rejected petitioner's challenge to the Secretary's invocation of his statutory authority to provide post-designation (rather than pre-designation) process. Op.33-38.

The panel likewise rejected petitioner's constitutional contentions. The panel held that the Secretary's provision of post-designation notice satisfied the requirements of due process given the "need to move quickly" in this

national-security context. Op.38-41. And the panel denied petitioner's claim that "the Department removed [petitioner] from its supply chain" because of petitioner's protected speech, explaining that "the record makes clear that" the decision was based on petitioner's "refus[al] to agree to a contract term the Department deemed essential to national security." Op.41-43.

In dissent, Judge Henderson concluded that the "manipulation" covered by the statute reflects only "intentionally subversive acts, carried out through deceptive means." Op.1-8 (Henderson, J., dissenting). Judge Henderson did not express disagreement with the panel majority's analysis rejecting petitioner's other claims.

## ARGUMENT

Rehearing en banc is an extraordinary procedure reserved for exceptional cases. The Federal Rules of Appellate Procedure specify that "rehearing en banc is not favored." Fed. R. App. P. 40(a). Petitioner has neither identified any "point of law or fact" that the panel supposedly "overlooked or misapprehended" nor established any conflict between the panel decision and another circuit or Supreme Court decision on an important and recurring legal issue. Fed. R. App. P. 40(b). Petitioner

merely seeks a do-over because it is dissatisfied with the outcome that the panel reached. No form of rehearing is warranted.

# I. The Panel Decision Was Correct and Does Not Conflict with Any Holding of this Court or the Supreme Court

## A. The Panel Correctly Applied Settled Principles of Statutory Interpretation

As the panel exhaustively detailed, *see* Op.17-23, the record amply supports the Secretary's conclusion that "[petitioner] might manipulate Claude's design to prevent it from performing national-security functions that the Department deems contractually authorized and necessary," Op.20. It is undisputed that petitioner "encodes restrictions into Claude that prevent the model from performing tasks that [petitioner] wishes to prevent" and that "these restrictions have stopped Claude from performing tasks requested by government users." Op.4. The national-security consequences could be catastrophic if a limitation were to manifest when the Department queries Claude to assist in the middle of an ongoing operation. *See* App.373.

To prevent disruption of the Department's critical military missions, the Secretary invoked § 4713 to remove petitioner's technology from the Department's supply chain. The Secretary sought to address the "risk" that petitioner may "manipulate" the "design" or "operation" of its technology in

ways that "deny" or "disrupt" the "use" or "function" of that technology. 41 U.S.C. § 4713(k)(6). Applying ordinary tools of statutory interpretation, the panel explained that this case falls within the "clear statutory terms" because "there is not only a 'risk'—but a certainty—that [petitioner] will so *manipulate* the 'design' or 'operation' of Claude to *deny* it the 'function[s]'" that the Department deems necessary. Op.24; *see* Op.25 (recognizing that the statutory language "perfectly describes" the circumstances at issue). And the panel rejected petitioner's effort to "artificially narrow[] *manipulate* to require a bad motive." Op.25.

Although petitioner "spen[t] less than two pages of its opening brief on this interpretive argument," Op.24, and petitioner has recognized throughout this litigation that the § 4713 authority has rarely been invoked, *see* Pet.10, petitioner now urges that the dispute over § 4713's scope demands the full Court's attention. But petitioner does not meaningfully assert that the panel majority made broad pronouncements about statutory methodology that are likely to have spillover effects. Instead, pointing to the dissenting opinion, petitioner primarily contends that the panel misapplied settled principles to the statute at hand. Bare disagreement with the outcome reached by the panel is not a reason to grant rehearing en banc.

In any event, petitioner's arguments are flawed on their own terms. Relying heavily on *Fischer v. United States*, 603 U.S. 480 (2024), which adopted the interpretation in Judge Katsas's dissent from this Court's decision in the same case, *see United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), petitioner claims (Pet.11-14) that the word "manipulate" in § 4713 should be read narrowly in light of the surrounding language. As relevant here, the statute refers to "the risk that any person may sabotage, maliciously introduce unwanted function, extract data, or otherwise manipulate" the "design" or "operation" of the technology "so as to surveil, deny, disrupt, or otherwise manipulate" the technology's "function, use, or operation." 41 U.S.C. § 4713(k)(6). According to petitioner (Pet.11), "manipulate" must be read to target only "hostile conduct" because neighboring words like "sabotage" and "maliciously" have that connotation.

The panel majority comprehensively addressed that misguided contention. As the panel noted, "the verbs preceding *manipulate*" in the first string "do not uniformly connote acts done with bad motive." Op.25. In fact, "extract" has no negative connotation and "introduce" has one only with the modifier "maliciously." Op.25 (emphases omitted). The "grammatical complexity of the entire phrase—with intervening direct objects, adverbs,

and adjectives—cuts further against" importing a limiting construction to each verb. Op.25. In addition, "manipulate" appears in the second string of verbs alongside "neutral or ambiguous verbs" like "deny" and "disrupt" with no "overarching connotation of bad motive." Op.27. Petitioner does not even attempt to reconcile its cramped interpretation with those interpretive points.

Petitioner similarly ignores the broader context supporting the panel's interpretation. Rather than imposing "civil" or "criminal liability," § 4713 "is a procurement statute addressed to what goods and services the Department may buy." Op.28. The statute is designed to mitigate national-security risks. Against that backdrop, it makes sense that § 4713 "focuses on the effect of a manipulation, not the intent behind it." Op.28. After all, an agency should not be disabled from preventing dire consequences for national security merely because a contractor like petitioner might have pure motives for altering its technology in ways that impede the agency's use of that technology in critical situations. *See* Op.29-30 (recognizing that "non-maliciously disrupting the function or denying the use of the government's information systems can plausibly raise national-security concerns").

The panel directly distinguished *Fischer*. In *Fischer*, "the examples before the residual *otherwise* clause all clearly involved . . . the contextual limitation" that the Court adopted. Op.29. And a broad interpretation of that clause "would have produced massive surplusage" by "rendering superfluous" not only "all of the reticulated examples" within the provision itself, but various offenses in the same section and across the criminal code. Op.29. By contrast, "[n]othing like that is present here, where the residual clause is itself longer and more reticulated than the three brief examples preceding it." Op.29. Contrary to petitioner's assertion (Pet.12), construing "manipulate" consistently with its normal meaning does not leave terms like "sabotage" and "extract data" with no role to play. And differing from *Fischer*, the panel's interpretation here "does not implicate constitutionally protected conduct." Op.30. The panel's sound interpretation of § 4713 to cover the technological manipulation at issue here does not warrant further review.

### B. The Panel Correctly Rejected Petitioner's Other Contentions

Petitioner does not limit its rehearing petition to the sole issue on which members of the panel disagreed. Instead, petitioner seeks to raise numerous other issues resolved by the panel without dissent. Rehearing en

banc is a limited mechanism to review legal issues with significant implications, not a vehicle to relitigate every issue in a case before the full Court. Petitioner compounds these problems by failing to grapple with the panel's thorough analysis as to each issue.

1. Petitioner asserts (Pet.14-16) that the Secretary improperly invoked statutory procedures permitting him to provide post-designation, rather than pre-designation, notice and opportunity to respond. The panel properly rejected that assertion, explaining that—"even assuming that" the basis for the invocation of that procedure "was both reviewable and wrong," an argument that would "face[] strong headwinds"—any error in "the timing of the Secretary's notice" was harmless. Op.33.

Petitioner's rehearing petition nowhere claims that petitioner suffered any prejudice from the timing of the Secretary's notice. Instead, petitioner argues (Pet.14) that the panel should have declined to apply harmless-error principles at all, because the relevant judicial review statute does not expressly reference such principles. But petitioner does not engage with any aspect of the panel's analysis. The panel properly explained that the harmless-error rule is a background principle of judicial review that "traces back to pre-APA caselaw." Op.33-34. Consistent with that principle and the

ubiquity of harmless-error review "in civil cases, criminal cases, and appeals," this Court has "repeatedly applied such prejudicial-error rules in judicial-review schemes that do not explicitly impose them." Op.34-35 (collecting cases). Petitioner dismisses (Pet.15-16, Pet.16 n.2) these numerous examples without providing any firm basis to distinguish them.

Petitioner's cases (Pet.14-15) are not to the contrary. In *Trump v. Cook*, the Supreme Court did not expressly consider whether harmless-error principles should apply; indeed, the Court suggested that any error may have been prejudicial because the relevant underlying facts "remain[ed] an open question." 609 U.S. 528, 558 (2026). Moreover, in that case, the Court concluded that the plaintiff had not received any meaningful process at the time of the Court's decision (unlike here, where petitioner had already received notice and an opportunity to respond), and the Court interpreted the relevant statute as requiring specific pre-deprivation process (unlike here, where the statute expressly permits the Secretary to provide post-designation process, as he did). *See id.* at 539-40, 550-52. Nothing in the Supreme Court's analysis undercuts the panel's analysis in the substantially different context here.

*Alabama v. Bozeman*, 533 U.S. 146 (2001), is even further afield. There, the Supreme Court interpreted the language of an interstate compact agreement—a contract, not a statute. *See id.* at 152-53. And the Court expressly recognized that excusing "trivial violations" is part "of the established background of legal principles against which all enactments are adopted." *Id.* at 153-54 (quoting *Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992)). Petitioner also cites (Pet.15) two cases from this Court but acknowledges that neither had occasion to decide whether harmless-error review applied because the errors at issue were prejudicial. *See Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 534 (D.C. Cir. 2018); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1109 (D.C. Cir. 2014).

2. Petitioner fares no better in attacking (Pet.16-18) the panel's conclusion that the Secretary's post-designation notice and opportunity to respond comported with due process. The panel acknowledged that pre-deprivation process is required "[a]s a general matter" but explained that post-deprivation process is permissible where the government "must act quickly." Op.39 (quoting *Zevallos v. Obama*, 793 F.3d 106, 116 (D.C. Cir. 2015)). On the specific record here, the panel recognized a "need to move

quickly," given that "AI technology is now evolving at unprecedented velocity" and that "reliable AI technology is critical for the United States to maintain its military superiority and preserve its national security." Op.39-40 (quotation omitted). Indeed, the government "began offensive military operations in Iran, reportedly using Claude in connection with its strikes," just "two days after" petitioner "definitively rejected usage terms demanded by the United States." Op.40. In that context, the Department needed to "mov[e] to exclude Claude from its supply chain and shift to other AI providers immediately." Op.40.

Although petitioner complains (Pet.16-18) that the panel did not recite a particular formulation of the standard articulated in this Court's precedents, the panel conducted the requisite inquiry and applied many of the precedents identified by petitioner. *See* Op.39-40. Far from deferring to "agency say-so," Pet.16-17, the panel identified the specific facts in this record supporting the Secretary's particularized justification for determining that national-security imperatives required swift action. Nor does anything about that fact-intensive, case-specific conclusion conflict with any of petitioner's cited cases, all of which involved different determinations based on different records.

3. Petitioner does not develop any substantial argument that the panel erred with respect to petitioner's First Amendment claim. The panel meticulously described how "the record makes clear that the Department removed [petitioner] from its supply chain not because of its advocacy, but because [petitioner] refused to agree to a contract term the Department deemed essential to national security." Op.41-43. Petitioner's fleeting objections (Pet.18-19) only underscore that petitioner takes issue with the panel's characterization of the evidence, not with the panel's determination of the governing legal standards.

## II. En Banc Review Is Unwarranted

This case stems from the Department's risk evaluation specific to petitioner. Based on the government's experience with petitioner's technology and multiple facets of petitioner's behavior, the Department assessed a risk that petitioner would encode limitations that restrict the Department's use of the technology. Conversely, the practical implications for petitioner are far less pronounced than it suggests (Pet.9). *Cf.* Op.32 (discussing "rapid increases in the company's valuation since the Secretary's section 4713 determination"). The limited effect of the Secretary's § 4713 designation is that, with respect to certain procurements, petitioner may not

provide its products or services to the Department and Department contractors may not subcontract with petitioner. *See* 41 U.S.C. § 4713(k)(4). The designation does not prohibit petitioner from contracting or subcontracting with other federal agencies, or with Department contractors (except as related to their work on covered Department procurements).

Petitioner has similarly failed to establish the significance of the legal issues that it wishes to raise. By petitioner's own admission (Pet.10), agencies have rarely invoked § 4713. Petitioner does not argue, let alone demonstrate, that disputes about the meaning of § 4713 are likely to arise with frequency in the future. Petitioner offers no compelling reason for the entire Court to address a routine question of statutory construction. Indeed, petitioner's current efforts to inflate the importance of this interpretive issue are difficult to square with its own choice at the merits stage to devote little attention to the issue. *See* Op.24. And no panel member disagreed with rejecting petitioner's remaining challenges, which perhaps explains why petitioner's treatment of those ancillary issues in its rehearing petition is likewise cursory. *See* Pet.14-19.

Moreover, petitioner provides no firmer basis for rehearing by pointing to (Pet.18-19) a district-court decision in a different case involving

petitioner's challenges to other government actions. Although petitioner attempts to equate the two cases, the district-court case involved challenges to a wide variety of actions taken by many different government actors under different statutory authorities. *See Anthropic PBC v. U.S. Dep't of War*, No. 26-cv-1996, 2026 WL 2534714, at *5-10 (N.D. Cal. Aug. 27, 2026) (describing the challenged actions). In evaluating the lawfulness of those actions, the district court often grouped them together, describing in broad strokes the effects of "the Challenged Actions" writ large. *Id.* at *13-14. That undifferentiated analysis fails to undermine the panel's careful analysis in this case, which focused on a single Secretarial designation not at issue in the district-court case. Regardless, petitioner cites no authority to support the proposition that en banc review would be warranted if a district court in a different circuit reached a conclusion contrary to the panel. *Cf.* Fed. R. App. P. 40(b)(2)(A)-(C).

## CONCLUSION

For the foregoing reasons, the petition for rehearing or rehearing en banc should be denied.

Respectfully submitted,

JONATHAN D. GUYNN
*Acting Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

SHARON SWINGLE

*/s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*

November 2026

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of this Court's order of November 3, 2026, because it contains 3898 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
Sean R. Janda